## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **IN RE:** | § § | **CASE NO. 20-31818** |
| | § | |
| **GGI HOLDINGS, LLC,** *et al.,* | § § | **CHAPTER 11** |
| | § | |
| **DEBTORS.** | § § | **(Jointly Administered)** |

## SECOND AMENDED JOINT  PLAN OF LIQUIDATION
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

**DYKEMA GOSSETT PLLC**

Aaron M. Kaufman
State Bar No. 24060067
akaufman@dykema.com
Ariel J. Snyder (Admitted *pro hac vice*)
State Bar No. 24115346
asnyder@dykema.com
1717 Main Street, Suite 4200
Dallas, Texas 75201
Telephone: (214) 462-6400
Facsimile: (214) 462-6401

and

Danielle N. Rushing
State Bar No. 24086961
drushing@dykema.com
112 East Pecan Street, Suite 1800
San Antonio, Texas 78205
Telephone: (210) 554-5500
Facsimile: (210) 226-8395

**COUNSEL FOR DEBTORS AND DEBTORS-IN-POSSESSION**

Dated:  August 7, 2020

## TABLE OF CONTENTS

**Page**

ARTICLE I DEFINED TERMS AND RULES OF INTERPRETATION ....................................2

    **A.**    Definitions.................................................................................2

    **B.**    Rules of Interpretation. ...........................................................15

    **C.**    Computation of Time...............................................................15

ARTICLE II ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS, AND PRIORITY NON-TAX CLAIMS ...................................................15

    2.1.    Administrative Claims. ...........................................................15

    2.2.    Priority Tax Claims.................................................................16

    2.3.    Priority Non-Tax Claims.........................................................16

ARTICLE III CLASSIFICATION OF CLAIMS AND INTERESTS ...........................16

    3.1.    Classification of Claims Against and Interests in the Debtors. ...........................17

ARTICLE IV IDENTIFICATION OF CLASSES OF CLAIMS AND INTERESTS IMPAIRED AND NOT IMPAIRED BY THE PLAN ....................................17

    4.1.    Impaired Classes of Claims and Interests. ...............................17

ARTICLE V PROVISIONS FOR TREATMENT OF CLAIMS AND INTERESTS .................17

    5.1.    Class 1 – Secured Claims.........................................................17

    5.2.    Class 2 – Convenience Claims..................................................20

    5.3.    Class 3 – General Unsecured Claims.........................................20

    5.4.    Class 4 – Intercompany Claims. ...............................................21

    5.5.    Class 5 – Subordinated Claims. ...............................................21

    5.6.    Class 6 – Old Equity Interests..................................................22

ARTICLE VI ACCEPTANCE OR REJECTION OF PLAN...........................................22

    6.1.    Classes Entitled to Vote. ..........................................................22

    6.2.    Acceptance by Impaired Classes. .............................................22

    6.3.    Classes Deemed to Accept Plan................................................23

    6.4.    Classes Deemed to Reject Plan.................................................23

    6.5.    Summary of Classes Voting on the Plan...................................23

    6.6.    Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code....................23

ARTICLE VII INDEMNIFICATION, RELEASE, INJUNCTIVE AND RELATED PROVISIONS ...................................................................23

    7.1.    Compromise and Settlement. ....................................................23

119899.000001 4817-9926-0870.7 US2008 17049184 2

7.2. Releases.................................................................................................24

7.3. Exculpation. .........................................................................................26

7.4. Injunction. ...........................................................................................27

7.5. Release of Liens. ..................................................................................28

ARTICLE VIII MEANS FOR IMPLEMENTATION OF THE PLAN .......................................28

8.1. Furtherance of the Sale Transaction. ...................................................28

8.2. [Omitted]..............................................................................................29

8.3. [Omitted]..............................................................................................29

8.4. Creation of the Liquidating Trust. .......................................................29

8.5. Vesting of Liquidating Trust Assets in the Liquidating Trust. .............29

8.6. Settlement with TRT Holdings, Inc. ....................................................30

8.7. Reserved Causes of Action. .................................................................31

8.8. Preservation of Rights of Action; Settlement. .....................................32

8.9. Administrative Acts. ............................................................................32

8.10. Jurisdiction of and Access to the Bankruptcy Court............................33

8.11. Claims Administration. ........................................................................34

ARTICLE IX PROVISIONS GOVERNING DISTRIBUTION ...............................................34

9.1. Generally..............................................................................................34

9.2. Source of Distributions. .......................................................................34

9.3. Means of Cash Payment.......................................................................34

9.4. Delivery of Distributions. ....................................................................35

9.5. Time Bar to Cash Payments..................................................................35

9.6. Claims Payable by Third Parties..........................................................35

9.7. Applicability of Insurance Contracts. ..................................................35

9.8. Withholding and Reporting Requirements. ..........................................36

ARTICLE X TREATMENT OF EXECUTORY CONTRACTS, UNEXPIRED LEASES, AND OTHER AGREEMENTS ................................................................36

10.1. Assumption/Rejection...........................................................................36

10.2. [Omitted]..............................................................................................36

10.3. Bar to Rejection Claims. ......................................................................37

10.4. Rejection Claims...................................................................................37

10.5. Reservation of Rights............................................................................37

119899.000001 4817-9926-0870.7 US2008 17049184 2

ARTICLE XI PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT, AND UNLIQUIDATED CLAIMS ................................................................37

11.1. Objections to Claims. .......................................................................37

11.2. Distributions on Account of Disputed Claims. ................................38

11.3. Allowance of Disputed Claims. .......................................................38

11.4. General Unsecured Claims. ..............................................................39

11.5. Allowance of Certain Claims. ..........................................................39

11.6. Offsets and Defenses. .......................................................................40

11.7. Compliance with Tax Requirements/Allocations. ...........................40

11.8. Expunging of Certain Claims. ..........................................................40

ARTICLE XII ALLOWANCE AND PAYMENT OF CERTAIN ADMINISTRATIVE CLAIMS ................................................................................................40

12.1. Professional Fee Claims. ..................................................................40

12.2. Administrative Claims. .....................................................................41

12.3. Administrative Ordinary Course Liabilities. ....................................41

12.4. Administrative Tax Claims. ..............................................................41

ARTICLE XIII CONFIRMATION AND CONSUMMATION OF THE PLAN ........................42

13.1. Conditions Precedent to Confirmation and Effectiveness. ...............42

13.2. Revocation of Plan. ..........................................................................43

13.3. Substantial Consummation. ..............................................................43

13.4. Non-Material Modifications. ............................................................43

13.5. Material Modifications. ....................................................................43

ARTICLE XIV EFFECT OF THE PLAN ON CLAIMS AND INTERESTS ............................44

14.1. Satisfaction of Claims. .....................................................................44

14.2. Good Faith. .......................................................................................44

14.3. Setoffs. ..............................................................................................44

14.4. Recoupment. .....................................................................................44

14.5. Satisfaction of Subordination Rights. ..............................................45

14.6. Turnover. ...........................................................................................45

14.7. Subordination. ..................................................................................45

14.8. Automatic Stay. ................................................................................45

ARTICLE XV JURISDICTION IN THE BANKRUPTCY AND OTHER COURTS ................45

15.1. Retention of Jurisdiction. .................................................................45

119899.000001 4817-9926-0870.7 US2008 17049184 2

15.2. Abstention and Other Courts. ...............................................................48

ARTICLE XVI MISCELLANEOUS PROVISIONS ..................................................48

16.1. Severability. .....................................................................................48

16.2. Oral Agreements; Modification of Plan; Oral Representations or Inducements. ..................................................................................48

16.3. Waiver. ............................................................................................48

16.4. Construction. ....................................................................................49

16.5. Notice. .............................................................................................49

16.6. Compliance with All Applicable Laws. .................................................50

16.7. Binding Effect. .................................................................................50

16.8. Governing Law, Interpretation. ...........................................................50

16.9. Payment of Statutory Fees. ................................................................50

16.10. Filing of Additional Documents. .........................................................51

16.11. Elections by the Liquidating Trustee. ...................................................51

16.12. Dissolution of Committee. ..................................................................51

16.13. No Admissions. ................................................................................51

16.14. Plan Supplement. .............................................................................51

16.15. Disclaimer for Governmental Units. ....................................................51

16.16. Exemption from Securities Laws. ........................................................52

16.17. Article 1146 Exemption. ....................................................................52

16.18. Section 1125(e) Good Faith Compliance. ..............................................52

16.19. Further Assurances. ..........................................................................52

iv

## INTRODUCTION

GGI Holdings, LLC and its subsidiaries and/or affiliates, as debtors and debtors-in-possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Cases"), filed their voluntary petitions for relief under chapter 11 of title 11 of the United States Code (as amended, the "Bankruptcy Code") on May 4, 2020 (the "Petition Date"). In the jointly-administered Cases pending before the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court"), the Debtors hereby propose their *Second Amended Joint Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* (the "Plan") for the resolution of the outstanding claims against and interests in the Debtors through a liquidating trust. A Liquidating Trustee will be appointed over such Liquidating Trust, and the Liquidating Trustee will be responsible for administering all claims against the Debtors and liquidating all remaining estate assets, including reserved causes of action, if any, and the excess Cash proceeds realized from the sale to the Purchaser, each as further described herein. Capitalized terms used herein shall have the meanings ascribed to such terms in ARTICLE I.

On the Petition Date, each Debtor filed a *Motion for Order Directing Joint Administration of Chapter 11 Bankruptcy Cases*, requesting the Bankruptcy Court allow the Debtors to consolidate the Cases for procedural purposes, pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") and Local Bankruptcy Rule 1015-1. The Bankruptcy Court entered an order in each Case, permitting the Debtors to consolidate their Cases for procedural purposes under the GGI Holdings case. Pursuant to the Sale Order and subsequent Dismissal Order, upon the closing of the Sale Transaction, the bankruptcy case of affiliate debtor Gold's Gym Licensing, LLC will be deconsolidated from the joint administration and its case dismissed so that the Purchaser can acquire the ownership interests in Gold's Gym Licensing, LLC. Because the remaining Debtors have jointly administered their Cases, but have neither requested nor been granted substantive consolidation of these Cases, this Plan proposes separate treatment for creditors of each of the 14 jointly administered cases. For the avoidance of doubt, and as set forth in the Dismissal Order, (i) the Debtors' claims and noticing agent will continue to accept claims asserted against Gold's Gym Licensing, LLC; and (ii) in the event there are any unsecured claims timely asserted against Gold's Gym Licensing, LLC, such claims, to the extent allowed, shall be entitled to the distributions afforded to holders of general unsecured claims set forth in this Plan.

Under section 1125(b) of the Bankruptcy Code, a vote to accept or reject the Plan cannot be solicited until such time as a disclosure statement has been approved by the Bankruptcy Court. As of the filing of this Plan, the Bankruptcy Court has approved the Debtors' *[Proposed] Disclosure Statement Pursuant to 11 U.S.C. § 1125 for the First Amended Joint of Reorganization Under Chapter 11 of the Bankruptcy Code* (the "Disclosure Statement"). The Disclosure Statement contains, among other things, a discussion of the Debtors' history, business, properties and operations, projections or range of projected recoveries for parties-in-interest, risk factors, a summary and analysis of the Plan, and certain related matters. The Plan is filed after soliciting votes in support of the first amended plan to avoid ambiguity between the Sale Order and this Plan, and to clarify the improved treatment for creditors as the result of the approximately $100 million purchase price realized through the sale of substantially all of the Debtors' assets to the Purchaser.

**ALL HOLDERS OF CLAIMS AND INTERESTS ARE ENCOURAGED TO READ THE PLAN AND DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.**

Subject to the terms of this Plan and certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Rule 3019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Debtors expressly reserve their rights to alter, amend, modify, revoke or withdraw the Plan, one or more times, prior to its substantial consummation.

## ARTICLE I
## DEFINED TERMS AND RULES OF INTERPRETATION

### A.    Definitions.

For purposes of this Plan, except as otherwise provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meaning set forth below. Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or Bankruptcy Rules, will have the meaning given to the term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

**1.1**    **"Adequate Protection Fees and Expenses"** has the meaning ascribed to it in the DIP Order.

**1.2**    **"Adequate Protection Payments"** has the meaning ascribed to it in the DIP Order.

**1.3**    **"Administrative Claim"** means a Claim for costs and expenses of administration of the Cases pursuant to sections 327, 328, 330, 331, 363, 365, 503(b), 507(a)(2), 507(b) or 1114(e)(2) of the Bankruptcy Code (other than DIP Lender Claims), including, without limitation, (a) any actual and necessary costs and expenses, incurred after the Petition Date, of preserving the Estate and operating the business of the Debtors (including wages, salaries, and commissions for services rendered after the Petition Date), (b) Fee Claims, and (c) all fees and charges assessed against the Estate under title 28 of the United States Code to the extent not already paid or satisfied under the terms of the Plan.

**1.4**    **"Administrative Claim Bar Date"** means the deadline forty-five (45) days after the Effective Date by which holders of asserted Administrative Claims, other than Fee Claims, claims for U.S. Trustee fees under 28 U.S.C. § 1930, Administrative Tax Claims and administrative ordinary course liabilities, shall file with the Bankruptcy Court a request for the allowance and payment of such Administrative Claim or forever be barred from doing so. *See* Plan Section 12.2.

**1.5**    **"Administrative Tax Claim"** means a Claim by a Governmental Unit for taxes (and for interest or penalties related to such taxes) for any tax year or period, all or a portion of which occurs or falls within the period from and including the Petition Date through and including the Effective Date.

**1.6**    **"Affiliate"** has the meaning given such term by section 101(2) of the Bankruptcy Code.

**1.7** **"Allowed"** when used with respect to all or any part of a Claim or Interest, means:

(a) if no proof of claim has been timely filed, such amount of the Claim or group of Claims which has been Scheduled by the Debtors as liquidated in amount and not disputed or contingent and as to which no party in interest has filed an Objection before the Claims Objection Deadline or such other time fixed by the Bankruptcy Court, and which Claim is not disallowed under section 502(d) or (e) of the Bankruptcy Code; or

(b) if a proof of claim has been filed by the Claims Bar Date, or is deemed timely filed by the Bankruptcy Court pursuant to Final Order, such amount of the Claim as to which any party in interest has not filed an Objection before the Claims Objection Deadline or such other time fixed by the Bankruptcy Court and which Claim is not Disallowed under section 502(d) or (e) of the Bankruptcy Code; or

(c) that has been allowed by a Final Order of the Bankruptcy Court; or

(d) that is expressly allowed in a liquidated amount in this Plan.

**1.8** **"Asset" or "Assets"** means all assets of the Debtors' Estates as of the Effective Date, including "property of the estate" as described in section 541 of the Bankruptcy Code.

**1.9** "**Asset Purchase Agreement**" or "**APA**" means *Asset Purchase Agreement* dated July 14, 2020, as amended, including that *Amendment No. 1 to Asset Purchase Agreement* dated July 27, 2020, by and between the Debtors, as sellers, and the Purchaser, as purchaser.

**1.10** **"Assumed Contract"** means any Executory Contract or Unexpired Lease that were assumed by the Purchaser pursuant to the Transactional Documents and Prior Orders, including the Sale Order.

**1.11** **"Avoidance Actions"** means Causes of Action arising under sections 502, 510, 541, 542, 543, 544, 545, 547 through and including 553 of the Bankruptcy Code, or under similar or related state or federal statutes and common law, including fraudulent transfer laws, whether or not litigation is commenced to prosecute such Causes of Action, and which may be recovered pursuant to section 550 of the Bankruptcy Code.

**1.12** **"Bankruptcy Code"** means title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., including all amendments thereto, to the extent such amendments are applicable to the Cases.

**1.13** **"Bankruptcy Court"** or **"Court"** means the United States Bankruptcy Court for the Northern District of Texas, Dallas Division.

**1.14** **"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as now in effect or hereafter amended and applicable to the Case.

**1.15** **"Ballot"** means the formal ballot included in the solicitation packets and disseminated with the Disclosure Statement to holders of Impaired Claims entitled to vote on the Plan.

**1.16** **"Bid Procedures Order"** means the *Order (I) Authorizing and Approving (A) Bid Procedures, (B) Procedures for Assumption and Assignment of Executory Contracts and Unexpired Leases, and (C) Form and Manner of Notices for the Bid Procedures and Resulting Sale; (II) Scheduling an Auction to Determine the Highest and Best Offer; (III) Scheduling a Hearing to: (A) Approve the Sale of Assets to the Successful Bidder Free and Clear of Liens, Claims and Encumbrances, and (B) Authorize the Debtors to Assume and Assign Executory Contracts and Unexpired Leases in Connection With the Sale; and (IV) Granting Related Relief* [ECF No. 273].

**1.17** **"Break-Up Fee"** means the Allowed Administrative Claim granted in favor of the Stalking Horse Bidder in the amount of $2,033,539.72.

**1.18** **"Business Day"** means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

**1.19** **"Cases"** means the bankruptcy cases under chapter 11 of the Bankruptcy Code, pending in the Bankruptcy Court and jointly administered under Case No. 20-31818.

**1.20** **"Cash"** means cash or cash equivalents including, but not limited to, bank deposits, checks, or other similar items.

**1.21** **"Causes of Action"** means any action, proceeding, claim, cross-claim, third-party claim, cause of action, controversy, demand, right, Lien, indemnity, contribution, guaranty, suit, obligation, liability, debt, damage, judgment, account, defense, remedy, offset, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, foreseen or unforeseen, direct or indirect, choate or inchoate, secured or unsecured, assertable directly or derivatively (including, without limitation, under alter ego theories), whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law, including (a) any right of setoff, cross-claim, counterclaim, or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (b) the right to object to Claims or Interests; (c) any claim pursuant to sections 362 or chapter 5 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code; (e) any claims under any state or foreign law, including, without limitation, any fraudulent transfer or similar claims; (f) any Avoidance Actions; and (g) any Preference Actions. Unless released by a Prior Order, including the Sale Order, or under this Plan, or assigned to the Purchaser under the terms of the Transactional Documents or Sale Order, all such Causes of Action will be reserved under the Plan and vested in the Liquidating Trust.

**1.22** **"Claim"** or **"Claims"** means a claim against the Debtors, whether or not asserted, as defined in section 101(5) of the Bankruptcy Code.

**1.23** **"Claims Bar Date"** means the general deadline of September 9, 2020, for filing proofs of claim unless otherwise shortened or extended by a Final Order of the Bankruptcy Court. For Governmental Units, the deadline for claims is December 8, 2020.

**1.24** **"Claims Objection Deadline"** means the first Business Day that is after 180 days from the Effective Date of the Plan. With respect to Late Filed Claims filed after the Claims Objection Deadline or Rejection Claims filed after the Effective Date, the Claims Objection Deadline means the later of (i) the 180th day after the Effective Date of the Plan; (ii) the first Business Day that is at least 60 days after the filing of the Rejection Claim; or (iii) 60 days after the entry of a Final Order deeming a Late Filed Claim to be timely.

**1.25** **"Claimant"** means the holder of a Claim.

**1.26** **"Class"** when referring to a Claim means a category of holders of Claims or Interests as described in ARTICLE III of this Plan.

**1.27** "**Closing**" has the same meaning ascribed to as in the Sale Order.

**1.28** **"Collateral"** means any Asset subject to a valid and enforceable Lien to secure payment of a Claim, including any right of offset asserted against any Asset.

**1.29** **"Committee"** means the statutory committee of unsecured creditors appointed pursuant to section 1102(a) of the Bankruptcy Code in the Cases, as amended from time to time.

**1.30** **"Confirmation Date"** means the date upon which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

**1.31** **"Confirmation Hearing"** means the hearing held by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

**1.32** **"Confirmation Order"** means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

**1.33** **"Convenience Claim Limit"** means $2,500.00.

**1.34** **"Convenience Claims"** means a General Unsecured Claim that is equal to or lesser than the Convenience Claim Limit.

**1.35** **"Creditor"** has the meaning given such term in section 101(10) of the Bankruptcy Code.

**1.36** "**Credit Card Collateral Account**" has the same meaning ascribed to as in the Sale Order.

**1.37** **"Credit Card Exposure"** has the same meaning ascribed to as in the Sale Order.

**1.38** **"Cure Amount" or "Cure Claim"** with respect to the assumption or assumption and assignment of an Executory Contract or Unexpired Lease, means the amount equal to all unpaid monetary obligations required to be paid as a condition to the assumption of such agreement pursuant to the provisions of section 365 of the Bankruptcy Code, without interest, or such other amount as may be agreed upon by the parties under such Executory Contract or Unexpired Lease, to the extent such obligations are enforceable under the Bankruptcy Code and applicable bankruptcy law.

**1.39** **"Debtors"** means GGI Holdings, LLC; Gold's Gym International, Inc.; Gold's Holding Corp.; Gold's Alabama, LLC; Gold's Gym Franchising, LLC; Gold's Gym Merchandising, LLC; Gold's Gym Rockies, LLC; Gold's Louisiana, LLC; Gold's North Carolina, LLC; Gold's Ohio, LLC; Gold's Oklahoma, LLC; Gold's St. Louis, LLC; Gold's Southeast, LLC; and Gold's Texas Holdings Group, Inc.

**1.40** **"Deficiency Claim"** means the undersecured portion of an Other Secured Claim, if any, which constitutes a General Unsecured Claim pursuant to section 506(a) of the Bankruptcy Code.

**1.41** **"DIP Facility"** has the meaning given such term in the DIP Order.

**1.42** **"DIP Lenders"** or **"DIP Lender"** means TRT Debt Funding, LLC, RSG Group USA Inc., each or both in its respective capacity as the lender under the DIP Order.

**1.43** **"DIP Lender Claims"** means any Claim held by the DIP Lender arising under or in any way relating to the DIP Note or the DIP Order, including any and all fees, interests, and accrued but unpaid interest, Claims related to adequate protection, and fees arising under the DIP Note or the DIP Order.

**1.44** **"DIP Note"** has the meaning given such term in the DIP Order.

**1.45** **"DIP Order"** means the *Final Order (I) Authorizing the Debtors to Utilize Cash Collateral Pursuant to 11 U.S.C. § 363; (II) Granting Adequate Protection to the Prepetition Lenders Pursuant to 11 U.S.C. §§ 105(a), 361, 362, 363, 503 and 507; (III) Authorizing the Debtors to Obtain Junior Lien Post-Petition Financing Pursuant to 11 U.S.C. §§ 105(a), 361, 362, 364, 503 and 507; and (IV) Granting Related Relief* [ECF No. 214], as amended by the *Bridge Order with Respect to Final Order (I) Authorizing the Debtors to Utilize Cash Collateral Pursuant to 11 U.S.C. § 363; (II) Granting Adequate Protection to the Prepetition Lenders Pursuant to 11 U.S.C. §§ 105(a), 361, 362, 363, 503 and 507; (III) Authorizing the Debtors to Obtain Junior Lien Post-Petition Financing Pursuant to 11 U.S.C. §§ 105(a), 361, 362, 364, 503 and 507; and (IV) Granting Related Relief* [ECF No. 403].

**1.46** **"Disallowed"** when used with respect to all or any part of a Claim or Interest, means, that portion of the Claim that (a) has been disallowed by a Final Order or pursuant to a settlement, or (b)(i) is Scheduled at zero or as contingent, disputed, or unliquidated and (ii) as to which a Claims Bar Date has been established but no proof of claim has been filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law.

**1.47** **"Disclosure Statement"** means the written statement, as amended, supplemented, or modified from time to time, describing the Plan that is prepared and distributed in accordance with sections 1125, 1126(b), and 1145 of the Bankruptcy Code and Bankruptcy Rule 3018.

**1.48** "**Dismissal Order**" means that certain order entered in the Bankruptcy Case No. 20-31323 of Gold's Gym Licensing, LLC, dismissing the Chapter 11 case and granting related relief.

**1.49** **"Disputed Claim"** means a Claim, or any portion thereof, that is neither an Allowed Claim nor a Disallowed Claim, and includes, without limitation, any Claim (a) that is listed in the Schedules of the Debtor as disputed, contingent, or unliquidated and as to which no proof of claim has been filed; (b) that is listed in the Schedules of the Debtor as undisputed, liquidated, and not contingent and as to which a proof of claim has been filed with the Bankruptcy Court, to the extent the proof of claim amount exceeds the Scheduled amount or asserts a different priority of payment from that reflected in the Schedules; (c) that is not listed in the Schedules of the Debtors, but as to which a proof of claim has been filed with the Bankruptcy Court; (d) as to which an Objection has been or may be timely filed and which Claim has not been Allowed by a Final Order; or (e) for which the proof of claim is filed after the Claims Bar Date.

**1.50** **"Distribution"** or **"Distributions"** means a payment by the Liquidating Trustee in full or partial satisfaction of an Allowed Claim and the obligations imposed under this Plan.

**1.51** **"Effective Date"** means the first Business Day which is at least five (5) days after the Confirmation Order is entered and upon which all conditions to the effectiveness of the Plan set forth in ARTICLE XIII below are satisfied or waived in accordance with this Plan.

**1.52** **"Entity"** has the meaning given such term in section 101(15) of the Bankruptcy Code.

**1.53** **"Estates"** means the bankruptcy estates of the Debtors as created under section 541 of the Bankruptcy Code.

**1.54** **"Estate Defenses"** means any defense or affirmative defense available to the Debtors or its Estates, including without limitation the assertion of any Causes of Action as offsets or counterclaims and any right of offsets or recoupments, or any other basis for Objection to a Claim, whether legal or equitable. The Liquidating Trustee shall have standing to and shall otherwise be entitled to assert any and all Estate Defenses after the Effective Date.

**1.55** **"Excluded Assets"** has the meaning provided in the Transactional Documents

**1.56** **"Exculpated Parties"** means, collectively, and in each case in their capacities as such solely during the Cases: (a) the Debtors; (b) the DIP Lender; (c) the Purchaser; (d) the First Lien Lenders; (e) JPMorgan; (f) the Committee and each of its members; and (g) with respect to the foregoing (a)-(f) all current officers and directors, principals, shareholders, members, partners, managers, employees, agents, advisory board members, financial advisors, attorneys, investment bankers, consultants and representatives; *provided*, *however*, that each such Person shall only be exculpated as specifically set forth in Article VII of the Plan; *provided*, *further*, that for avoidance of doubt, the Debtors' Professionals shall not be Exculpated Parties.

**1.57** **"Executory Contract"** means an agreement where both parties have additional performance obligations which if unperformed would result in a breach of the agreement, as applicable under section 365 of the Bankruptcy Code.

**1.58** **"Exhibit"** means an exhibit annexed to either the Plan, Plan Supplement, or as an appendix to the Disclosure Statement.

**1.59** **"Fee Claim"** means a Claim under sections 328, 330(a), 331, 503, or 1103 of the Bankruptcy Code for compensation of a Professional for services rendered or expenses incurred in the Cases on or prior to the Effective Date.

**1.60** **"Final Order"** means an order, decree, or judgment of the Bankruptcy Court or another court of competent jurisdiction, the operation or effect of which has not been reversed, stayed, modified, or amended, and as to which order, decree, or judgment (or any revision, modification, or amendment thereof), the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing has been taken or is pending.

**1.61** **"First Lien Credit Agreement"** means that certain First Amended and Restated Credit Agreement, dated as of June 17, 2016 (as amended, restated, supplemented, or otherwise modified as of the Petition Date, and together with all security, pledge and guaranty agreements and all other documents executed in connection with any of the foregoing), by and among GGI Holdings, LLC, as borrower, JPMorgan and the First Lien Lenders.

**1.62** **"First Lien Lenders"** means, collectively, the Lenders (as defined in the First Lien Credit Agreement) from time to time party to the First Lien Credit Agreement.

**1.63** **"First Lien Loan Documents"** means the First Lien Credit Agreement and the other Loan Documents (as each of those terms is defined in the First Lien Credit Agreement), and any other document related to or evidencing the loans and obligations thereunder, and the liens and security interests arising therefrom.

**1.64** **"First Lien Secured Claims"** means the Claims against the Debtors as of the Petition Date arising under the First Lien Loan Documents comprised of the Revolving Loan and the Letters of Credit (as each of those terms is defined in the First Lien Credit Agreement), which shall be Allowed, and not subject to any counterclaim, defense, offset, or reduction of any kind, in the principal amount of $51,302,532.00, plus accrued and unpaid interest, fees, expenses (including advisors fees and expenses, in each case, that are chargeable or reimbursable under the First Lien Loan Documents), disbursements, charges, claims, indemnities and other costs and obligations of whatever nature incurred in connection therewith which are chargeable or otherwise reimbursable under the First Lien Loan Documents or applicable law, whether arising before or after the Petition Date, including any "Obligations" (as defined in each of the respective First Lien Loan Documents) and any Adequate Protection Payments, of any kind or nature, whether or not evidenced by any note, agreement or other instrument, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Debtors' obligations under the First Lien Loan Documents.

**1.65** **"General Unsecured Claim"** means any Claim, other than an Administrative Claim, DIP Lender Claim, Fee Claim, First Lien Secured Claim, Priority Tax Claim, Priority Non-

Tax Claim, Other Secured Claim, or Subordinated Claim, that is not entitled to priority under the Bankruptcy Code or any Final Order of the Bankruptcy Court but which shall include, among others, any Deficiency Claims (if any), Rejection Claims and Claims based on guarantee agreements or for indemnification.

**1.66** **"Governmental Unit"** means a "governmental unit" as defined in section 101(27) of the Bankruptcy Code.

**1.67** **"Impaired"** means, when used in reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

**1.68** **"Insider"** means an "insider" as defined under section 101(31) of the Bankruptcy Code or applicable case law, whether existing at the time of Confirmation or any time thereafter. When describing a Claim, such term shall mean a Claim held or otherwise asserted by an Insider.

**1.69** **"Insurance Contract"** means all insurance policies that have been issued at any time to or provide coverage to the Debtors and all agreements, documents, or instruments relating thereto.

**1.70** **"Insurer"** means any company or other Person that issued an Insurance Contract, including with respect to any respective predecessors and/or affiliates of the Debtors.

**1.71** **"Interest"** means the right of any current or former holder or owner of any equity security (as defined in section 101(16) of the Bankruptcy Code) of a Debtor, including all shares, common stock, preferred stock, a limited liability company or other membership or partnership interest or unit, or other instrument evidencing any fixed or contingent ownership interest in any Debtor, including any option, warrant, or other right, contractual or otherwise, to acquire any ownership interest in a Debtor, or any right to payment or compensation based upon any such interest, whether or not such interest is owned by the holder of such right to payment or compensation whether or not transferable and whether fully vested or vesting in the future, that existed immediately before the Effective Date.

**1.72** **"Intercompany Claims"** means all amounts due to a Debtor from a Debtor, as reflected in the Debtors books and records or as listed in the Debtors' Schedules.

**1.73** **"IRS"** means the Internal Revenue Service of the United States of America.

**1.74** **"JPMorgan"** means JPMorgan Chase Bank, N.A., in its capacity as Administrative Agent, Swingline Lender and Issuing Bank (each as defined in the First Lien Credit Agreement) under the First Lien Credit Agreement and the other First Lien Loan Documents.

**1.75** **"Late Filed Claims"** mean any Claim filed after the Claims Bar Date with the express authorization of the Bankruptcy Court.

**1.76** **"LC Collateral Account"** has the same meaning ascribed to as in the Sale Order.

**1.77** **"Letter of Credit"** has the same meaning ascribed to as in the Sale Order.

**1.78** **"Lien"** has the meaning set forth in section 101(37) of the Bankruptcy Code, and, with respect to any Asset, includes, without limitation, any mortgage, lien, pledge, charge, security interest or other encumbrance of any kind, or any other type of preferential arrangement that has the practical effect of creating a security interest, in respect of such Asset.

**1.79** **"Liquidating Trust"** means the trust described in ARTICLE VIII of this Plan and as set forth in the Liquidating Trust Agreement.

**1.80** **"Liquidating Trust Agreement"** means the certain liquidating trust agreement for the Debtors, which will be filed as a Plan Supplement, that is to govern the administration of the Liquidating Trust, including the rights and duties of the Liquidating Trustee.

**1.81** **"Liquidating Trust Assets"** means the Assets conveyed to the Liquidating Trust, pursuant to Section 8.5 of the Plan, as of the Effective Date, and defined in the Liquidating Trust Agreement and expressly including any excess Cash proceeds from the Sale Transaction after the payment of the First Lien Secured Claims (including any unpaid Adequate Protection Payments), the DIP Lender Claims and any other Claims or amounts required to be paid out of the Purchase Price under this Plan or the Sale Order; *provided, however*, no Assets that are secured by the Liens of the First Lien Lenders, JPMorgan, or the DIP Lender shall be conveyed to the Liquidating Trust until (i) the First Lien Secured Claims (including any unpaid Adequate Protection Payments) are Paid in Full (as such term is defined and used in Paragraph 10 of the DIP Order), (ii) the DIP Lender Claims are paid in full, (iii) the LC Collateral Account is funded as provided for in Paragraph 8(i) of the Sale Order, and (iv) the Purchaser has caused an amount in immediately available funds equal to 110% of the amount of the Credit Card Exposure to be deposited into the Credit Card Collateral Account.

**1.82** **"Liquidating Trustee"** means the person identified as such in the Liquidating Trust Agreement or a separate Plan Supplement.

**1.83** **"Litigation Claim"** means a General Unsecured Claim that was the subject of a pending demand, lawsuit, arbitration proceeding or similar action as of the Petition Date, including, without limitation, any Claim based on personal injury as that term is used in 28 U.S.C. § 157(b)(5).

**1.84** **"Loan Agreements"** has the meaning ascribed to it in the DIP Order.

**1.85** **"Non-Insider"** means any Person other than an Insider. When describing a Claim, such term shall mean a Claim held or otherwise asserted by a Non-Insider.

**1.86** **"Notice of Bankruptcy"** means the *Notice of Chapter 11 Bankruptcy, Meeting of Creditors, & Deadlines* [ECF No. 80].

**1.87** **"Objection"** includes (a) an objection to the allowance of a Claim interposed by any party entitled to do so within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, and (b) as to any Governmental Unit, shall include a proceeding commenced under section 505 of the Bankruptcy Code to determine the legality or amount of any tax.

**1.88** **"Other Secured Claims"** means Claims against a Debtor, other than the First Lien Secured Claims, the DIP Lender Claims, the Secured Tax Claims and the Trust Fund Tax Claims, that are (i) secured by a Lien on property in which a Debtor has an interest, which Lien is valid, perfected and enforceable under applicable law or by reason of a Final Order, or (ii) subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim holder's interest in the Debtor's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code.

**1.89** **"Old Equity Interests"** means the Interests of the Debtors prior to the Effective Date.

**1.90** **"Person"** means a "person" as defined in section 101(41) of the Bankruptcy Code and also includes any individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, Governmental Unit, or other Entity.

**1.91** **"Petition Date"** means May 4, 2020, the date on which each of the Debtors filed their voluntary chapter 11 petitions.

**1.92** **"Plan"** means this Chapter 11 plan of liquidation, either in its present form or as it may be altered, amended, or modified from time to time.

**1.93** **"Plan Document" or "Plan Documents"** mean any documents related to the Plan, including the Disclosure Statement, the Transactional Documents, the Liquidating Trust Agreement, Plan Supplements, notices, Ballots, and any other contract, instrument, release or other agreement or document created or entered into in connection with the Plan or Disclosure Statement.

**1.94** **"Plan Rate"** or **"Plan Interest Rate"** means the federal post-judgment rate as set forth in 28 U.S.C. § 1961, in effect on the Effective Date or such other rate as approved or ordered by the Bankruptcy Court. For purposes of calculating interest under this Plan, the "date of the judgment" shall be the Petition Date.

**1.95** **"Plan Supplement"** means collectively, one or more supplemental appendices to the Plan containing, among other things, the forms of any organizational documents relevant to the Liquidating Trust Agreement, the identity of the Liquidating Trustee, and any other required documents set forth in this Plan.

**1.96** **"Plan Supplement Filing Date"** means August 7, 2020, unless extended by order of the Bankruptcy Court.

**1.97** **"Preference Action"** means an Avoidance Action pursuant to section 547 of the Bankruptcy Code, including, but not limited to, the avoidance and recovery of any transfer listed in the Statement of Financial Affairs including any amendment, supplement, or attachment thereto.

**1.98** "**Prior Order**" means any order previously entered by the Bankruptcy Court in these Cases.

**1.99** **"Priority Non-Tax Claim"** means a Claim, other than the DIP Lender Claims, an Administrative Claim or a Priority Tax Claim, which is entitled to priority of payment pursuant to section 507(a) of the Bankruptcy Code.

**1.100** **"Priority Tax Claim"** means a Claim of a Governmental Unit of the kind entitled to priority pursuant to sections 502(i) and 507(a)(8) of the Bankruptcy Code.

**1.101** **"Professional"** means those Persons retained pursuant to an order of the Bankruptcy Court in accordance with sections 327, 328, 330, 331, 333, 363, 503(b) or 1103 of the Bankruptcy Code or who have been employed by a Final Order of the Bankruptcy Court.

**1.102** **"Professional Fee Order"** means that certain *Order Granting Motion for Administrative Order Under Bankruptcy Code Sections 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement Expenses for Professionals* or any other interim compensation procedures order entered in these Cases.

**1.103** **"Purchased Assets"** has the meaning given to the term "Assets" in the Transactional Documents, including substantially all assets of the Debtors and Interests in Gold's Gym Licensing, LLC.

**1.104** **"Purchase Price"** has the meaning set forth in Section 3.1 of the Asset Purchase Agreement.

**1.105** **"Purchaser"** has the same meaning ascribed to as in the Sale Order, including RSG Group USA Inc. and its affiliates.

**1.106** **"Rejection Claim"** means a Claim arising under section 502(g) of the Bankruptcy Code as a consequence of the rejection of any Executory Contract or Unexpired Lease.

**1.107** **"Related Parties"** means collectively, its predecessors, successors, assigns, subsidiaries, direct and indirect Affiliates, managed accounts and funds, current officers and directors, principals, shareholders, members, partners, managers, employees, subcontractors, agents, advisory board members, advisors, financial advisors, attorneys, accountants, investment bankers, consultants, agents, representatives, management companies, fund advisors, and other professionals, and such Person's respective heirs, executors, estates, servants, and nominees, in each case in their capacity as such.

**1.108** **"Released Parties"** means collectively: (a) the Debtors and their Estates; (b) the Purchaser; (c) the First Lien Lenders; (d) JPMorgan; (e) the DIP Lender; (f) the Committee and each of its members; and (g) each of the Related Parties of the Persons in the foregoing (a)-(g); *provided, however*, that each such Person shall only be released as specifically set forth in Article VII of the Plan; *provided, further*, that for avoidance of doubt, the Debtors' Professionals shall not be Released Parties; *provided, further*, that if any of the Persons in the foregoing (b)-(g) "opt out" of, or objects to, the releases provided in this Plan, as applicable, then such Persons shall not be included in the definition of "Released Parties."

**1.109** **"Releasing Parties"** means, collectively, in each case solely in their respective capacities as such: (a) the Debtors and their Estates; (b) the Purchaser; (c) the First Lien Lenders;

(d) JPMorgan; (e) the DIP Lender; (f) the Committee and each of its members; (g) each of the Related Parties of the Persons in the foregoing (a)-(g); and (h) those Holders of Claims and Interests (1) who vote to accept this Plan, (2) who are Unimpaired under this Plan and do not "opt out" of, or object to, granting the releases provided herein, (3) whose vote to accept or reject this Plan is solicited but who do not vote either to accept or to reject this Plan and do not "opt out" of, or object to, granting the releases herein, or (4) who vote to reject this Plan but do not "opt out" of, or object to, granting the releases herein; *provided*, *however*, Holders of Claims and Interests that are deemed to have rejected the Plan are not Releasing Parties, and to the extent that any Holders of Claims and Interests that are deemed to have rejected the Plan are required to "opt out" of, or object to, granting the releases herein, those Holders of Claims and Interests that are deemed to have rejected the Plan shall be deemed to have "opted out" of, and objected to, granting the releases herein.

1.110 "**Replacement LC**" has the same meaning ascribed to as in the Sale Order.

1.111 "**Reserved Causes of Action**" means Causes of Action not otherwise released under the Plan, Disclosure Statement, Plan Supplement, Sale Order, or a Prior Order. These Causes of Action will be transferred to the Liquidating Trust on the Effective Date.

1.112 "**Sale Notice**" means *Notice of Auction Results and Proposed Sale of Assets to the Successful Bidder RSG Group USA Inc.* [ECF No. 374].

1.113 "**Sale Order**" means that certain *Order (I) Approving the Sale of Assets to the Successful Bidder Free and Clear of Liens, Claims and Encumbrances, (II) Approving the Asset Purchase Agreement, (III) Authorizing the Debtors to Assume and Assign Executory Contracts and Unexpired Leases in Connection with the Sale, and (IV) Granting Related Relief* [ECF No. 428].

1.114 "**Sale Transaction**" means the sale of assets and assumption and assignment of Assumed Contracts that was approved by the Sale Order as set forth in the APA and related Transactional Documents.

1.115 "**Scheduled**" means with respect to any Claim, the status and amount, if any, of such Claim as set forth in the Debtor's respective Schedules

1.116 "**Schedules**" means the schedules of assets and liabilities and the Statement of Financial Affairs filed by the Debtors in their respective case number as required by section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules or statements have been filed or may be subsequently amended or supplemented.

1.117 "**Secured Claim**" means a Claim that is secured by Lien upon property in which the Debtors' Estates have an interest or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claimant's interest in the Estates' interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code.

1.118 "**Secured Tax Claim**" means a Secured Claim owing to a Governmental Unit.

**1.119** **"Securities Act"** means the Securities Act of 1933, as now in effect or hereafter amended, and the rules and regulations of the U.S. Securities and Exchange Commission promulgated thereunder.

**1.120** **"Security"** means any "security" as such term is defined in section 101(49) of the Bankruptcy Code.

**1.121** **"Solicitation Order"** means the order entered by the Bankruptcy Court establishing procedures with respect to the solicitation and tabulation of votes to accept or reject this Plan.

**1.122** **"Stalking Horse Bidder"** means TRT Gym Asset Holdings, LLC, a Delaware limited liability company or its authorized designee.

**1.123** **"Statement of Financial Affairs"** means the Statement of Financial Affairs, including any and all amendments and supplements, filed by the Debtors in their respective case number.

**1.124** **"Subordinated Claim"** means any Claim that is subject to (a) subordination under section 510 of the Bankruptcy Code or any other statute, (b) contractual subordination, or (c) equitable subordination as determined by the Bankruptcy Court in a Final Order, including, without limitation, any Claim (i) for or arising from the rescission of a purchase, sale, issuance, or offer of a Security of any Debtor; (ii) for damages arising from the purchase or sale of such a Security; or (iii) for reimbursement, indemnification, or contribution allowed under section 502 of the Bankruptcy Code on account of such Claim.

**1.125** **"Tax Order"** means the *Order (a) Authorizing the Debtors to Remit and Pay Sale, Use and Franchise Taxes and Certain Other Government Charges, and (B) Approving Related Relief* [ECF No. 56].

**1.126** **"Transactional Documents"** means, unless otherwise defined in the Sale Order, the Asset Purchase Agreement and such other incidental documents as necessary to effectuate the Sale Transaction.

**1.127** **"Unexpired Lease"** means a lease entered into by a Debtor prior to the Petition Date and has not terminated prior to the Confirmation Hearing. If the Unexpired Lease is not explicitly assumed on or before the Effective Date, it is deemed Rejected under the Plan.

**1.128** **"Unclaimed Property"** means any Cash, Distribution, or any Liquidating Trust Assets for a period of one (1) year after the applicable date of Distribution.

**1.129** **"Unimpaired"** means, when used in reference to a Claim or Interest, a Claim or Interest that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

**1.130** **"U.S. Trustee"** means the Office of the United States Trustee for the Northern District of Texas, or a representative thereof.

**1.131 "Voting Deadline"** means the last Business Day and time for submitting Ballots to accept or reject this Plan in accordance with section 1126 of the Bankruptcy Code as specified in the Solicitation Order.

**1.132 "Voting Record Deadline"** means the date and time established by the Bankruptcy Court in the Solicitation Order for determining those Claimants entitled to vote on the Plan.

## B.    Rules of Interpretation.

For purposes of this Plan: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (b) any reference in this Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such agreement or document will be substantially in such form or substantially on such terms and conditions; (c) any reference in this Plan to an existing document or Exhibit filed or to be filed means such document or Exhibit, as it may have been or may be amended, modified, or supplemented; (d) unless otherwise specified, all references in this Plan to sections, articles, and Exhibits are references to sections, articles, and Exhibits of or to this Plan; (e) the words "herein" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (f) captions and headings to articles and sections are inserted for convenience of reference only and are not intended to be a part of, or to affect, the interpretation of this Plan; (g) "after notice and a hearing," or a similar phrase has the meaning given such term in section 102 of the Bankruptcy Code; (h) "includes" and "including" are not limiting; (i) "may not" is prohibitive, and not permissive; (j) "or" is not exclusive; and (k) U.S. Trustee includes a designee of the U.S. Trustee.

## C.    Computation of Time.

In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) will apply.

**ARTICLE II**
**ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS,**
**AND PRIORITY NON-TAX CLAIMS**

### 2.1.    <u>Administrative Claims.</u>

Subject to the provisions of ARTICLE XII of this Plan, on, or as soon as reasonably practicable thereafter, the later of (i) the Effective Date, (ii) the 14th Business Day after such Administrative Claim becomes an Allowed Administrative Claim, or (iii) the date such Administrative Claim becomes payable pursuant to any agreement between the holder of such Administrative Claim and the Liquidating Trustee, unless such Administrative Claim is released pursuant to this Plan or a Prior Order of the Bankruptcy Court, the holder of each Allowed Administrative Claim shall receive in full satisfaction from the Liquidating Trustee, release, settlement, and discharge of such Allowed Administrative Claim: (A) Cash equal to the unpaid portion of such Allowed Administrative Claim; or (B) in accordance with the terms of any written agreement with the Liquidating Trustee regarding such Allowed Administrative Claim.

## 2.2.    Priority Tax Claims.

During the course of these Cases, the Debtors paid sales taxes as permitted by the DIP Order and the Tax Order.  As of the filing of this Plan, the Debtors' 2020 taxes are not due.  Any Priority Tax Claims due and outstanding as of the Effective Date shall be paid in full on or as soon as practicable after the Effective Date.

Nothing in this Plan shall modify or affect the Lien rights of a Governmental Unit under applicable non-bankruptcy law.  Whatever rights any Governmental Unit holds in any collateral or proceeds thereof shall remain in effect and shall not be altered by the Plan or the Confirmation Order until such allowed Secured Tax Claim is paid in full, at which time any and all corresponding Liens and encumbrances shall be fully discharged.

## 2.3.    Priority Non-Tax Claims.

Except to the extent that a Claimant holding a Priority Non-Tax Claim has been paid prior to the Effective Date, agrees to a different treatment in writing with the Debtors, or is the subject of an order entered with respect to the treatment of such Priority Non-Tax Claim prior to the Effective Date, each Allowed Priority Non-Tax Claim, in full satisfaction, release and discharge of and exchange for such Claim, shall receive Cash in an amount equal to the Allowed amount of such Priority Non-Tax Claim in accordance with section 1129(a)(9) of the Bankruptcy Code, on (or as reasonably practicable thereafter) the later of: (i) the Effective Date; and (ii) the date such Priority Non-Tax Claim becomes an Allowed Claim; provided, however, that Allowed Priority Non-Tax Claims representing liabilities incurred in the ordinary course of business by the Debtors, as debtors in possession, that are not yet due and payable as of the Effective Date shall not be paid on the Effective Date but rather shall be paid by the Liquidating Trustee, in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any orders or agreements governing, instruments evidencing, or other documents establishing, such liabilities.  Notwithstanding the foregoing, to the extent the Allowed amount of a Priority Non-Tax Claim asserting priority treatment under sections 507(a)(4) and (5) of the Bankruptcy Code exceeds the statutory cap applicable to such Claim, such excess shall be treated as a Class 3 General Unsecured Claim.

## ARTICLE III
## CLASSIFICATION OF CLAIMS AND INTERESTS

Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of classes of Claims against and Interests in the Debtors.  All Claims and Interests, except Administrative Claims, Priority Tax Claims and Priority Non-Tax Claims, are placed in the Classes as set forth below.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Priority Tax Claims and Priority Non-Tax Claims of the kinds specified in sections 507(a) of the Bankruptcy Code have not been classified, and their treatment is set forth in ARTICLE II above.

A Claim or Interest is placed in a particular Class only to the extent the Claim or Interest falls within the description of that Class and classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes.  A Claim or Interest is also placed in a particular Class only for the purpose of voting on, and receiving a Distribution

pursuant to, the Plan to the extent such Claim or Interest is an Allowed Claim or an Allowed Interest in that Class and such Claim or Interest has not been paid, released or otherwise settled prior to the Effective Date.

**3.1. <u>Classification of Claims Against and Interests in the Debtors.</u>**

    (a)    Class 1:    Secured Claims

                1.A    First Lien Secured Claims

                1.B    DIP Lender Claims

                1.C    Secured Tax Claims and Trust Fund Tax Claims

                1.D    Other Secured Claims

    (b)    Class 2:    Convenience Claims

    (c)    Class 3:    General Unsecured Claims

    (d)    Class 4:    Intercompany Claims

    (e)    Class 5:    Subordinated Claims

    (f)    Class 6:    Old Equity Interests

**ARTICLE IV**
**IDENTIFICATION OF CLASSES OF CLAIMS AND INTERESTS**
**IMPAIRED AND NOT IMPAIRED BY THE PLAN**

**4.1. <u>Impaired Classes of Claims and Interests.</u>**

All Classes <u>except</u> Class 1.C are Impaired. Classes 1.A, 1.B, 1.D, 2, 3, 4, 5 and 6 are entitled to vote. Classes 1.B, 4 and 6 will not count toward satisfaction of section 1129(a)(10) because the holders of Claims in those Classes are Insiders or affiliates.

**ARTICLE V**
**PROVISIONS FOR TREATMENT OF CLAIMS AND INTERESTS**

**5.1. <u>Class 1 – Secured Claims.</u>**

    (a)    <u>Class 1.A – First Lien Secured Claims</u>

                The First Lien Secured Claims shall be Allowed in the aggregate principal amount outstanding under the First Lien Credit Agreement, plus interest, fees, costs, charges, and other obligations arising thereunder (including any unpaid Adequate Protection Payments), which such Allowed amount shall not be less than $51,302,532.00.

On the Effective Date, except to the extent that the First Lien Secured Claims (including any unpaid Adequate Protection Payments) have been paid in full in cash pursuant to the Sale Order prior to the Effective Date, and except to the extent that a holder of an Allowed First Lien Secured Claim agrees to less favorable treatment, and except as otherwise set forth in Article VII hereof, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for each Allowed First Lien Secured Claim, each holder of a Allowed First Lien Secured Claim shall receive payment of such Allowed First Lien Secured Claim from the Cash sale proceeds from the Sale Transaction. Any unpaid Adequate Protection Payments, including, but not limited to, interest, bank fees and attorneys' fees, as of the Effective Date shall, except to the extent the First Lien Lenders and JPMorgan agree to different treatment, and notwithstanding any contrary timing requirements set forth in any Prior Order, be paid in full in cash on the Effective Date. Notwithstanding the foregoing sentence, as a condition precedent to the Liquidating Trustee's (as the successor to the Debtors) obligation to pay any unpaid Adequate Protection Fees and Expenses, the professionals for JPMorgan shall deliver a copy of their respective invoices to the Liquidating Trustee. The invoices for such fees and expenses shall not be required to comply with any U.S. Trustee guidelines related to the payment of fees and expenses of retained estate professionals, may be in summary form only, and shall not be subject to application or allowance by the Court. Any objections raised by the Liquidating Trustee with respect to such invoices within fourteen (14) calendar days of receipt thereof will be resolved by the Court (absent prior consensual resolution thereof). Pending such resolution, the undisputed portion of any such invoice shall be promptly paid by the Liquidating Trustee. Except as otherwise ordered by the Court in the event an objection is timely filed, such fees and expenses shall not be subject to any setoff, defense, claim, counterclaim, or diminution of any type, kind, or nature whatsoever. Notwithstanding anything in this Plan to the contrary, the First Lien Lenders' and JPMorgan's rights against the Debtors or any successors to the Debtors (including the Liquidating Trustee), as applicable, but only with respect to compensation, reimbursement of expenses (including attorney's fees), and indemnity under the Loan Agreements, the Sale Order, the DIP Order, and/or applicable law, are otherwise preserved and shall continue in effect until such obligations are paid in full to the extent provided for in the aforementioned documents and this Plan.

Class 1.A is Impaired and, therefore, holders of Allowed First Lien Secured Claim in Class 1.A will be entitled to vote to accept or reject the Plan.

(b)    <u>Class 1.B – DIP Lender Claims</u>

On the Effective Date, except to the extent that the DIP Lender Claims have been paid in full in cash pursuant to the Sale Order prior to the Effective Date, and except to the extent that the DIP Lender agrees to less favorable treatment, and except as otherwise set forth in Article VII hereof, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for DIP Lender Claims, the DIP Lender shall receive payment of such DIP Lender Claims from the Cash sale proceeds from the Sale Transaction. In the case of Purchaser, Purchaser may elect for any portion of its DIP Lender Claim to be satisfied through the Purchase Price Credit (as that term is defined in the DIP Order). Any unpaid DIP Lender Claims, including, but not limited to, interest, fees and attorneys' fees, as of the Effective Date shall, except to the extent the DIP Lender agree to different treatment, be paid in full in cash on the Effective Date. Notwithstanding anything in this Plan to the contrary, the DIP Lender's rights against the Debtors or any successors to the Debtors (including the Liquidating Trustee), as applicable, but only with respect to compensation, reimbursement of expenses (including attorney's fees), and indemnity under the DIP Note, the Sale Order, the DIP Order, and/or applicable law, are otherwise preserved and shall continue in effect until such obligations are paid in full to the extent provided for in the aforementioned documents and this Plan.

Class 1.B is Impaired and, therefore, holders of DIP Lender Claims in Class 1.B will be entitled to vote to accept or reject the Plan**.**

(c)    <u>Class 1.C – Secured Tax Claims and Trust Fund Tax Claims</u>

The Debtors shall pay all Secured Tax Claims and Trust Fund Tax Claims in the ordinary course of business during the pendency of these Cases. Holders of any Secured Tax Claims and Trust Fund Tax Claims outstanding as of the Effective Date shall be paid on the later of: (a) the Effective Date of the Plan, or (b) the date immediately prior to the date on which such Claims would become delinquent under applicable non-bankruptcy law, together with interest at the applicable non-bankruptcy rate. Any Liens securing such Secured Tax Claims, and any rights of holders of Trust Fund Tax Claims, shall attach to the Cash proceeds from the Sale Transaction with the same extent, priority, and validity as in effective as of the Effective Date.

Class 1.C is Unimpaired and, therefore, holders of Allowed Secured Tax Claims and Allowed Trust Fund Tax Claims in Class 1.C are deemed to have accepted the Plan.

(d)     Class 1.D – Other Secured Claims

With respect to Other Secured Claims, the Debtors do not believe there exist any Creditors holding Other Secured Claims that would have a priority greater than those Liens asserted by the First Lien Secured Claim Holders. To the extent there exist any Holders of Allowed Other Secured Claims, unless such Holder agrees to less favorable treatment, the Debtors shall, at their option and with the consent of the Purchaser, the First Lien Secured Claim Holders, and the DIP Lender, pay the Claimant the amount of the Allowed Other Secured Claim in Cash on the Effective Date, or return the collateral securing such Allowed Other Secured Claim to the Holder in full satisfaction of such Allowed Claim. Absent such consent, all Other Secured Claims shall be Deficiency Claims, treated under Section 5.3 below.

Class 1.D is Impaired and, therefore, holders of Allowed Other Secured Claim are deemed to have accepted the Plan.

**5.2.     Class 2 – Convenience Claims**

(a)     Each holder of a timely filed or Scheduled General Unsecured Claim that is equal to or lesser than the Convenience Claim Limit holds an Allowed Convenience Claim in the amount of such Claim, except that a holder of an Allowed Convenience Claim shall only be entitled to a single recovery of any such Allowed Convenience Claim.

(b)     As soon as practicable following the later of (i) the Effective Date and (ii) the Claims Bar Date, each holder of an Allowed Convenience Claim shall receive, in full satisfaction, settlement, and release of, and in exchange for such Allowed Convenience Claim, a single Cash Distribution equal to 100% of such Allowed Convenience Claim, plus interest at the Plan Interest Rate.

(c)     Class 2 is Unimpaired and, therefore, each holder of an Allowed Convenience Claim is deemed to have accepted the Plan.

**5.3.     Class 3 – General Unsecured Claims.**

(a)     Except as set forth in paragraph (c) of this subsection, General Unsecured Claim holders, including, for the avoidance of doubt, holders of any General Unsecured Claims timely asserted against Gold's Gym Licensing, LLC as set forth in the Dismissal Order, shall receive beneficial interests in the Liquidating Trust in full satisfaction of such Allowed General Unsecured Claim.

(b)     For the avoidance of doubt, the Liquidating Trust will include, among other assets, any excess Cash proceeds from the Sale Transaction after the payment of the First Lien Secured Claims (including any unpaid Adequate Protection Payments), the DIP Lender Claims

and any other Claims or amounts required to be paid out of the Purchase Price under this Plan or the Sale Order; *provided, however*, no Assets that are secured by the Liens of the First Lien Lenders, JPMorgan, or the DIP Lender shall be conveyed to the Liquidating Trust until (i) the First Lien Secured Claims (including any unpaid Adequate Protection Payments) are Paid in Full (as such term is defined and used in Paragraph 10 of the DIP Order), (ii) the DIP Lender Claims are paid in full, (iii) the LC Collateral Account is funded as provided for in Paragraph 8(i) of the Sale Order, and (iv) the Purchaser has caused an amount in immediately available funds equal to 110% of the amount of the Credit Card Exposure to be deposited into the Credit Card Collateral Account. Distributions on account of such beneficial interests in the Liquidating Trust shall be governed by the Liquidating Trust Agreement, which will be filed as a Plan Supplement, and consistent with all other provisions of this Plan, including Sections 8.4 – 8.5 hereof.

(c)     Any General Unsecured Claim that is greater than the Convenience Claim Limit, but less than or equal to $5,000.00, shall be deemed Allowed on the first Business Day that is at least 30 days after the later of the Effective Date and the Claims Bar Date, *unless* a Claim Objection is filed with the Bankruptcy Court no later than the first Business Day that is at least 30 days after the later of the Effective Date and the Claims Bar Date. In the absence of a timely filed Objection to such General Unsecured Claims, such Claim shall become Allowed as set forth in Article XI of this Plan. As soon as practicable following the date when such General Unsecured Claim becomes Allowed, the holder of such Allowed General Unsecured Claim shall receive, in full satisfaction, settlement, and release of, and in exchange for such Allowed General Unsecured Claim, a single Cash Distribution equal to 100% of such Allowed General Unsecured Claim, plus interest at the Plan Interest Rate.

(d)     In light of the Purchase Price of approximately $100 million, it is the Debtors' present belief, subject to final reconciliation of all Claims asserted on or before the Claims Bar Date, that the excess Cash proceeds from the Sale Transaction should be sufficient for payment of all Allowed General Unsecured Claim, with interest at the Plan Interest Rate, after satisfaction of all Allowed Administrative Claims, Priority Tax Claims, Priority Non-Tax Claims, Secured Claims, Convenience Claims and funding of expenses for the Liquidating Trust expenses as contemplated in the Liquidating Trust Agreement.

(e)     Class 3 is Impaired and, therefore, each holder of a General Unsecured Claim will be entitled to vote to accept or reject the Plan.

### 5.4.    Class 4 – Intercompany Claims.

(a)     On the Effective Date, any and all Intercompany Claims held by any of the Debtors shall be deemed discharged and released without any Distributions.

(b)     Class 4 is Impaired and, therefore, holders of Allowed Intercompany Claims in Class 4 will be entitled to vote to accept or reject the Plan.

### 5.5.    Class 5 – Subordinated Claims.

(a)     Subordinated Claims may be Allowed by Order of the Bankruptcy Court. However, no Distribution of any kind will be made by the Liquidating Trustee on account of such Allowed Subordinated Claims unless and until all Allowed Administrative Claims, Priority Tax

Claims, Priority Non-Tax Claims, Secured Claims, and General Unsecured Claims have been paid in accordance with the terms of this Plan. Thereafter, as Cash in excess of the Liquidating Trustee's Distributions to General Unsecured Creditors is available from the Liquidating Trust Assets, the Liquidating Trustee may make *pro rata* Distributions to holders of Allowed Subordinated Claims.

(b)     Class 5 is Impaired and, therefore, holders of Allowed Subordinated Claims in Class 5 will be entitled to vote to accept or reject the Plan.

### 5.6. <u>Class 6 – Old Equity Interests.</u>

(a)     No Distribution of any kind will be made by the Liquidating Trustee on account of Interests in the Debtors unless and until all Allowed Administrative Claims, Priority Tax Claims, Priority Non-Tax Claims, Secured Claims, Convenience Claims, General Unsecured Claims and Subordinated Claims have been paid in full in accordance with the terms of this Plan, including any and all interest accrued at the Plan Interest Rate and fees allowable under applicable law. Thereafter, as Cash in excess of the Liquidating Trustee's Distributions to Allowed General Unsecured Claims and  Allowed Subordinated Claims is available from the Liquidating Trust Assets, the Liquidating Trustee shall make pro rata Distributions to holders of Interests in the Debtors. This beneficial interest in the Liquidating Trust is provided to holders of Interest on account of such Interests, and such Interests will be cancelled under the Plan. On and after the Effective Date, the Liquidating Trustee shall take all steps necessary to dissolve Debtors and any subsidiaries thereof pursuant to applicable non-bankruptcy law prior to December 31, 2020.

(b)     Class 6 is Impaired by the Plan. Each holder of an Interest is entitled to vote to accept or reject the Plan.

### ARTICLE VI
### ACCEPTANCE OR REJECTION OF PLAN

### 6.1. <u>Classes Entitled to Vote.</u>

Subject to Section 6.5 of this Plan, holders of Claims in Impaired Classes of Claims and Interests are entitled to vote as a Class to accept or reject the Plan.

### 6.2. <u>Acceptance by Impaired Classes.</u>

Each Impaired Class of Claims that will (or may) receive or retain property or any interest in property under the Plan, shall be entitled to vote to accept or reject the Plan. An Impaired Class of Claims shall have accepted their respective Plan if: (a) the holders (other than any holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Claims for the Debtors actually voting in such Class have voted to accept the Plan, and (b) the holders (other than any holder designated under section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims for the Debtors actually voting in such Class have voted to accept the Plan.

### 6.3. Classes Deemed to Accept Plan.

Class 1.C Claims are not impaired under the Plan and, thus, not entitled to vote, as such Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

### 6.4. Classes Deemed to Reject Plan.

Claims and Interests in Impaired Classes that do not entitle the holders thereof to receive or retain any property under the Plan are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

### 6.5. Summary of Classes Voting on the Plan.

The votes of holders of Claims in Classes 1.A, 1.B, 1.D, 2, 3, 5 and 6 will be solicited with respect to the Plan. Class 4 Intercompany Claims will not be solicited in the interest of conserving costs because such votes will not count toward satisfaction of the requirements of section 1129(a)(10) of the Bankruptcy Code. Claims and Interests of Classes 1.B and 6 will be solicited but will not count toward such satisfaction for the same reason.

### 6.6. Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code.

If any Class of Claims entitled to vote on the Plan does not vote to accept their respective Plan, the Debtors may: (a) seek confirmation of the Plan under section 1129(b) of the Bankruptcy Code; or (b) amend or modify the Plan in accordance with Sections 13.4 and 13.5 of the Plan. With respect to any Class of Claims or Interests that is deemed to reject the Plan, the Debtors shall request that the Bankruptcy Court confirm or "cramdown" the Plan pursuant to section 1129(b) of the Bankruptcy Code.

## ARTICLE VII
## INDEMNIFICATION, RELEASE, INJUNCTIVE AND RELATED PROVISIONS

### 7.1. Compromise and Settlement.

(a)     Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, Distributions and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests, Causes of Action (where applicable), and controversies resolved pursuant to the Plan, including, without limitation, all Claims arising prior to the Petition Date, whether known or unknown, foreseen or unforeseen, asserted or unasserted, arising out of, relating to, or in connection with the business or affairs of, or transactions with, the Debtors. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements, including the Sale Transaction pursuant to the Transactional Documents and related provisions detailed in ARTICLE VIII of this Plan and all other compromises and settlements provided for in the Plan. The Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtors, the Estates, Creditors, and other parties in interest, and are fair, equitable, and within the range of reasonableness.

(b)     It is not the intent of the Debtors that confirmation of the Plan shall in any manner alter or amend any settlement and compromise between the Debtors and any Person that has been previously approved by the Bankruptcy Court (each, a "Prior Settlements").  To the extent of any conflict between the terms of the Plan and the terms of any Prior Settlements, the terms of the Prior Settlements shall control and such Prior Settlement shall be enforceable according to their respective terms.  Further, nothing in this Section 7.1 shall constitute the modification of any transaction that has been approved, including without limitation, the Final DIP Order, the Sale Order, or a compromise or settlement of a Claim of a Creditor that previously has obtained relief from the automatic stay pursuant to a Prior Order.

## 7.2.     Releases.

(a)     *Releases by the Debtors and their Estates*. As of the Effective Date, except for the rights and remedies that remain in effect from and after the Effective Date to enforce this Plan and the Plan Documents, for good and valuable consideration provided by each of the Released Parties, the adequacy of which is hereby confirmed, including, without limitation, the service of the Released Parties to facilitate the liquidation of the Debtors following the consummation of the Sale Transaction under the Sale Order, and except as otherwise provided in this Plan, the Plan Documents, or in the Confirmation Order, the Released Parties are deemed forever released and discharged by the Debtors and their Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives and any and all other Persons that may purport to assert any Cause of Action derivatively, by or through the foregoing Persons, from any and all Claims, Interests, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, remedies, or liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors and their Estates, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, fraud, contract, violations of federal or state laws or otherwise, including Avoidance Actions and Preference Actions, those Causes of Action based on veil piercing or alter ego theories of liability, contribution, indemnification, joint liability or otherwise that the Debtors or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the First Lien Loan Documents, the First Lien Credit Agreement, the DIP Facility, the DIP Note, the Debtors, the Sale Transaction, the Cases, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of any Claim or Interest before or during the Cases, the negotiation, formulation, or preparation of the Disclosure Statement and this Plan and related agreements, instruments, and other documents (including the Plan Documents), the solicitation of votes with respect to this Plan, the consummation of this Plan, any action or actions taken in furtherance of or consistent with the administration or implementation of this Plan or the property to be distributed under this Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date arising from or relating to any of the foregoing, other than Claims or Causes of Action arising out of or related to any act or omission of a Released Party that constitutes actual fraud, gross negligence or willful misconduct; *provided, however*, that the foregoing provisions of this release (i) shall operate to waive and release only those Causes of Action expressly set forth in and released by this Plan, and (ii) shall not operate to

waive and release the rights of the Debtors or their Estates to enforce this Plan, the Confirmation Order, or any related agreements, instruments and other documents delivered under or in connection with this Plan or assumed or reinstated pursuant to this Plan or Final Order of the Bankruptcy Court.

(b) *Releases by the Releasing Parties*. As of the Effective Date, except for the rights and remedies that remain in effect from and after the Effective Date to enforce this Plan and the Plan Documents, to the fullest extent permitted by applicable law, for good and valuable consideration provided by the Debtors, their Estates and the Released Parties, the adequacy of which is hereby confirmed, including, without limitation, the service of the Released Parties to facilitate the implementation of the liquidation or sale, and except as otherwise provided in this Plan, the Plan Documents, or in the Confirmation Order, each of the Releasing Parties shall be deemed to have conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged the Released Parties from any and all Claims, Interests, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors or the Debtors' Estates, whether known or unknown, asserted or unasserted, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, fraud, contract, violations of federal or state laws or otherwise, including Avoidance Actions and Preference Actions, those Causes of Action based on veil piercing or alter ego theories of liability, contribution, indemnification, joint liability or otherwise that any such Releasing Party would have been legally entitled to assert in their own right (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Cases, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, on the one hand, and any Releasing Party, on the other hand, the restructuring of any Claim or Interest before or during the Cases, the Sale Transaction, the negotiation, formulation, or preparation of the Disclosure Statement, this Plan and related agreements, instruments, and other documents (including the Plan Documents), the solicitation of votes with respect to this Plan, or any other act or omission, and/or any related agreements, instruments, or other documents, the pursuit of confirmation, any action or actions taken in furtherance of or consistent with the administration or implementation of this Plan, or other property under this Plan, upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date arising from or relating to any of the foregoing, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes actual fraud, willful misconduct, or gross negligence; provided, however, that the foregoing provisions of this release (i) shall operate to waive and release only those Causes of Action expressly set forth in and released by this Plan, and (ii) shall not operate to waive and release the rights of the Releasing Parties to enforce this Plan, the Confirmation Order, or any related agreements, instruments, and other documents delivered under or in connection with this Plan or assumed or reinstated pursuant to this Plan or Final Order of the Bankruptcy Court.

(c) Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the releases set forth in this Article VII pursuant to Bankruptcy Rule 9019 and its finding that they are: (i) in exchange for good and valuable consideration, representing a good faith settlement and compromise of the Claims and Causes of Action thereby released; (ii) in the best interests of the Debtors and all holders of Claims and Interests; (iii) fair, equitable and reasonable;

(iv) approved after due notice and opportunity for hearing; and (v) a bar to any of the Released Parties asserting any Claim or Cause of Action thereby released.

### 7.3.    Exculpation.

(a)    Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or the Confirmation Order, the Debtors and their Estates and the Liquidating Trust, for themselves and on behalf of their successors and assigns, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released each of the Exculpated Parties from any and all claims, interests, obligations, rights, suits, damages, losses, costs and expenses, actions, causes of action, remedies, and liabilities of any kind or character whatsoever, including any derivative claims asserted or assertable on behalf of the Debtors and their Estates, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, suspected or unsuspected, matured or unmatured, fixed or contingent, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Estates, or the Liquidating Trustee ever had, now have, or hereafter can, shall, or may have, or otherwise would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, against any of the Exculpated Parties arising from or relating to, directly or indirectly from, in whole or in part: (i) the management or operations of the Debtors or the discharge of the Debtors' duties under the Bankruptcy Code during the pendency of these Cases; (ii) the implementation of any of the transactions provided for, or contemplated in, this Plan, the Transactional Documents or the other Plan Documents, including the issuance of Securities under or in connection with this Plan; (iii) any action taken in connection with either the enforcement of the rights of the Debtors against any Person or the defense of Claims asserted against the Debtors with regard to these Cases; (iv) any action taken in the negotiation, formulation, preparation, development, proposal, solicitation, disclosure, dissemination, confirmation, or consummation of the DIP Facility, the Disclosure Statement, the Sale Transaction, and this Plan (including the Plan Documents), or any other postpetition act taken or omitted to be taken in connection with or in contemplation of the Plan; and (v) the administration of this Plan or the Assets and property to be distributed pursuant to this Plan; *provided*, *however*, that the foregoing provisions of this Article VII shall have no effect on the liability of any Person that results from any such act or omission that is determined in a Final Order to have constituted gross negligence or willful misconduct; *provided*, *further*, that the foregoing provisions of this Article VII shall not apply to any acts, omissions, Claims, Causes of Action or other obligations expressly set forth in and preserved by the Plan or any defenses thereto.

(b)    In connection with this Section 7.3, the Exculpated Parties are entitled to reasonably rely upon the opinions of their respective counsel, accountants, and other experts or professionals and such reliance, if reasonable, shall conclusively establish the absence of gross negligence or willful misconduct; ***provided*, however**, that a determination that such reliance is unreasonable shall not, by itself, constitute a determination regarding the existence of willful misconduct or gross negligence.

(c)    If the holder of a Claim or Interest, or other Person brings an action, suit or proceeding covered by this Section 7.3 and does not prevail, such holder or other Person must pay the reasonable attorneys' fees and costs to the Exculpated Party.  Moreover, as a condition to going forward with such action, suit, or proceeding, the holder of a Claim or Interest or other Person

must, at the outset, provide appropriate proof and assurances of its capacity to pay the Exculpated Party's reasonable attorneys' fees and costs in the event the holder or other Person fails to prevail. The Exculpated Party shall have no obligation to pay, or provide appropriate proof and financial assurance of its capacity to pay, reasonable attorneys' fees and costs in the event that the holder of a Claim or Interest or other Person prevails in an such action suit or proceeding against such Exculpated Party.

**7.4.** **Injunction.**

(a) By accepting Distributions pursuant to this Plan, each holder of an Allowed Claim or Interest will be deemed to have affirmatively and specifically consented to be bound by this Plan, including, without limitation, the injunctions set forth in this section.

(b) Except as otherwise provided in the Plan or any Prior Order (including the Sale Order), from and after the Effective Date, all Persons who have held, hold, or may hold Claims against or Interests in the Debtors prior to the Effective Date are permanently enjoined from commencing or continuing in any manner against, or derivatively through, the Debtors, the Estates, the Stalking Horse Bidder, the Purchaser, the DIP Lender, TRT Holdings, Inc., JPMorgan, First Lien Lenders, the Committee, the Estates' Assets, or successors and assigns of the Debtors, and their assets and properties, as the case may be, any suit, action or other proceeding, on account of or respecting any Claim, demand, liability, obligation, debt, right, Cause of Action, interest or remedy released or to be released pursuant to the Plan or the Confirmation Order.

(c) Except as otherwise expressly provided for in the Plan or in obligations issued pursuant to the Plan, from and after the Effective Date, all Persons shall be precluded from asserting against the Debtors, the Estates, the Stalking Horse Bidder, the Purchaser, the DIP Lender, TRT Holdings, Inc., JPMorgan, First Lien Lenders, the Committee, the Estates' Assets, or successors and assigns of the Debtors, and their assets and properties, any other Claims or Interests based upon any documents, instruments, or any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date.

(d) The rights afforded in the Plan and the treatment of all Claims and Interests in the Plan shall be in exchange for and in complete satisfaction of Claims and Interests of any nature whatsoever, against the Debtors or any of their assets or properties. On the Effective Date, all such Claims against, and Interests in, the Debtors shall be satisfied and released in full.

(e) Except as otherwise expressly provided for in the Plan or in obligations issued pursuant to the Plan, all Persons are permanently enjoined, on and after the Effective Date, on account of any Claim or Interest satisfied and released hereby, from: (i) commencing or continuing, in any manner or in any place, any action or other proceeding of any kind against any Debtors, their successors and assigns (including, without limitation, the Stalking Horse Bidder and the Purchaser) and their assets and properties; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against any Debtors, their successors and assigns (including, without limitation, the Stalking Horse Bidder and the Purchaser) and their assets and properties; (iii) creating, perfecting, or enforcing any Lien or encumbrance of any kind against any Debtor, the Purchased Assets or the property or Estate of any Debtor; (iv) asserting any right of setoff, subrogation or recoupment of any kind against any debt, liability, or obligation

due from any Debtor or against the property or Estate of any Debtor; and (v) commencing or continuing, in any manner or in any place, any action or other proceeding of any kind that does not comply with or is inconsistent with the provisions of the Plan; ***provided*, however**, that nothing contained herein shall preclude such Persons from exercising their rights pursuant to and consistent with the terms of the Plan.

(f)     Notwithstanding anything to the contrary in the Plan, the Transactional Documents, the Plan Supplement, any other Plan Documents, or the Confirmation Order, nothing shall modify the rights, if any, of any holder of Claims or any current or former party to an executory contract, whether currently or previously executory, or lease of non-residential real property to assert any right of setoff or recoupment that such party may have under applicable bankruptcy or non-bankruptcy law to assert a setoff recoupment right: (i) in a security deposit held pursuant to the terms of their unexpired lease(s) with the Debtors, or any successors to the Debtors, under the Plan; (ii) in connection with Claims reconciliation as required under any Assumed Contract; or (iii) as a defense, if any, to any Cause of Action asserted by the Liquidating Trust.

### 7.5.    Release of Liens.

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against property of the Estates, shall be fully released and discharged, and all of the Debtors' rights, title and interests in such property shall be distributed or transferred in accordance with this Plan.

### ARTICLE VIII
### MEANS FOR IMPLEMENTATION OF THE PLAN

### 8.1.    Furtherance of the Sale Transaction.

(a)     On the Effective Date, the Debtors shall take all actions consistent with this Plan as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Sale Transaction under and in connection with this Plan and any Prior Order (including the Sale Order).  Upon the Effective Date, a Liquidating Trust shall be established, which shall be administered and distributed pursuant to the provisions of this Plan and the Liquidating Trust Agreement, to receive the Excluded Assets and any excess Cash proceeds from the Sale Transaction after the payment of the First Lien Secured Claims (including any unpaid Adequate Protection Payments), the DIP Lender Claims and any other Claims or amounts required to be paid out of the Purchase Price under this Plan or the Sale Order; *provided, however*, no Assets that are secured by the Liens of the First Lien Lenders, JPMorgan, or the DIP Lender shall be conveyed to the Liquidating Trust until (i) the First Lien Secured Claims (including any unpaid Adequate Protection Payments) are Paid in Full (as such term is defined and used in Paragraph 10 of the DIP Order), (ii) the DIP Lender Claims are paid in full, (iii) the LC Collateral Account is funded as provided for in Paragraph 8(i) of the Sale Order, and (iv) the Purchaser has caused an amount in immediately available funds equal to 110% of the amount of the Credit Card Exposure to be deposited into the Credit Card Collateral Account.

(b)     [Omitted].

(c)     [Omitted].

## 8.2.    **[Omitted]**

[Omitted].

## 8.3.    **[Omitted]**

[Omitted].

## 8.4.    **Creation of the Liquidating Trust.**

The Liquidating Trust shall exist from and after the Effective Date, with all of the rights and powers set forth in the Liquation Trust Agreement.  The Liquidating Trustee shall be deemed the Estates' representative in accordance with section 1123 of the Bankruptcy Code and shall have the purpose of (i) holding the Liquidating Trust Assets; and (ii) distributing the proceeds related to the liquidation of such Liquidating Trust Assets, net of all claims, expenses, charges, liabilities, and obligations of the Liquidating Trust, to the beneficiaries in accordance with the terms of this Plan and the Liquidating Trust Agreement.  The Liquidating Trust is intended to qualify as a liquidating trust pursuant to Treasury Regulation § 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.

## 8.5.    **Vesting of Liquidating Trust Assets in the Liquidating Trust.**

(a)     Except as otherwise set forth in the Plan, in the Liquidating Trust Agreement, any supplement(s) to the Plan, or in the Confirmation Order, all other Assets not otherwise sold or released under the Plan, the Sale Order or any other Prior Order shall be conveyed and assigned to the Liquidating Trust including, among other assets, the Reserved Causes of Action (as defined in section 8.7 below), any Cash held by the Debtors, including any Excluded Assets and any excess Cash proceeds from the Sale Transaction, after the payment of the First Lien Secured Claims (including any unpaid Adequate Protection Payments), the DIP Lender Claims and any other Claims or amounts required to be paid out of the Purchase Price under this Plan or the Sale Order; *provided, however*, no Assets that are secured by the Liens of the First Lien Lenders, JPMorgan, or the DIP Lender shall be conveyed to the Liquidating Trust until (i) the First Lien Secured Claims (including any unpaid Adequate Protection Payments) are Paid in Full (as such term is defined and used in Paragraph 10 of the DIP Order), (ii) the DIP Lender Claims are paid in full, (iii) the LC Collateral Account is funded as provided for in Paragraph 8(i) of the Sale Order, and (iv) the Purchaser has caused an amount in immediately available funds equal to 110% of the amount of the Credit Card Exposure to be deposited into the Credit Card Collateral Account. On the Effective Date, the Liquidating Trust Assets shall be deemed transferred to and vested in the Liquidating Trust, and the Liquidating Trust shall assume liability for all Allowed General Unsecured Claims and Allowed Subordinated Claims, but only to the extent provided by this Plan and the Liquidating Trust Agreement.

(b)     On or before the Effective Date, the Debtors shall allocate the Liquidating Trust Assets according to each Debtor.  Any excess cash sale proceeds from the Sale Transaction, after payment of all First Lien Secured Claims (including any unpaid Adequate Protection Payments), DIP Lender Claims and any other Claims or amounts required to be paid out of the

Purchase Price pursuant to the Sale Order, shall also vest in the Liquidating Trust on the Effective Date; *provided, however*, no Assets that are secured by the Liens of the First Lien Lenders, JPMorgan, or the DIP Lender shall be conveyed to the Liquidating Trust until (i) the First Lien Secured Claims (including any unpaid Adequate Protection Payments) are Paid in Full (as such term is defined and used in Paragraph 10 of the DIP Order), (ii) the DIP Lender Claims are paid in full, (iii) the LC Collateral Account is funded as provided for in Paragraph 8(i) of the Sale Order, and (iv) the Purchaser has caused an amount in immediately available funds equal to 110% of the amount of the Credit Card Exposure to be deposited into the Credit Card Collateral Account.

(c)     The assets comprising the Liquidating Trust Assets will be treated for tax purposes as being transferred by the Debtors to the Liquidating Trust beneficiaries pursuant to the Plan in exchange for their Allowed Claims (or a portion thereof) and then by the Liquidating Trust beneficiaries to the Liquidating Trust in exchange for the interests in the Liquidating Trust. The Liquidating Trust beneficiaries shall be treated as the grantors and owners of the Liquidating Trust. Upon the transfer of the Liquidating Trust Assets, the Liquidating Trust shall succeed to all of the Debtors' rights, title and interest in the Liquidating Trust Assets, and the Debtors will have no further interest in or with respect to the Liquidating Trust Assets (other than on account of the Litigation Trust interests). In pursuing the Reserved Causes of Action transferred to the Liquidating Trust, the Liquidating Trustee shall be entitled to the tolling provisions provided under section 108 of the Bankruptcy Code, and shall succeed to the Debtors' rights with respect to the time periods in which any of the Reserved Causes of Action may be brought under section 546 of the Bankruptcy Code.

(d)     The Liquidating Trustee shall divide and maintain the Liquidating Trust Assets into separate accounts, book entries or reserves to ensure that holders of Allowed General Unsecured Claims against each Debtor recover from the allocable share of the Liquidating Trust Assets owned by the appropriate Debtor. The Liquidating Trust Agreement and any subsequently approved by-laws shall establish appropriate procedures to accomplish this accounting mechanism. The Liquidating Trustee shall be selected by the Committee and disclosed as part of the Plan Documents.

### 8.6.    Settlement with TRT Holdings, Inc.

(a)     On the Effective Date, it is the Debtors' intention to resolve any and all potential disputes among the Debtors and TRT Holdings, Inc., except as expressly reserved under this Plan. Accordingly, the effectuation of the Plan shall include the mutual releases set forth below, which releases shall be binding on the Estate, the Liquidating Trustee and any successor in interest to the Debtors or their Estates.

(b)     On the Effective Date, TRT Holdings, Inc., for itself and its respective owners, officers, directors, members, managers, employees, affiliates and subsidiaries, including but not limited to the DIP Lender (collectively, the "TRT Releasors"), shall be deemed to release any and all Claims against the Debtors, their Estates, the Committee and their respective officers, directors, members, managers, employees and Professionals (the "Estate Releasees"), from any and all Claims, Causes of Action, rights and remedies, whether known or unknown, accrued or unaccrued, fixed or contingent, liquidated or unliquidated, existing as of the Effective Date, except as expressly assumed or reserved under this Plan. For avoidance of doubt, the Plan does not release

the Claims asserted by RBR Real Estate Holdings, LLC, Omni Hotels Management Corporation, and Cresta Gold Fund, L.P.

(c)     On the Effective Date, the Committee and the Debtors, for their Estates and successors in interests, including the Liquidating Trustee and any chapter 7 or chapter 11 trustee who may be appointed in any successor case, any party who may seek to pursue any Claims or Causes of Action on behalf of or derivatively through the Debtors or their Estates shall be deemed to release all TRT Releasors from any and all Claims, Causes of Action (including Avoidance Actions, Preference Actions, derivative claims and alter ego remedies or theories), rights and remedies, whether known or unknown, accrued or unaccrued, fixed or contingent, liquidated or unliquidated, existing as of the Effective Date, except with respect to any Estate Defenses that may be reserved under this Plan and vested in the Liquidating Trustee.

### 8.7.     Reserved Causes of Action.

(a)     Subject to the provisions of this Plan, the Liquidating Trustee, on behalf of the Liquidating Trust, shall take possession of any and all Assets not otherwise conveyed to the Purchaser under the Transactional Documents or other Prior Order (including the Sale Order) prior to the Effective Date.   The Causes of Action described and reserved in this Section 8.7 (collectively, the "Reserved Causes of Action") shall constitute the Causes of Action reserved for the benefit of the Liquidating Trust.  Upon the Effective Date and thereafter, the Liquidating Trust, will use, conserve, protect, settle, collect, resolve, release, abandon, or otherwise liquidate all of the Reserved Causes of Action as deemed to be in the best interests of the beneficiaries of the Liquidating Trust (for Reserved Causes of Action vested in the Liquidating Trust) and as otherwise provided under the terms of the Plan and subject to the provisions of the Liquidating Trust Agreement.

**THE DESCRIPTIONS OF POTENTIAL CAUSES OF ACTION BELOW ARE NOT INTENDED TO BE A DEMAND ON ANY OF THE POTENTIAL DEFENDANTS IN SUCH CAUSES OF ACTION AND ARE NOT AN INDICATION OF WHETHER A MERITORIOUS CAUSE OF ACTION EXISTS.**

**THE DESCRIPTIONS ARE ALSO NOT INTENDED TO LIMIT CLAIMS OR CAUSES OF ACTION WHICH MAY BE ASSERTED AGAINST ANY POTENTIAL DEFENDANT.**

**NEVERTHELESS, BY THE DESCRIPTIONS BELOW, THE DEBTORS EXPRESSLY, SPECIFICALLY AND UNEQUIVOCALLY RESERVE ALL RIGHTS IN ALL CAUSES OF ACTION, INCLUDING THE RESERVED CAUSES OF ACTION DESCRIBED BELOW.  ANY POTENTIAL DEFENDANT WHO IS ALSO A CREDITOR IN THESE CASES SHOULD ASSUME THAT A CAUSE OF ACTION MAY BE PURSUED BY THE DEBTORS, THE LIQUIDATING TRUST OR THE PURCHASER UNDER THE TERMS OF THE TRANSACTIONAL DOCUMENTS OR A PRIOR ORDER, AND ACT ACCORDINGLY. UNDER NO CIRCUMSTANCES SHOULD ANY POTENTIAL DEFENDANT LISTED BELOW, OR ANY COURT WITH COMPETENT JURISDICTION TO ADJUDICATE THE CAUSES OF ACTION DESCRIBED BELOW, RELY ON THE FOLLOWING STATEMENTS AS A FULL AND COMPLETE**

DESCRIPTION OF ANY AND ALL CAUSES OF ACTION OR FOR ANY OTHER PURPOSE.

Unless expressly waived, released or otherwise assigned to the Purchaser under the Transactional Documents or by a Prior Order of the Bankruptcy Court, all Causes of Action, including the Reserved Causes of Action described below, will be reserved under the Plan and assigned to the Liquidating Trust.

(b)     Claims Against Creditors.  The Debtors reserve all Causes of Action listed in the Statement of Financial Affairs and the Disclosure Statement against the Creditors classified in Classes 3 and 4 (General Unsecured Claims and Subordinated Claims), except for those expressly released under the Plan or transferred to the Purchaser under the Sale Order.  For the avoidance of doubt and notwithstanding anything to the contrary herein, all Avoidance Actions have been transferred to the Purchaser under the Sale Order with the Purchaser's agreement to release and not to pursue, prosecute, or assert such Avoidance Actions.

(c)     Pending Litigation.  The Debtors also reserve any and all claims, defenses or counterclaims that have been asserted in any lawsuit pending as of the Confirmation Hearing, including any lawsuits or proceedings in which any of the Debtors assert affirmative claims against any Creditor or other third party, with all such claims, defenses of counterclaims assigned to the Liquidating Trust under the terms of this Plan and the Liquidating Trust Agreement; *provided however,* that any such claims, defenses or counterclaims conveyed to Purchaser pursuant to a Prior Order, including the Sale Order, are unaffected by this section.

**8.8.     Preservation of Rights of Action; Settlement.**

(a)     Subject to the terms of this Plan, the orders of the Bankruptcy Court, and any Prior Order, all Causes of Action, including the Reserved Causes of Action, and Estate Defenses shall be deemed transferred to and vested in the Liquidating Trust as of the Effective Date.  Thereafter, subject to the terms of the Liquidating Trust Agreement, the Liquidating Trustee shall be vested with authority to assert, prosecute and otherwise resolve the applicable Reserved Causes of Action and Estate Defenses  (with the assistance from TRT Holdings, Inc., as may be agreed upon between the Liquidating Trustee and TRT Holdings, Inc.).

(b)     At any time after the Confirmation Date and before the Effective Date, notwithstanding anything in this Plan to the contrary, the Debtors may settle some or all of the Causes of Action or the Disputed Claims subject to obtaining Bankruptcy Court approval.  The proceeds from the settlement of any Causes of Action shall be held as property of the Estates and vested in the Liquidating Trust on the Effective Date.

**8.9.     Administrative Acts.**

(a)     [Omitted]

(b)     Cancellation of Interests.  All Interests in all Debtors shall be deemed cancelled and annulled on the Effective Date, with the Holders of Interests receiving the treatment provided in Section 5.6 of the Plan.  Holders of Interests shall receive no distributions on account of such Interests except as set forth in Section 5.6 of this Plan, nor shall such holders have any

management or control rights in the Purchaser on account of such Interests. As soon as practicable following the Effective Date, and in no event later than required to effectuate the dissolution prior to December 31, 2020, the Liquidating Trustee (with the assistance from TRT Holdings, Inc., as may be agreed upon between the Liquidating Trustee and TRT Holdings, Inc.) shall take all steps necessary to file such documents with the applicable agencies, taxing authorities and administrative offices to effectuate the dissolution of all Debtor entities to be dissolved under Section 5.6 of this Plan and any subsidiaries thereof.

(c)     <u>Abandonment of Assets</u>.  The Liquidating Trustee will retain the Liquidating Trust Assets and distribute those assets as detailed in this ARTICLE VIII pursuant to the Liquidating Trust Agreement.  Any and all Assets that the Debtors do not transfer to the Purchaser pursuant to the Transactional Documents and/or a Prior Order, shall remain with the Liquidating Trustee and shall constitute Liquidating Trust Assets.  The Liquidating Trustee may abandon any of the Liquidating Trust Assets on or after the Effective Date, but only under the terms of any by-laws approved pursuant to the terms of the Liquidating Trust Agreement.

(d)     <u>Payment of Quarterly Fees</u>.  The Debtors or Liquidating Trustee, as applicable, shall pay the U.S. Trustee's quarterly fees incurred pursuant to 28 U.S.C. § 1930(a)(6).  Any fees due as of the Confirmation Date shall be paid in full on the Effective Date from any available Cash on hand.  After the Confirmation Date, the Liquidating Trustee shall pay quarterly fees as they accrue until these Cases are closed.  The Liquidating Trustee shall file with the Bankruptcy Court and serve on the U.S. Trustee a quarterly financial report for each quarter, or portion thereof, while any of these Cases remain open.  This paragraph shall apply to and control regarding any U.S. Trustee's quarterly fees incurred pursuant to 28 U.S.C. § 1930(a)(6) as respect to Gold's Gym Licensing, LLC payable under the Dismissal Order.

(e)     <u>Final Decree</u>.  When appropriate, the Liquidating Trustee shall seek a final decree from the Bankruptcy Court, concerning these Cases.  Upon entry of the final decree, the Liquidating Trustee and its professionals will be forever discharged and released from all powers, duties, responsibilities, and liabilities pursuant to the Plan, other than those attributable to the gross negligence or willful misconduct of the Liquidating Trustee.  The Liquidating Trustee shall file a motion for entry of final decree pursuant to Bankruptcy Rule 3022 promptly upon administration in full of the Claims and Liquidating Trust Assets as set forth in the Plan and the Liquidating Trust Agreement.

## 8.10. <u>Jurisdiction of and Access to the Bankruptcy Court.</u>

The Bankruptcy Court shall retain jurisdiction over the Liquidating Trustee, the Liquidating Trust Assets, including applicable Reserved Causes of Action.  Thereafter, the Liquidating Trustee shall be entitled to the full benefit of, and to exercise all powers incident to, the jurisdiction retained by the Bankruptcy Court pursuant to the Plan, including, without limitation, to seek any order, writ, or other process necessary or appropriate to enforce, construe, perform, implement, consummate, or apply the Plan.

**8.11. Claims Administration.**

The Liquidating Trustee and any other party in interest permitted under section 502(a) of the Bankruptcy Code and Rule 3007 of the Bankruptcy Rules shall have the power and authority to file Claim Objections on any legal or equitable basis permitted under such provisions of the Bankruptcy Code and Bankruptcy Rules. Only the Liquidating Trustee shall have the power to (with the assistance from TRT Holdings, Inc., as may be agreed upon between the Liquidating Trustee and TRT Holdings, Inc.): (a) seek to subordinate or recharacterize any Claim on any legal or equitable basis; (b) assert any right of setoff or recoupment, including without limitation, any such right pursuant to section 553 of the Bankruptcy Code; (c) to assert any and all Estate Defenses, whether legal or equitable, including any affirmative defenses or setoff right; and (d) to assert any counterclaim against any Claim, whether arising out of the same or different transactions. In the event that a Claim includes personal injury tort or wrongful death claims, the Liquidating Trustee may seek to establish procedures for the efficient resolution of such Claims in a manner consistent with 28 U.S.C. § 157(b)(5) by filing a motion with the Bankruptcy Court for approval of such procedures; *provided*, however, that such procedures shall not in any way alter, amend, or otherwise modify the terms and conditions of any Insurance Contracts. Except as otherwise provided in the Liquidating Trust Agreement, only the Liquidating Trustee shall have the power to settle Claim Objections, provided, however, that the Liquidating Trustee gives adequate notice and an opportunity for a hearing as required under applicable Bankruptcy Rules and the Liquidating Trust Agreement.

## ARTICLE IX
## PROVISIONS GOVERNING DISTRIBUTION

**9.1. Generally.**

The Plan and the Liquidating Trust Agreement shall govern the Liquidating Trustee's obligations and discretion relating to the administration and Distribution of the Liquidating Trust Assets.

**9.2. Source of Distributions.**

Distributions to holders of Allowed Class 3 General Unsecured Claims and, to the extent such Cash is available after payment in full as provided in Section 5.3 of the Plan, to Allowed Class 5 Subordinated Claims and Allowed Class 6 Old Equity Interests, shall be made by the Liquidating Trustee from the Liquidating Trust Assets established under ARTICLE VIII, and as set forth in the Plan.

**9.3. Means of Cash Payment.**

Except as otherwise determined by the Liquidating Trustee, Distributions under this Plan shall be made in Cash by check, wire or ACH transfer in U.S. funds, or by other means agreed to by the payor and payee or, absent agreement, such commercially reasonable manner as the payor determines in its sole discretion.

### 9.4.    Delivery of Distributions.

Deliveries of Distributions to the holders of Allowed Claims shall be made at the address set forth on the respective proofs of claim filed in these Cases.  If no proof of claim is filed, Distributions on account of Allowed Claims shall be made to the Claimant at the address reflected in the Schedules or as agreed upon between the Liquidating Trustee and such respective Claimant. If any Distribution is returned as undeliverable, no further payment shall be made on account of such Allowed Claim unless and until the Liquidating Trustee is notified in writing of such Claimant's proper current address, at which time all missed payments shall be made to such Claimant.  All claims for undeliverable payments shall be made on or before the first anniversary of the attempted payment.  After such date, all undelivered Distributions shall be deemed as Unclaimed Property and may revert to the Liquidating Trust Assets held by the Liquidating Trustee, and the Claim of any holder with respect to such property shall be discharged and forever barred.

### 9.5.    Time Bar to Cash Payments.

Distributions issued by check shall be null and void if not cashed within one hundred twenty (120) days of the date of issuance thereof.  Requests for reissuance of any check shall be made in writing directly to the Liquidating Trustee by the holder of the Allowed Claim with respect to which such check originally was issued.  Any claim in respect of such a voided check shall be made on or before ninety (90) days after the date of issuance of such check.  After such date, all Claims in respect of void checks shall be discharged and forever barred.

### 9.6.    Claims Payable by Third Parties.

Except as expressly provided for in this Plan or as the Liquidating Trustee may decide in exercising its business judgment and good faith, no Distribution under the Plan shall be made on account of any Claim that is payable pursuant to any agreement or applicable law making a Person other than the Liquidating Trust liable, including, without limitation, any lease, sub-lease, license agreement, promissory note, indemnity, guaranty, understanding, or Insurance Contracts until the holder of such Claim has exhausted all remedies with respect to such co-obligor, co-lessor, indemnitor, or Insurer.  To the extent that one or more of the applicable non-debtor payors agrees to satisfy a Claim, whether in full or in part, then immediately upon such satisfaction, such Claim may be expunged to the extent of such satisfaction without a Claim Objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

### 9.7.    Applicability of Insurance Contracts.

Neither the automatic stay nor any injunction shall limit or inhibit the ability of such Claimant to pursue a recovery from any Insurer on account of such Claim, provided that such recovery must exclude any self-insured retention of the Debtors or the Liquidating Trustee, which are mere General Unsecured Claims to be treated in accordance with other provisions of this Plan. Notwithstanding the foregoing sentence, the Liquidating Trustee shall establish a reserve of no less than $100,000.00 for a period not to exceed two years from the Closing of the Sale Transaction in order to fund any self-insured retention obligations needed to provide insurance coverage for the Debtors' pre-Closing indemnity obligations owed to counterparties of Unexpired Leases that

were assumed by the Purchaser under the Transactional Documents and Sale Order. Except as otherwise provided in the Plan, Distributions to holders of Allowed Claims covered by an Insurance Contract shall be in accordance with the provisions of any applicable Insurance Contract or applicable non-bankruptcy law. Nothing contained in the Plan shall constitute or be deemed a waiver of any cause of action that the Debtors, Liquidating Trustee or any Person may hold against any other Person, including Insurers under Insurance Contracts, nor shall anything contained in the Plan or Agreement constitute or be deemed a waiver by such Insurers of any rights or defenses, including coverage defenses.

**9.8.** **Withholding and Reporting Requirements.**

The Liquidating Trustee shall, to the extent applicable, comply with all tax withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Distributions made under this Plan shall be subject to any such withholding and reporting requirements. The Liquidating Trustee shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements.

## ARTICLE X
## TREATMENT OF EXECUTORY CONTRACTS, UNEXPIRED LEASES, AND OTHER AGREEMENTS

**10.1.** **Assumption/Rejection.**

(a) [Omitted]

(b) *Rejection of Remaining Contracts.* Unless previously approved and consummated pursuant to the Sale Order, on the Effective Date, and to the extent permitted by applicable law, every Executory Contract and Unexpired Lease is rejected unless such Executory Contract or Unexpired Lease: (a) has been expressly assumed pursuant an order of the Bankruptcy Court; (b) is expressly identified in this Plan or the Confirmation Order as an Assumed Contract; or (c) is expressly made the subject of a pending motion to assume filed on or before the Confirmation Hearing. This Plan shall be treated as a motion to reject all remaining Executory Contracts or Unexpired Leases other than those in (a)-(c) of the preceding sentence. The entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of all such rejections and assumptions and assignments pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

(c) [Omitted]

(d) [Omitted]

(e) Nothing in this Section 10.1 shall modify any assumption or rejection approved in a Prior Order, including, without limitation, the Sale Order.

**10.2.** **[Omitted]**

[Omitted]

### 10.3.    Bar to Rejection Claims.

Except as otherwise ordered by the Bankruptcy Court, any Rejection Claim based on the rejection of an Executory Contract or an Unexpired Lease shall be forever barred and shall not be enforceable against the Debtors, their Estates or the Liquidating Trust, unless a proof of claim is filed by the later of: (a) the Claims Bar Date; and (b) thirty (30) days after the effective date of such rejection.

### 10.4.    Rejection Claims.

Unless the Liquidating Trustee and Creditor agree to less favorable terms, any Rejection Claim which is timely filed and Allowed shall be treated as Class 3 General Unsecured Claims, subject to the provisions of section 502(g) of the Bankruptcy Code.  Nothing contained herein shall be deemed an admission by the Debtors or Liquidating Trustee, as applicable, that such rejection gives rise to or results in a Claim or shall be deemed a waiver by the Debtors or Liquidating Trustee, as applicable, of any Objections to any such Claim if asserted.

### 10.5.    Reservation of Rights.

Neither the exclusion nor inclusion of any contract or lease in the Transactional Documents, Plan, Disclosure Statement or Plan Supplement, nor anything contained in the Plan, shall constitute an admission by the Debtors, Liquidating Trustee or the Purchaser that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Debtors have any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Liquidating Trustee, as applicable, shall have thirty (30) days following entry of a Final Order resolving such dispute to alter its treatment of such contract or lease.

## ARTICLE XI
## PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT,
## AND UNLIQUIDATED CLAIMS

### 11.1.    Objections to Claims.

(a)    From and after the Effective Date, except as set forth in Section 8.11 above, the Liquidating Trustee shall have the right to file, settle, compromise, withdraw, or litigate to Final Order any Objections to any Claim or seek to subordinate any Claim.

(b)    As soon as practicable, but no later than the Claims Objection Deadline (as may be extended from time to time), the Liquidating Trustee may file any Objection with the Bankruptcy Court and serve such Objections on the Creditors holding the Claims to which Objections are made.  Nothing contained herein shall limit the right of the Liquidating Trustee or any other party in interest to object to Claims, if any, filed or amended after the Claims Objection Deadline.  The Claims Objection Deadline may be extended by the Bankruptcy Court upon motion by the Liquidating Trustee with adequate notice and a hearing.

(c)    Any proof of claim filed more than forty-five (45) days after the Claims Bar Date shall be of no force and effect and need not be objected to by the Liquidating Trustee.

**11.2.** **Distributions on Account of Disputed Claims.**

(a) No Distribution shall be made on account of a Disputed Claim until such Claim is Allowed. Until a Disputed Claim becomes Allowed by a Final Order, or settled by the Liquidating Trustee, such Claim shall be treated as a Disputed Claim for purposes of estimates, allocations, and Distributions under the Plan. Any Claim based on a contingent right shall continue to be subject to section 502(e) of the Bankruptcy Code.

(b) Except as set forth in Section 8.11 above, the Liquidating Trustee shall have the sole right at any time and in Liquidating Trustee's discretion to settle any Claim or request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether any Objection has been made to such Claim or whether the Bankruptcy Court or any other court with competent jurisdiction has ruled on any Objection, *provided, however*, that: (i) the Liquidating Trustee may not settle, without Bankruptcy Court approval, any objection to a Claim where the asserted Claim amount exceeds $250,000, unless the proposed Allowed Claim amount is no more than 10% greater than the asserted Claim amount; and (ii) the Liquidating Trustee must provide written notice to TRT Holdings, Inc. of the terms of any settlement concerning a Claim where the asserted amount exceeds $25,000.00 or any settlement concerning any Litigation Claim of any amount (the "Proposed Settlement Notice") before consummating the proposed settlement. TRT Holdings, Inc. shall have five (5) calendar days after the receipt of the Proposed Settlement Notice to provide written notice to the Liquidating Trustee of any dispute (the "Settlement Dispute") over the Proposed Settlement Notice. For a Settlement Dispute to be valid under this Section, TRT must include with each Settlement Dispute: (x) the factual basis for such dispute, and (y) an amount that TRT contends to be a reasonable settlement amount and the rationale for same. In the event that TRT Holdings, Inc. timely delivers a Settlement Dispute to the Liquidating Trustee, the Liquidating Trustee may not consummate the proposed settlement without obtaining Bankruptcy Court approval of such settlement, and TRT Holdings, Inc. reserves all rights to object to any such approval. For the avoidance of doubt, TRT shall bear its own costs and expenses in raising any Settlement Dispute. The Bankruptcy Court will retain jurisdiction to estimate any Claim at any time until there is a Final Order relating to the Objection, including during the pendency of any appeal related to any such Claim or Claim Objection. In the event the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Liquidating Trustee may elect to pursue any supplemental proceedings to object to any ultimate Distribution on such Claim. All of the aforementioned Objection, estimation and resolution procedures are cumulative and are not necessarily exclusive of one another. Claims may be estimated and thereafter resolved by any permitted mechanism.

**11.3.** **Allowance of Disputed Claims.**

This Section 11.3 shall apply to all Disputed Claims. Nothing contained in the Plan, Disclosure Statement, or Confirmation Order shall change, waive or alter any requirement under applicable law that the holder of a Disputed Claim must file a timely proof of claim, and the Disputed Claim of any such Creditor who is required to file a proof of claim and fails to do so shall be discharged and shall receive no Distribution through the Plan. The adjudication and liquidation

of Disputed Claims is a determination and adjustment of the debtor/creditor relationship, and is therefore, except as provided under 28 U.S.C. § 157(b)(5), an exercise of the Bankruptcy Court's equitable power to which the legal right of trial by jury is inapplicable. The holder of any Disputed Claim shall not have a right to trial by jury before the Bankruptcy Court in respect of any such Claim, except as provided under 28 U.S.C. § 157(b)(5). Exclusive venue for any Disputed Proceeding shall be in the Bankruptcy Court. Disputed Claims shall each be determined separately, except as otherwise ordered by the Bankruptcy Court. Texas Rule of Civil Procedure 42 and Federal Rule of Civil Procedure 23 shall not apply to any Disputed Proceeding. The Liquidating Trustee shall retain all rights of removal to federal court.

**11.4.** **General Unsecured Claims.**

Notwithstanding the contents of the Schedules, Claims listed therein as undisputed, liquidated, and not contingent shall be reduced by the amount, if any, that was paid by the Debtors prior to the Effective Date, including pursuant to orders of the Bankruptcy Court. To the extent such payments are not reflected in the Schedules, such Schedules will be deemed amended and reduced to reflect that such payments were made. Nothing in the Plan shall preclude the Liquidating Trustee from paying Claims that the Debtors were authorized to pay pursuant to any Final Order entered by the Bankruptcy Court prior to the Confirmation Date.

**11.5.** **Allowance of Certain Claims.**

All Disputed Claims shall be liquidated and determined as follows:

(a) _Application of Adversary Proceeding Rules._ Unless otherwise ordered by the Bankruptcy Court, any Objection to a Disputed Claim shall be treated as a contested matter subject to Bankruptcy Rule 9014. However, any party may move the Bankruptcy Court to apply the rules applicable to adversary proceedings to any Claim Objection. The Liquidating Trustee may, at its election, make and pursue any Objection to a Claim in the form of an adversary proceeding.

(b) _Scheduling Order._ Unless otherwise ordered by the Bankruptcy Court, or if the Objection is pursued as an adversary proceeding, a scheduling order shall be entered as to each Objection to a Claim. The scheduling order may include (i) discovery cut-off, (ii) deadlines to amend pleadings, (iii) deadlines for designation of and objections to experts, (iv) deadlines to exchange exhibit and witness lists and for objections to the same, and (v) such other matters as may be appropriate.

(c) _Mediation._ The Bankruptcy Court may order the parties to mediate in connection with any Objection to a Claim. The Liquidating Trustee may include a request for mediation in their objection, and request that the Bankruptcy Court require mediation as a part of the Scheduling Order.

(d) _Alternative Resolution Procedures._ In addition to the foregoing, to address any personal injury tort Claims, the Liquidating Trustee may seek approval of an alternative claims administrative procedure to administer Claims more expeditiously, provided that such procedures are approved by the Bankruptcy Court, after notice and a hearing, and provided further that such procedures are consistent with 28 U.S.C. § 157(b)(5).

(e)     Estimation and Reserves.  Prior to making final Distributions in satisfaction of Allowed Class 3 General Unsecured Claims, the Liquidating Trustee shall establish a reserve for Disputed Claims, including General Unsecured Claims that are contingent upon future events. The Liquidating Trustee may, but is not required to, seek approval from the Bankruptcy Court of amounts necessary to be reserved for Disputed Claims, including estimation of one or more Disputed Claims under section 502(c) of the Bankruptcy Code.

### 11.6.   Offsets and Defenses.

The Liquidating Trustee shall be vested with and retain all Estate Defenses against any Claim, including without limitation all rights of setoff or recoupment and all counterclaims against any Claimant.  Assertion of any Estate Defenses by the Liquidating Trustee shall constitute a "core" proceeding to the extent allowed under applicable law.

### 11.7.   Compliance with Tax Requirements/Allocations.

The Liquidating Trustee shall comply with all tax withholding and reporting requirements imposed by any Governmental Unit, and all Distributions pursuant hereto shall be subject to applicable withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, the Liquidating Trustee shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements.  The Liquidating Trustee may allocate all Distributions made under the Plan in compliance with all applicable sales tax, wage garnishments, alimony, child support, other spousal awards, liens, and encumbrances.

### 11.8.   Expunging of Certain Claims.

Any Claim that is Scheduled as being contingent, unliquidated, or disputed or in the amount of $0.00, and for which no proof of claim has been timely filed, shall be deemed Disallowed and such Claim may be expunged without the necessity of filing an Objection and without any further notice to or action, order, or approval of the Bankruptcy Court.

## ARTICLE XII
## ALLOWANCE AND PAYMENT OF CERTAIN ADMINISTRATIVE CLAIMS

### 12.1.   Professional Fee Claims.

(a)     On the Effective Date, the Debtors or Liquidating Trustee, as applicable, shall pay all amounts owing to Professionals for all outstanding amounts relating to prior periods through the Effective Date approved by the Bankruptcy Court in accordance with the Professional Fee Order; *provided*, however, that Professionals shall continue to prepare fee applications in accordance with the Professional Fee Order (or such other order or orders as may be applicable to a Professional) for services rendered and expenses incurred up to the Effective Date.  The Liquidating Trust Assets shall be used by the Liquidating Trustee to pay the remaining Fee Claims owing to the Professionals within three (3) Business Days of the entry of an Order Allowing the applicable Fee Claim.

(b)     All final requests for compensation or reimbursement of Fee Claims pursuant to sections 327, 328, 330, 331, 363, 503(b), or 1103 of the Bankruptcy Code for services

rendered to or on behalf of the Debtors prior to the Effective Date must be filed and served on the Liquidating Trustee and its counsel and TRT Holdings, Inc. and its counsel no later than forty-five (45) days after the Effective Date, unless otherwise ordered by the Bankruptcy Court. Objections to applications of such Professionals or other Persons for compensation or reimbursement of expenses must be filed and served on the Liquidating Trustee, its counsel, and the requesting Professional or other Person no later than twenty-one (21) days (or such longer period as may be allowed by order of the Bankruptcy Court or agreed to by the parties) after the date on which the applicable application for compensation or reimbursement was served.

### 12.2. **Administrative Claims.**

The Confirmation Order will establish the Administrative Claim Bar Date. Holders of asserted Administrative Claims, other than Fee Claims, claims for U.S. Trustee fees under 28 U.S.C. § 1930, Administrative Tax Claims, and administrative ordinary course liabilities, shall file with the Bankruptcy Court a request for the allowance and payment of such Administrative Claim on or before the Administrative Claims Bar Date or forever be barred from doing so. A notice prepared by the Debtors or the Liquidating Trustee, as applicable, will set forth such date and constitute notice of this Administrative Claim Bar Date. The Debtors or the Liquidating Trustee, as the case may be, shall have no less than twenty-one (21) days (or such longer period as may be allowed by order of the Bankruptcy Court) following the Administrative Claims Bar Date to review and object to such Administrative Claims before a hearing for determination of allowance of such Administrative Claims.

### 12.3. **Administrative Ordinary Course Liabilities.**

Holders of Administrative Claims that are based on liabilities incurred in the ordinary course of the applicable Debtors' business (other than Claims of a Professional Person for Fees or of Governmental Units for taxes and for interest and/or penalties related to such taxes) shall not be required to file any request for payment of such Claims. Such Administrative Claims, unless disputed in writing by the Debtors or the Liquidating Trustee, as applicable, shall be assumed and paid by the Debtors (before the Effective Date) or Liquidating Trustee (on or after the Effective Date), in Cash, pursuant to the terms and conditions of the particular transaction giving rise to such Administrative Claim.

### 12.4. **Administrative Tax Claims.**

All requests for payment of Administrative Claims by a Governmental Unit (and for interest and/or penalties related to such taxes) for any tax year or period, all or any portion of which occurs or falls within the period from and including the Petition Date through and including the Effective Date, and for which no bar date has otherwise been previously established, must be filed and served on the Liquidating Trustee and any other party specifically requesting a copy in writing on or before the later of (a) thirty (30) days following the Effective Date; or (b) one hundred and twenty (120) days following the filing of the tax return for such taxes for such tax year or period with the applicable Governmental Unit. Any holder of any such Claim that is required to file a request for payment of such taxes and does not file and properly serve such a Claim by the applicable bar date shall be forever barred from asserting any such Claim against the Estates, the Liquidating Trust, or Liquidating Trust Assets, regardless of whether any such Claim is deemed

to arise prior to, on, or subsequent to the Effective Date. Any interested party desiring to object to an Administrative Claim for taxes must file and serve its objection on counsel to the Liquidating Trustee and the relevant Governmental Unit no later than ninety (90) days after the Governmental Unit files and serves its application.

## ARTICLE XIII
## CONFIRMATION AND CONSUMMATION OF THE PLAN

### 13.1.  Conditions Precedent to Confirmation and Effectiveness.

The Plan shall not become effective until the following conditions shall have been satisfied or waived by the Debtors, JPMorgan (with the consent of the Required Lenders (as defined in the DIP Order)), and the Purchaser:

(a)  the Confirmation Order shall have been entered in form and substance acceptable to the Debtors, the Committee, JPMorgan (with the consent of the Required Lenders (as defined in the DIP Order)), the DIP Lender and the Purchaser, and become a Final Order and has not been stayed, modified, or vacated on appeal;

(b)  no Event of Default under the DIP Order shall have occurred and be continuing that has not been waived in accordance with the terms of the DIP Order;

(c)  the Plan Supplement, including the Liquidating Trust Agreement, has been filed;

(d)  the Debtors and the Purchaser shall have executed all Transactional Documents such that the Sale Transaction shall have been consummated and the Purchase Price shall have been paid;

(e)  the Purchaser has delivered a Replacement LC in form and substance satisfactory to the current beneficiary of the applicable Letter of Credit on or prior to the Closing, or, to the extent the Purchaser has not delivered a Replacement LC in form and substance satisfactory to the current beneficiary of the applicable Letter of Credit on or prior to the Closing, the Debtors shall have established and fully funded the LC Collateral Account  as required under Paragraph 8(i) of the Sale Order;

(f)  if the Purchaser has elected to proceed with the applicable credit card program, the Purchaser shall have established and fully funded the Credit Card Collateral Account;

(g)  the appointment of the Liquidating Trustee shall have been authorized, approved and confirmed by order of the Bankruptcy Court and the Liquidating Trust Agreement shall have been executed under applicable non-bankruptcy law, and a Liquidating Trustee appointed thereunder;

(h)  all of the foregoing conditions have been satisfied or waived on or before September 1, 2020; and

(i)    a notice of the Effective Date shall have been filed by the Debtors or the Liquidating Trustee and thereafter served upon all parties requesting such notice in these Cases.

The Debtors, with the prior written consent of the Committee, JPMorgan (with the consent of the Required Lenders (as defined in the DIP Order)), the DIP Lender, and the Purchaser, in their sole discretion may waive the occurrence of, or modify, any of the foregoing conditions precedent to the Effective Date (except for entry of the Confirmation Order in Section 13.1(a)). Any such waiver may be effected at any time, without notice, without leave or order of the Bankruptcy Court, and without any formal action other than proceeding to consummate the Plan. Any actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.

### 13.2.    <u>Revocation of Plan.</u>

The Plan may be revoked or withdrawn at any time before the Effective Date, but only by the Debtors. If the Debtors revoke or withdraw this Plan, or if confirmation of this Plan does not occur, then, (i) this Plan shall be deemed null and void; and (ii) nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtors, as the case may be, or any other Person or to prejudice in any manner the rights of the Debtors or person in any further proceedings involving the Liquidating Trustee.

### 13.3.    <u>Substantial Consummation.</u>

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

### 13.4.    <u>Non-Material Modifications.</u>

The Debtors, or Liquidating Trustee, as applicable, may, with the consent of the Committee and, as applicable, TRT Holdings, Inc. or the Purchaser (such consent not to be unreasonably withheld), and approval of the Bankruptcy Court and without notice to all holders of Claims and Interests, correct any defect, omission, or inconsistency in the Plan in such manner and to such extent as may be necessary or desirable. The Debtors or Liquidating Trustee, as applicable may undertake such nonmaterial modification pursuant to this Section 13.4 insofar as it does not adversely change the treatment of the Claim of any Creditor or the interest of any Interest holder who has not accepted in writing the modification.

### 13.5.    <u>Material Modifications.</u>

Modifications of this Plan may be proposed in writing by the Debtors, after consulting with the Committee and as applicable, TRT Holdings, Inc. or the Purchaser, at any time before confirmation, provided that this Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code and the Debtors shall have complied with section 1125 of the Bankruptcy Code. This Plan may be modified at any time after confirmation and before its Substantial Consummation, provided that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code, the Debtors have consulted with the Committee and TRT Holdings, Inc. on such modifications, the Bankruptcy Court, after notice and a hearing,

confirms the Plan, as modified, under section 1129 of the Bankruptcy Code, and the circumstances warrant such modification. A holder of a Claim or Interest that has accepted or rejected this Plan shall be deemed to have accepted or rejected, as the case may be, such Plan as modified, unless, within the time fixed by the Bankruptcy Court, such holder changes its previous acceptance or rejection. Notwithstanding anything to the contrary herein, the Committee's and TRT Holdings, Inc.'s right to object to any proposed modification of the Plan is fully reserved.

## ARTICLE XIV
## EFFECT OF THE PLAN ON CLAIMS AND INTERESTS

### 14.1.  Satisfaction of Claims.

Except as otherwise provided herein, the rights afforded in the Plan and the treatment of all Claims and Interests herein shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Interests of any nature whatsoever against or derivatively through the Debtors or the Estates, Assets, properties, or interests in property. Except as otherwise provided herein, on the Effective Date, all Claims against and Interests in the Debtors shall be satisfied, discharged, and released in full. Except as otherwise provided herein, all Persons shall be precluded and forever barred from asserting against Debtors, successors, or assigns, or the Estates, Assets, properties, or interests in property any event, occurrence, condition, thing, or other or further Claims or Causes of Action based upon any act, omission, transaction, or other activity of any kind or nature that occurred or came into existence prior to the Effective Date, whether or not the facts of or legal bases therefore were known or existed prior to the Effective Date.

### 14.2.  Good Faith.

As of the Confirmation Date, the Debtors shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code.

### 14.3.  Setoffs.

Except as otherwise expressly provided for in the Plan, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the holder of a Claim, the Liquidating Trustee may offset against any Allowed Claim and the payments to be made pursuant to the Plan on account of such Allowed Claim (before such payment is made), any claims, rights, Estate Defenses, and Causes of Action of any nature that the Debtors may hold against the holder of such Allowed Claim, to the extent such claims, rights, Estate Defenses, or Causes of Action against such holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); *__provided,__* __however__, that neither the failure to effect such a setoff nor the Allowance of any Claim or Interest pursuant to the Plan shall constitute a waiver or release by the Liquidating Trustee of any such claims, rights, Estate Defenses, and Causes of Action that the Liquidating Trustee may possess against such Claimant.

### 14.4.  Recoupment.

In no event shall any holder of Claims or Interests be entitled to recoup any Claim or Interest against any claims, rights, or Causes of Action of the Debtors or the Liquidating Trustee,

as applicable, unless: (i) such holder actually provides notice thereof in writing to the Liquidating Trustee of its intent to perform a recoupment; and (ii) such notice includes the amount to be recouped by the holder of the Claim or Interest and a specific description of the basis for the recoupment. Notwithstanding the foregoing, nothing in this Plan shall be deemed to deprive or prevent the Debtors or the Liquidating Trustee, as applicable, from seeking a judicial determination from the Bankruptcy Court or any other court of competent jurisdiction regarding the validity and extent of such Claimant's recoupment rights.

### 14.5. **Satisfaction of Subordination Rights.**

No subordination rights or agreements between Claimants shall be binding or enforceable against the Liquidating Trustee in the performance of this Plan and the Liquidating Trust Agreement. Distributions to the various Classes of Claims hereunder shall not be subject to levy, garnishment, attachment, or similar legal process by any Claim holder by reason of any claimed subordination rights or otherwise, so that each Claim holder shall have and receive the benefit of the Distributions in the manner set forth in the Plan.

### 14.6. **Turnover.**

On the Effective Date, any rights of the Estates to compel turnover of Assets under applicable non-bankruptcy law and pursuant to sections 542 or 543 of the Bankruptcy Code shall be deemed transferred to and vested in the Liquidating Trustee. The Liquidating Trustee may exercise such rights with respect to any property that may be arguably have been Property of the Estates to the fullest extent allowable under applicable law and authority.

### 14.7. **Subordination.**

On the Effective Date, the rights of the Debtors to seek subordination of any Claim or Interest pursuant to section 510 of the Bankruptcy Code shall be fully reserved and vested in the Liquidating Trustee to pursue, if deemed prudent, by the Liquidating Trustee, and the treatment afforded any Claim or Interest that becomes a Subordinated Claim at any time shall be modified to reflect such subordination.

### 14.8. **Automatic Stay.**

The automatic stay pursuant to section 362 of the Bankruptcy Code, except as previously modified by the Bankruptcy Court, shall remain in effect until the Effective Date of the Plan as to the Debtors and all Assets. Upon the Effective Date, the automatic stay shall be replaced by the injunction set forth in Section 7.4 above.

## ARTICLE XV
## JURISDICTION IN THE BANKRUPTCY AND OTHER COURTS

### 15.1. **Retention of Jurisdiction.**

Pursuant to sections 1334 and 157 of title 28 of the United States Code, the Bankruptcy Court shall retain exclusive jurisdiction of all matters arising in, arising under, and related to the

Cases and the Plan, for the purposes of sections 105(a) and 1142 of the Bankruptcy Code, and for, among other things, the following purposes:

(a)     To hear and determine any and all Objections to or applications concerning the allowance of Claims or the allowance, classification, priority, compromise, estimation, or payment of any Administrative Claim or Claim, and to subordinate any Claim or Interest in accordance with any contractual, legal, or equitable subordination principles;

(b)     To hear and determine all Fee Claims;

(c)     To hear and determine pending applications for the rejection, assumption, or assumption and assignment of Unexpired Leases and Executory Contracts and any disputes over Cure Amounts resulting therefrom, and to determine the rights of any party in respect to the assumption or rejection of any Executory Contract or Unexpired Lease;

(d)     To hear and resolve any disputes arising from or related to (i) any orders of the Bankruptcy Court granting relief under Bankruptcy Rule 2004 or (ii) any protective orders entered by the Bankruptcy Court in connection with the foregoing;

(e)     To hear and determine any and all motion, adversary proceeding, application, contested matter, and other litigated matter pending on or commenced after the entry of the Confirmation Order, including any remands or appeals;

(f)     To hear and determine all controversies, disputes, and suits which may arise in connection with the execution, interpretation, implementation, consummation, or enforcement of the Plan, the Confirmation Order, any transactions or payments in furtherance of either, any agreement, instrument, or other document governing or related to any of the foregoing, or in connection with the enforcement of any remedies made available under the Plan, including without limitation, (i) adjudication of all rights, interests, or disputes relating to any of the Assets, (ii) the valuation of all Collateral, including hearing all valuation motions, (iii) the determination of the validity of any Lien or claimed right of setoff; and (iv) determinations of objections to Disputed Claims, including any disputes concerning reserves with respect to Disputed Claims or the administration thereof;

(g)     To liquidate any disputed, contingent, or unliquidated Claims;

(h)     To ensure that Distributions to holders of Allowed Claims are accomplished as provided in this Plan and the Confirmation Order;

(i)     To determine all issues relating to the enforcement, fixing, or liquidation of Claims;

(j)     To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(k)     To enable the Liquidating Trustee to prosecute any and all proceedings which may be brought to set aside Liens or encumbrances and to recover any transfers, assets, properties, or damages to which the Liquidating Trust may be entitled under applicable provisions

of the Bankruptcy Code or any other federal, state, or local laws, including Causes of Action, controversies, disputes, and conflicts between the Liquidating Trustee and any other party, including, but not limited to, any Objections to Claims and Causes of Action, including Preference Actions and other Avoidance Actions or equitable subordination.

(l)     To hear and determine any application to modify this Plan in accordance with section 1127 of the Bankruptcy Code to remedy any defect or omission or reconcile any inconsistency in this Plan, the Disclosure Statement, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(m)     To issue and enforce injunctions (including the Plan injunction contained in Section 7.4 above), enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation, or enforcement of this Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

(n)     To provide for and approve any sale after the Effective Date of any of the Estate Assets free and clear of all Liens, Claims, and Interests;

(o)     To take any action and issue such orders, including any such action or orders as may be necessary after entry of the Confirmation Order or the occurrence of the Effective Date, as may be necessary to construe, enforce, implement, execute, and consummate this Plan, including any release, exculpation, or injunction provisions set forth in this Plan, or to maintain the integrity of this Plan following the occurrence of the Effective Date;

(p)     To hear and determine any other matter not inconsistent with the Bankruptcy Code and title 28 of the United States Code;

(q)     To resolve any disputes concerning whether a Person had sufficient notice of the Cases, the Disclosure Statement, any solicitation conducted in connection with the Cases, any bar date established in the Cases, or any deadline for responding or objecting to a Cure Amount, in each case, for the purpose for determining whether a Claim or Interest is discharged hereunder or for any other purpose;

(r)     To recover all Assets of the Debtors and property of the Estates, wherever located;

(s)     To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(t)     To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code; and

(u)     To enter a final decree closing these Cases.

### 15.2. **Abstention and Other Courts.**

Nothing herein shall affect the right of the Liquidating Trustee to assert Causes of Action or Estate Defenses or otherwise seek any appropriate relief in any court of competent jurisdiction. If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of or relating to these Cases, this Section 15.2 of the Plan shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

## ARTICLE XVI
## MISCELLANEOUS PROVISIONS

### 16.1. **Severability.**

Should the Bankruptcy Court determine that any provision of the Plan is unenforceable either on its face or as applied to any Claim or Interest or transaction, the Liquidating Trustee may modify the Plan in accordance with Sections 13.4 and 13.5 hereof so that such provision shall not be applicable to the holder of any Claim or Interest. Such a determination of unenforceability shall not (a) limit or affect the enforceability and operative effect of any other provision of the Plan or (b) require the re-solicitation of any acceptance or rejection of the Plan.

### 16.2. **Oral Agreements; Modification of Plan; Oral Representations or Inducements.**

The terms of the Plan, Disclosure Statement, and Confirmation Order may not be changed, contradicted, or varied by any oral statement, agreement, warranty, or representation. The Plan may only be modified, amended, or supplemented in writing signed by the Liquidating Trustee or an alternate authorized representative of the Liquidating Trustee. The Debtors, their bankruptcy counsel, and their other Professionals make no representations, warranties, promises, or inducements relating to the Plan or its confirmation except as expressly set forth in this Plan or the Disclosure Statement. Notwithstanding anything to the contrary herein, JPMorgan's, the Committee's and TRT Holdings, Inc.'s right to object to any modification of the Plan is fully reserved.

### 16.3. **Waiver.**

Neither the Debtors nor the Liquidating Trustee shall be deemed to have waived any right, power, or privilege pursuant to the Plan, unless the waiver is in writing and signed by an authorized representative of the Debtors (before the Effective Date) or the Liquidating Trustee (after the Effective Date). There shall be no waiver by implication, course of conduct or dealing, or through any delay or inaction by the Debtors or Liquidating Trustee, as applicable, of any right pursuant to the Plan, including the provisions of this anti-waiver section. The waiver of any right under the Plan shall not act as a waiver of any other or subsequent right, power, or privilege.

### 16.4. Construction.

This Plan shall control over any inconsistent term of the Disclosure Statement or any other Plan Document. The Confirmation Order shall control over any inconsistent provision of the Plan, Disclosure Statement, and other Plan Documents.

### 16.5. Notice.

Any notice or communication required or permitted by the Plan shall be in writing given, made, or sent as follows:

(a)     If to a Creditor, notice may be given as follows: (i) if the Creditor has filed no proof of claim, then to the address reflected in the Schedules, or (ii) if the Creditor has filed a proof of claim, then to address reflected in the proof of claim.

(b)     If to the Debtors, notice shall be sent to the following address:

> Dykema Gossett PLLC
> Attention: Aaron M. Kaufman
> 1717 Main Street, Suite 4200
> Dallas, Texas 75201
> akaufman@dykema.com
> Telephone: (214) 462-6400
> Facsimile: (214) 462-6401

(c)     If to the Committee, notice shall be sent to the following address:

> Kilpatrick Townsend & Stockton LLP
> Attention: David M. Posner and Gianfranco Finizio
> The Grace Building
> 1114 Avenue of the Americas
> New York, New York 10036
> dposner@kilpatricktownsend.com
> gfinizio@kilpatricktownsend.com
> Telephone: (212) 775-8840

(d)     If to the Liquidating Trustee, notice shall be sent to the following address:

> GlassRatner Advisory & Capital Group LLC
> Attention: Mark Shapiro
> 3500 Maple Avenue, Suite 420
> Dallas, Texas 75219
> mshapiro@glassratner.com
> Telephone: (972) 794-1056

(e)     If to TRT Holdings, Inc., notice shall be sent to the following address:

> TRT Holdings, Inc.

> c/o Wick Phillip
> Attention: Jason Rudd
> 3131 McKinney Avenue, Suite 100
> Dallas, Texas 75204
> jason.rudd@wickphillips.com
> Telephone: (214) 740-4038

(f)     Any Creditor desiring to change its address for the purpose of notice may do so by giving notice to the Liquidating Trustee of its new address in accordance with the terms of this Section 16.5.

(g)     Any notice given, made, or sent as set forth above shall be in writing and effective upon being (i) deposited in the United States Mail, postage prepaid, addressed to the addressee at the address as set forth above; (ii) delivered by hand or messenger to the addressee at the address set forth above; (iii) telecopied to the addressee as set forth above, with a hard confirmation copy being immediately sent through the United States Mail; or (iv) delivered for transmission to an expedited or overnight delivery service such as FedEx.

### 16.6.   Compliance with All Applicable Laws.

If notified by any governmental authority they are in violation of any applicable law, rule, regulation, or order of such governmental authority relating to their businesses, the Liquidating Trustee shall comply with such law, rule, regulation, or order; provided that nothing contained herein shall require such compliance if the legality or applicability of any such requirement is being contested in good faith in appropriate proceedings and, if appropriate, an adequate reserve has been set aside on the books of the Liquidating Trustee or as set forth in the Liquidating Trust Agreement.

### 16.7.   Binding Effect.

The Plan shall be binding upon, and shall inure to the benefit of the Liquidating Trustee, the holders of the Claims or Liens, the holders of Interests, and their respective successors in interest and assigns.

### 16.8.   Governing Law, Interpretation.

Unless a rule of law or procedure supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) is applicable, the internal laws of the State of Texas shall govern the construction and implementation of the Plan and any Plan Documents without regard to conflicts of law.  The Plan shall control any inconsistent term or provision of any other Plan Documents, except as set forth in Section 16.4 above.

### 16.9.   Payment of Statutory Fees.

All fees payable pursuant to section 1930 of title 28 of the United States Code shall be paid on or before the Effective Date and thereafter as such statutory fees become due.

**16.10.  Filing of Additional Documents.**

On or before Substantial Consummation of the Plan, the Debtors or Liquidating Trustee, as applicable, may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

**16.11.  Elections by the Liquidating Trustee.**

Any right of election or choice granted to the Liquidating Trustee under this Plan may be exercised by the Liquidating Trustee as to each Claim, Creditor, or Person.

**16.12.  Dissolution of Committee.**

On the Effective Date, the Committee shall dissolve and the members of the Committee shall be released, exculpated, and discharged from all authority, duties, responsibilities, and obligations related to and arising from and in connection with these Cases, provided that the Committee shall continue to exist solely with respect to (i) any applications for Fee Claims or expense reimbursements for members of such Committee including preparing same, objecting to same, defending same, and attending any hearing with respect to same; (ii) any motions or other actions seeking enforcement of implementation of the provisions of the Plan or the Confirmation Order; and (iii) any appeal pending as of the Effective Date or filed thereafter, the outcome of which could affect the treatment of prepetition creditors.  Following the Effective Date, Professionals retained by the Committee shall be entitled to reasonable compensation for services rendered in connection with the matters identified in clauses (i) – (iii) of this paragraph and any such payments made in connection therewith shall be made without any further notice to or action, order, or approval of the Bankruptcy Court.

**16.13.  No Admissions.**

Notwithstanding anything in the Plan to the contrary, nothing in the Plan shall be deemed as an admission by the Debtors on behalf of the Estates with respect to any matter set forth in the Plan, including liability on any Claim.

**16.14.  Plan Supplement.**

Any and all Exhibits, lists, or schedules not filed with the Plan shall be contained in the Plan Supplement and filed with the Clerk of the Bankruptcy Court on or before the Plan Supplement Filing Date or such other filing deadline as may be approved by the Bankruptcy Court. Holders of Claims or Interests may also obtain a copy of the Plan Supplement upon written request to the Debtors.  Notwithstanding the foregoing, the Debtors may amend the Plan Supplement and any attachments thereto, through and including the Confirmation Date.

**16.15.  Disclaimer for Governmental Units.**

Notwithstanding anything in the Plan, the Disclosure Statement, the Confirmation Order, the Plan Supplement, or any other Plan Document, nothing shall discharge, release, preclude, or enjoin (a) any liability of the Debtors to any Governmental Unit that is not a Claim; (b) any Claim of a Governmental Unit arising on or after the Effective Date; (c) any police or regulatory liability

owed to a Governmental Unit, including, without limitation, any police or regulatory liability such Person would be subject to as the post-Effective Date owner or operator of property; (d) any Claim of or liability to a Governmental Unit on the part of any Person other than the Debtors; or (e) any obligations preserved or established in the Plan. Nor shall anything in the Plan, the Disclosure Statement, the Confirmation Order, the Plan Supplement, or any other Plan Document enjoin or otherwise bar a Governmental Unit from asserting or enforcing, outside this Bankruptcy Court, any liability described in the preceding sentence.

### 16.16. **Exemption from Securities Laws.**

The issuance of and the distribution under this Plan of the beneficial interests in the Liquidating Trust shall be exempt from registration under the Securities Act and any other applicable securities laws pursuant to section 1145 of the Bankruptcy Code.

### 16.17. **Article 1146 Exemption.**

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.

### 16.18. **Section 1125(e) Good Faith Compliance.**

The Debtors, the Stalking Horse Bidder, the Purchaser, the DIP Lender, JPMorgan, the First Lien Lenders, the Committee, and each of their respective Related Parties, shall be deemed to have acted in "good faith" under section 1125(e) of the Bankruptcy Code, and the Confirmation Order shall including a finding of fact to that effect.

### 16.19. **Further Assurances.**

The Debtors, the Liquidating Trustee, all holders of Claims and Interests receiving Distributions hereunder and all other parties in interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

[Signature Page Immediately Follows]

119899.000001 4817-9926-0870.7

DATED:  August 7, 2020      Respectfully Submitted,

**GGI HOLDINGS, LLC**
**GOLD'S GYM INTERNATIONAL, INC.**
**GOLD'S HOLDING CORP.**
**GOLD'S ALABAMA LLC**
**GOLD'S GYM FRANCHISING LLC**
**GOLD'S GYM MERCHANDISING LLC**
**GOLD'S GYM ROCKIES, LLC**
**GOLD'S LOUISIANA, LLC**
**GOLD'S NORTH CAROLINA, LLC**
**GOLD'S OHIO, LLC**
**GOLD'S OKLAHOMA LLC**
**GOLD'S SOUTHEAST, LLC**
**GOLD'S ST. LOUIS LLC**
**GOLD'S TEXAS HOLDINGS GROUP, INC.**

By:    _/s/ Paul Early_
        Authorized Representative


**DYKEMA GOSSETT PLLC**

By:  _/s/ Aaron M. Kaufman_
    Aaron M. Kaufman
    State Bar No. 24060067
    akaufman@dykema.com
    Ariel J. Snyder (Admitted _pro hac vice_)
    State Bar No. 24115436
    asnyder@dykema.com
    1717 Main Street, Suite 4200
    Dallas, Texas 75201
    Telephone: (214) 462-6400
    Facsimile: (214) 462-6401

    and

    Danielle N. Rushing
    State Bar No. 24086961
    drushing@dykema.com
    112 E. Pecan Street, Suite 1800
    San Antonio, Texas 78205
    Telephone: (210) 554-5500
    Facsimile: (210) 226-8395

**COUNSEL FOR THE DEBTORS**
**AND DEBTORS-IN-POSSESSION**