

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed August 26, 2020**

**United States Bankruptcy Judge**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 20-31318-hdh11 |
| | § | |
| **GGI HOLDINGS, LLC**, *et al.*, | § | CHAPTER 11 |
| | § | |
| DEBTORS.[1] | § | (Jointly Administered) |
| | § | |

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING THE SECOND AMENDED JOINT PLAN OF LIQUIDATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE FOR GGI HOLDINGS, LLC AND ITS AFFILIATES

The above-captioned debtors (collectively, the "Debtors") having:

- commenced the Cases[2] on May 4, 2020 (the "Petition Date"), by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code");

- continued to operate their businesses and remain in possession of their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

---

[1] The debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: GGI Holdings, LLC (1222); Gold's Gym International, Inc. (3614); Gold's Holding Corp. (3610); Gold's Alabama, LLC (0520); Gold's Gym Franchising, LLC (5009); Gold's Gym Merchandising, LLC (4892); Gold's Gym Rockies, LLC (7129); Gold's Louisiana, LLC (9825); Gold's North Carolina, LLC (3221); Gold's Ohio, LLC (4396); Gold's Oklahoma, LLC (7577); Gold's St. Louis, LLC (4827); Gold's Southeast, LLC (9382); and Gold's Texas Holdings Group, Inc. (8156). The Debtors' mailing address is 4001 Maple Avenue, Suite 200, Dallas, Texas 75219.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

- filed, on June 22, 2020, the *Notice of Cure Costs Associated with Unexpired Leases and Executory Contracts* [Dkt. 306];

- filed, on June 25, 2020, the *First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Dkt. 313] and the *First Amended Joint Disclosure Statement Pursuant to 11 U.S.C. § 1125* [Dkt. 314] (the "Disclosure Statement");

- obtained, on July 1, 2020, entry of the *Order (I) Approving Disclosure Statement, (II) Establishing Procedures for the Solicitation and Tabulation of Votes to Accept or Reject the Debtors' Joint Chapter 11 Plan, (III) Scheduling a Confirmation Hearing, and (IV) Approving Related Notice Procedures* [Dkt. 330] (the "Scheduling Order"), which, among other things, (i) approved the Solicitation Package (as defined in the Scheduling Order), and (ii) set July 6, 2020, as the deadline by which the Debtors were to complete distribution of the Solicitation Packages;

- caused, by July 6, 2020, the Solicitation Package to be distributed, consistent with the Bankruptcy Code, the Bankruptcy Rules, and the Scheduling Order, as evidenced by the *Certificate of Service of* filed on July 16, 2020 [Dkt. 380] (the "Solicitation Certificate");

- obtained, on July 20, 2020, entry of the *Order Granting Motion to Continue Sale and Confirmation Hearings and Related Relief* [Dkt. 388] (the "Continuation Order"), which, among other things, (i) extended the deadline to file the Plan Supplement (as defined below) to August 7, 2020, (ii) extended the deadline to object to the Plan to August 17, 2020, at 5:00 p.m. Central, (iii) extended the voting deadline on the Plan to August 17, 2020, at 5:00 p.m. Central, (iv) extended the deadline to exchange witness and exhibit lists relating to the Plan to August 21, 2020, and (v) continued the sale hearing to July 29, 2020, and the confirmation hearing to August 25, 2020;

- filed, on July 22, 2020, the *Notice of Continued Confirmation Hearing and Extended Voting and Objection Deadlines* [Dkt. 400];

- filed, on August 7, 2020, the *Second Amended Joint Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* [Dkt. 457] (collectively, as subsequently amended, modified and supplemented, the "Plan");

- filed, on August 7, 2020, the *Notice of Filing of Plan Supplement* [Dkt. 458] (as may be modified, supplemented or amended from time to time, the "Plan Supplement"), which contained, among other things, a form of the Liquidating Trust Agreement;

- filed, August 24, 2020, the *Declaration of Balloting Agent Regarding Solicitation and Tabulation of Votes in Connection with the Second Amended Joint Chapter 11 Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of GGI Holdings, LLC, et al.* [Dkt. 525] (the "Voting Declaration"); and

- filed, on August 24, 2020, the *Declaration of Paul Early in Support of Confirmation of Second Amended Joint Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* [Dkt. 526] (the "Early Declaration").

The Bankruptcy Court having:

- set, pursuant to the Continuation Order, August 17, 2020, at 5:00 p.m. (prevailing Central Time) as the deadline to file objections to confirmation of the Plan (the "Plan Objection Deadline"), or such other Plan Objection Deadline as agreed to by the Debtors;

- set, pursuant to the Continuation Order, August 17, 2020, at 5:00 p.m. (prevailing Central Time) as the Voting Deadline (or as extended by any Prior Order);

- set the hearing for Confirmation of the Plan (the "Confirmation Hearing") for August 25, 2020 at 2:00 p.m. (prevailing Central Time);

- reviewed the Disclosure Statement, the Plan, the Plan Supplements, the Voting Declaration, and all filed pleadings, exhibits, statements and comments regarding confirmation of the Plan ("Confirmation") and the record of these Cases;

- reviewed the objections and statements filed in opposition to Confirmation, including, without limitation, those filed at Docket No. 495 and any other informal objections, comments or statements in opposition to Confirmation of the Plan (together, the "Objections"); and

- heard and considered the statements of counsel, all testimony and other evidence proffered and adduced at the Confirmation Hearing, and in respect of, Confirmation.

NOW, THEREFORE, it appearing to the Bankruptcy Court that notice of the Confirmation Hearing, and the opportunity for any party in interest to object to Confirmation, was adequate and appropriate as to all parties in interest and other entities affected, benefitted or bound by or to be affected, benefitted or bound by the Plan and this Confirmation Order and the transactions contemplated thereby; and upon consideration of and determining that the legal and factual bases set forth in the documents filed in support of Confirmation, the statements of counsel, and all other testimony and other evidence proffered, adduced, admitted into evidence and presented at the Confirmation Hearing, establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefor, the Bankruptcy Court hereby

makes and issues the following findings of fact, conclusions of law and order (this "Confirmation Order"):

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

**A.  Jurisdiction and Venue**

1.  Jurisdiction and Core Proceeding (28 U.S.C. §157(b)(2)).  The Bankruptcy Court has jurisdiction under 28 U.S.C. §1334 over the Cases, the Debtors, all property of the Debtors' Estates and all parties that filed proofs of Claim or otherwise subjected themselves to the jurisdiction of the Bankruptcy Court, and to consider Confirmation of the Plan and all provisions thereof.  Approval of the Disclosure Statement and Confirmation of the Plan are core proceedings under 28 U.S.C. §157(b)(2) that under the United States Constitution, the Bankruptcy Court may decide by final order and this Court has exclusive jurisdiction to determine whether the Disclosure Statement contains adequate information for purposes of section 1125 of the Bankruptcy Code and whether the Plan should be confirmed.

2.  Venue (28 U.S.C. §§1408 and 1409).  Venue of the Cases is proper in this Bankruptcy Court pursuant to 28 U.S.C. §§1408 and 1409.

3.  Since the Petition Date, the Debtors have continued in possession of their properties and to manage their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Cases.

4.  On May 15, 2020, the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Committee") to represent the interests of the unsecured creditors of the Debtors in the Cases [Dkt. No. 129]. The United States Trustee appointed additional Committee members on June 8, 2020 and June 16, 2020 [Dkt Nos. 258, 295].

### B. Judicial Notice

5.     The Bankruptcy Court takes judicial notice of the docket of the Cases maintained by the clerk of the Bankruptcy Court (the "Docket"), including, without limitation, all pleadings, certifications, notices and other documents docketed, all orders entered, and the transcripts of, and all evidence and arguments made, admitted, proffered or adduced at, the hearings held before the Bankruptcy Court during the pendency of the Cases.

### C. Burden of Proof

6.     The Debtors, as the proponents of the Plan, have met their burden of proof with respect to each element of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard respecting confirmation of a plan under Chapter 11 of the Bankruptcy Code. The Bankruptcy Court also finds that the Debtors have satisfied the elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by clear and convincing evidence. Each witness who testified on behalf of the Debtors in connection with Confirmation was credible, reliable, and qualified to testify as to the topics addressed in his or her testimony.

### D. Bankruptcy Rule 3016

7.     The Plan is dated and identifies the Debtors submitting it, thereby satisfying Bankruptcy Rule 3016(a). The filing of the Disclosure Statement with the clerk of the Bankruptcy Court satisfies Bankruptcy Rule 3016(b).

### E. Transmittal and Mailing of Solicitation Materials; Notice

8.     As evidenced by the Solicitation Certificate, the Debtors complied with the service requirements and procedures approved in the Scheduling Order. The Debtors have provided notice of the Confirmation Hearing, the Voting Deadline, and the Plan Objection Deadline and solicited Ballots accepting or rejecting the Plan by timely transmitting the

Solicitation Package to all holders of Claims and Interests, in accordance with the Scheduling Order, the Continuation Order, the Bankruptcy Code and the Bankruptcy Rules. The notices of the Confirmation Hearing are adequate and sufficient, and no other notice need be given.

**F.     Voting**

9.      Holders of Claims in Class 1.A (First Lien Secured Claims), Class 1.B (DIP Lender Claims), Class 1.D (Other Secured Claims), Class 2 (Assumed Liabilities),[3] Class 3 (General Unsecured Claims), Class 4 (Intercompany Claims), Class 5 (Subordinated Claims) and Interests in Class 6 (Old Equity Interests) are impaired under the Plan and, thus, were entitled to vote to accept or reject the Plan. Holders of Claims in Class 1.C (Secured Tax Claims and Trust Fund Tax Claims) and Class 2 (Convenience Claims) are unimpaired and were deemed to accept the Plan.

10.     On August 24, 2020, the Debtors filed with the Bankruptcy Court the Voting Declaration [Dkt. 525] certifying the method, results and any "Opt-Out" designations on Ballots and notices for Classes 1.A, 1.B, 1.D, 3, 4, 5 and 6 and any other Non-Voting Classes.

11.     Following entry of the Scheduling Order, the Debtors and their respective directors, officers, agents, affiliates, representatives, attorneys and advisors solicited votes to accept or reject the Plan in good faith and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Scheduling Order and all other applicable statutes, rules, laws and regulations.

---

[3] In light of the sale approved under the Sale Order, the Plan was amended to change from Class 2 (Assumed Liabilities) to Class 2 (Convenience Claims). Under the Plan, there were no holders of Assumed Liabilities to solicit. As such, the Plan, as amended, modified Class 2 to Convenience Claims, for administrative convenience. Votes of Class 2 Convenience Claims were not solicited, consistent with 11 U.S.C. § 1122(b).

### G.    Voting Report

12.    As evidenced by the Voting Declaration, all Ballots were properly tabulated, including any Ballots submitted or modified after the Voting Deadline by agreement with the Debtors or order of the Court. Pursuant to sections 1124 and 1126 of the Bankruptcy Code, Classes 1.A, 1.B, 4 and 6, which are all entitled to vote on the Plan, accepted the Plan, satisfying the standards required by section 1126(c) of the Bankruptcy Code with respect to such Classes. Class 3 accepted the Plan with respect to Debtors Golds Alabama, LLC; Gold's Gym International, Inc.;, Gold's Holding Corp. and Gold's Texas Holdings Group, Inc. (collectively, the "Accepting Class 3 Debtors"). Class 3 did not accept the Plan with respect to Debtors GGI Holdings, LLC; Gold's Gym Franchising, LLC; Gold's Gym Merchandising, LLC; Gold's Gym Rockies, LLC; Gold's Louisiana, LLC; Gold's North Carolina, LLC; Gold's Ohio, LLC; Gold's Oklahoma, LLC; Gold's St. Louis, LLC (4827); and Gold's Southeast, LLC (collectively, the "Non-Accepting Class 3 Debtors").

### H.    Compliance With the Requirements of Section 1129 of the Bankruptcy Code[4]

13.    The Plan complies with all applicable provisions of section 1129 of the Bankruptcy Code as set forth below:

---

[4] The following Bankruptcy Code provisions are not applicable in these Cases and, therefore, not addressed in this Order: §§ 1129(a)(6), 1129(a)(13), 1129(a)(14), 1129(a)(15) and 1129(a)(16).

(a)     **Section 1129(a)(1):  Compliance of the Plan with Applicable Provisions of the Bankruptcy Code**

14.     The Plan complies with all applicable provisions of the Bankruptcy Code, including Bankruptcy Code sections 1122 and 1123.

### (i)     Section 1122, 1123(a)(1):  Proper Classification

15.     Article III of the Plan classifies Claims and Interests into six Classes of Claims and Interests, including four sub-classes within Class 1.  The respective Claims and Interests placed in each Class are substantially similar to other Claims and Interests, as the case may be, in such Class, and such classifications were otherwise acceptable to each voting Class.  Valid business, factual and legal reasons exist for separately classifying the various Classes of Claims and Interests designated by the Plan, and the creation of such Classes does not unfairly discriminate between holders of Claims and Interests.  The Plan, therefore, satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

### (ii)     Section 1123(a)(2)-(4):  Specified Treatment and No Discrimination

16.     Article IV of the Plan in accordance with section 1123(a)(2) of the Bankruptcy Code specifies that all Classes of Claims and Interests are impaired under the Plan, except Class 1.C (Secured Tax Claims and Trust Fund Tax Claims) and Class 2 (Convenience Claims), which was established pursuant to section 1122(b) of the Bankruptcy Code for administrative convenience.  In accordance with section 1123(a)(3) of the Bankruptcy Code, Article V of the Plan describes the treatment of the Allowed Claims in each such Class.  As required by section 1123(a)(4) of the Bankruptcy Code, the treatment of each Claim or Interest within a Class is the same as the treatment of each other Claim or Interest in such Class, unless the holder of a Claim or Interest agrees to less favorable treatment on account of its Allowed Claim or Allowed Interest in such Class.

### (iii)     Section 1123(a)(5):  Adequate Means for Plan Implementation

17.     Pursuant to section 1123(a)(5) of the Bankruptcy Code, Article VIII of the Plan provides adequate and proper means for the Plan's implementation, including, without limitation, (a) the consummation of the Sale Transaction with the Purchaser; (b) the establishment of the Liquidating Trust and the appointment of the Liquidating Trustee; and (c) vesting of the Liquidating Trust Assets in the Liquidating Trust.

### (iv)     Section 1123(a)(6):  Non-Voting Equity Securities

18.     The Plan does not provide for the Debtors' issuance of non-voting equity securities, thereby satisfying section 1123(a)(6) of the Bankruptcy Code.

### (v)     Section 1123(a)(7):  Designation of Directors and Officers

19.     The Plan complies with section 1123(a)(7) of the Bankruptcy Code because the selection of the Liquidating Trustee is consistent with the interests of holders of Liquidating Trust Interests.

### (vi)     Section 1123(b)(1)-(2):     Impairment/Unimpairment of Classes of Claims and Interests & Executory Contracts

20.     As described above, the Plan impairs certain Classes of Claims and Interests, while leaving others unimpaired.  The Plan therefore modifies the rights of such holders of Claims and Interests and leaves the rights of others unaffected.  In addition, Article X of the Plan provides for the rejection of all executory contracts and unexpired leases to which the Debtors are parties, except as set forth therein.

### (vii)     Section 1123(b)(3):  Releases, Exculpation and Injunction Discharge

21.     <u>Releases</u>.  The releases of Claims and Causes of Action in favor of the Released Parties, to the extent provided in the Plan and pursuant to section 1123(b)(3)(A) of the Bankruptcy Code, are described in Article VII and Section 7.2 of the Plan.  Each of the Released

Parties has contributed significant value to the Debtors, the Plan, and the liquidation efforts that warrant the releases. Further, section 105(a) of the Bankruptcy Code permits approval of the releases set forth in the Plan and the related injunctions in the Plan and this Confirmation Order, because, as has been established on the record in the Cases and the evidence presented and admitted at the Confirmation Hearing, such provisions (a) are integral to the integrated and mutually dependent terms and conditions of the settlement embodied in the Plan and are essential to the formulation and implementation of the Plan, as provided in section 1123 of the Bankruptcy Code, (b) confer substantial benefits on the Debtors' Estates, (c) are fair, equitable, and reasonable, (d) are in the best interests of the Debtors, their Estates, and all parties in interest, (e) were given in exchange for the good and valuable consideration provided by the Released Parties; and (f) with respect to the third-party releases, the Ballots and Notices sent to all holders of Claims, in each case, unambiguously stated that the Plan contains third-party releases and provided such holders of Claims with the opportunity to opt-out of such releases (and still receive applicable Distributions under the Plan), whether or not such Claim holder was entitled to vote.

22. <u>Exculpation</u>. The exculpation set forth in Article VII and Section 7.3 of the Plan is an essential and integral provision of the Plan, and is appropriate under applicable law because it was proposed in good faith, was formulated following extensive good-faith, arm's-length negotiations with key constituents, and is appropriately limited in scope. Each of the exculpation provisions set forth in the Plan, as approved, modified or limited, and as ordered and decreed by this Confirmation Order: (a) are within the jurisdiction of the Bankruptcy Court under 28 U.S.C. §§1334(a), 1334(b), and 1334(d); (b) are essential to the implementation of the Plan; (c) are an integrated and dependent elements of the settlement and transactions incorporated into and

contemplated by the Plan; (d) confer material benefits on, and are in the best interests of, the Debtors and their Estates; (e) are important to the overall objectives of the Plan to finally resolve all Claims and Causes of Action among or against the parties in interest in these Cases; (f) are consistent with sections 105, 1123, 1129, and other applicable provisions of the Bankruptcy Code; and (g) do not violate section 524(e) by releasing third-party claims asserted against third-party non-debtor persons. The record of the Confirmation Hearing and the Cases is sufficient to support the exculpation provisions contained in Section 7.3 of the Plan.

(b)     **Section 1129(a)(2):  Compliance by the Debtors With the Applicable Provisions of the Bankruptcy Code**

23.     The Debtors, as proponents of the Plan, have complied with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(2), including, without limitation, sections 1123, 1125, 1126 and 1129 of the Bankruptcy Code and Bankruptcy Rules 2002, 3017, 3018 and 3019.

24.     The Debtors are proper debtors under section 109 of the Bankruptcy Code and are proper proponents of the Plan under section 1121(a) of the Bankruptcy Code. Furthermore, the solicitation of acceptances or rejections of the Plan: (a) complied with the Scheduling Order, which approved the Disclosure Statement; and (b) complied with all applicable laws, rules and regulations governing the adequacy of disclosure in connection with such solicitation.

25.     The Debtors, the First Lien Lenders, JPMorgan, the DIP Lender, the Stalking Horse Bidder, the Purchaser, the Committee and each of their respective Representatives have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code.

(c)     **Section 1129(a)(3):  Proposal of the Plan in Good Faith**

26.     The Debtors proposed the Plan based upon extensive, arm's-length negotiations between and among the Debtors and parties in interest, including the First Lien Lenders,

JPMorgan, the DIP Lender, the Committee, the Purchaser and various other parties in interest, and proposed the Plan in good faith (as such term is used in section 1125(e) of the Bankruptcy Code) and not by any means forbidden by law, as required by section 1129(a)(3) of the Bankruptcy Code. The Bankruptcy Court has examined the totality of the circumstances surrounding the filing of the Cases and the process leading to the formulation of the Plan and the Disclosure Statement. The Cases were filed, the Debtors' assets were appropriately marketed, and the Plan was proposed, with the legitimate and good faith purpose of liquidating the Debtors' Estates, maximizing the recovery for each Estate's Creditors and effectuating successful chapter 11 cases for the Debtors.

(d) **Section 1129(a)(4): Bankruptcy Court Approval of Certain Payments as Reasonable**

27. The procedures set forth in the Plan for the Bankruptcy Court's review and ultimate determination of the fees and expenses to be paid by the Debtors in connection with the Cases, or in connection with the Plan and incident to the Cases, comply with section 1129(a)(4) of the Bankruptcy Code. As a result, the requirements of section 1129(a)(4) of the Bankruptcy Code have been satisfied.

(e) **Section 1129(a)(5): Disclosure and Identity of Proposed Management**

28. The Plan complies with Bankruptcy Code section 1129(a)(5) by providing for the appointment of the Liquidating Trustee to administer the Liquidating Trust as of and after the Effective Date.

(f) **Section 1129(a)(7): Best Interests of Creditors**

29. The Debtors have demonstrated that each entity that holds a Claim or Interest in a class that is impaired under the Plan either: (a) has accepted the Plan; or (b) as set forth in the Liquidation Analysis annexed as Exhibit D to the Disclosure Statement, will receive or retain

under the Plan property of a value, as of the Effective Date, that is not less than the Entity would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code. The methodology used and assumptions made in the Liquidation Analysis, as supplemented by the evidence proffered or adduced at the Confirmation Hearing or otherwise in the record of these Cases, are reasonable. As a result, the requirements of section 1129(a)(7) of the Bankruptcy Code have been satisfied.

(g)     **Section 1129(a)(8): Acceptance of the Plan by Each Impaired Class**

30.     As set forth in the Voting Declaration, Class 1.A (First Lien Secured Claims), Class 1.B (DIP Lender Claims), Class 1.D (Other Secured Claims), Class 3 (General Unsecured Claims), Class 4 (Intercompany Claims), Class 5 (Subordinated Claims) and Class 6 (Old Equity Interests) are impaired Classes entitled to vote on the Plan. Classes 1.A, 1.B, 4 and 6 accepted the Plan for all Debtors. Holders of Class 3 Claims accepted the Plan for the Accepting Class 3 Debtors.

31.     Class 1.C (Secured Tax Claims and Trust Fund Claims) and Class 2 (Convenience Claims) are unimpaired and  are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.

32.     Because no Holders of Claims in Classes 1.D and 5 existed as of the Record Date, no Ballots were received with respect to such Classes. Further, Holders of Class 3 Claims did not accept the Plan with respect to the Non-Accepting Class 3 Debtors. Although section 1129(a)(8) of the Bankruptcy Code technically has not been satisfied with respect to Class 1.D and 5 for all debtors, and with respect to Class 3 for the Non-Accepting Class 3 Debtors, the Bankruptcy Court finds the Plan is confirmable, because the Plan otherwise satisfies all elements of section 1129(a) of the Bankruptcy Code and does not discriminate unfairly and is fair and equitable with respect to Class 3 for the Non-Accepting Class 3 Debtors, and with respect to

Class 1.D and 5 for all Debtors, to the extent such Claims exist.  All other voting Classes, not including the votes of Insiders, have voted to accept the Plan.  As a result, the requirements of section 1129(b) of the Bankruptcy Code have been satisfied.

(h)     **Section 1129(a)(9): Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code**

33.     The treatment of Allowed Administrative Claims, Fee Claims for Professionals, Allowed Priority Non-Tax Claims and Allowed Priority Claims, respectively, under Articles II and XII of the Plan satisfies the requirements of section 1129(a)(9) of the Bankruptcy Code. Allowed Priority Tax Claims, as defined in Section 1.100 of the Plan, will include post-Effective Date interest at the applicable nonbankruptcy rate under section 511 of the Bankruptcy Code. To the extent an Administrative Claim, Priority Tax Claim or Priority Non-Tax Claim is not yet due or has not yet been Allowed by Final Order as of the Effective Date, the Liquidating Trustee shall establish reserves on or immediately after the Effective Date in amounts sufficient to pay the asserted amounts of such Administrative Claims, Priority Tax Claims and Priority Non-Tax Claims.  Such reserves may be reduced by agreement of the applicable Claimants or orders of the Bankruptcy Court.  The Liquidating Trustee may not make Distributions to Holders of Allowed Class 3 General Unsecured Claims, Class 5 Subordinated Claims and Class 6 Interests from such reserves unless expressly permitted by order of the Bankruptcy Court or agreement of the applicable Claimants.

(i)     **Section 1129(a)(10):  Acceptance by at Least One Impaired Class**

34.     As set forth in the Voting Declaration and above, at least one impaired class voted to accept the Plan by the requisite majorities, determined without including the acceptance of the Plan by any Insider.  Accordingly, section 1129(a)(10) of the Bankruptcy Code is satisfied.

(j)    **Section 1129(a)(11):  Feasibility of the Plan**

35.    The Plan satisfies section 1129(a)(11) of the Bankruptcy Code.  The evidence proffered or adduced and admitted at the Confirmation Hearing demonstrates that the Debtors will have sufficient funds to satisfy their obligations under the Plan and confirmation of the Plan is not likely to be followed by the further liquidation of the Debtors or any successor to the Debtors that is not otherwise contemplated by the Plan.  As a result, the requirements of section 1129(a)(11) of the Bankruptcy Code have been satisfied.

(k)    **Section 1129(a)(12):  Payment of Statutory Fees**

36.    In accordance with section 1129(a)(12) of the Bankruptcy Code, Section 12.2 of the Plan provides for the payment of all fees payable under 28 U.S.C. § 1930(a).  As a result, the requirements of section 1129(a)(12) of the Bankruptcy Code have been satisfied.

(l)    **Section 1129(b):  Confirmation of the Plan Over Nonacceptance of Impaired Classes**

37.    Pursuant to section 1129(b)(1) of the Bankruptcy Code, the Plan may be confirmed notwithstanding that not all impaired classes voted to accept the Plan.  All classes of impaired Claims, other than Class 3 for the Non-Accepting Class 3 Debtors, and Classes 1.D and 5 for all Debtors, voted to accept the Plan.

38.    The requirements of section 1129(b)(2) of the Bankruptcy Code are satisfied with respect to Class 3 for the Non-Accepting Class 3 Debtors, and Classes 1.D and 5 for all Debtors, because: (a) with respect to Class 3 General Unsecured Claims against the Non-Accepting Class 3 Debtors, the evidence presented at the Confirmation Hearing demonstrated that the Liquidating Trust Assets and proposed treatment of such Claims satisfy the requirements of sections 1129(b)(2)(B)(i) and (b)(2)(C)(ii) because no junior priority Class of Claims will receive Distributions until such Claims are paid pursuant to the Plan and applicable provisions of the

Bankruptcy Code priority scheme; (b) with respect to Class 1.D Other Secured Claims, the treatment provided in Section 5.1(d) of the Plan satisfies the requirements of section 1129(b)(2)(A)(iii) of the Bankruptcy Code by providing a realization of the indubitable equivalent of such Claims or treatment under Section 5.3 as a Deficiency Claim; and (c) with respect to Class 5 Subordinated Claims, the treatment provided in Section 5.5 of the Plan satisfies the requirements of section 1129(b)(2)(C)(ii) of the Bankruptcy Code because there are no holders of Claims or Interests that are junior to such Subordinated Claims that will receive or retain any property under the Plan unless and until such Allowed Subordinated Claims have been paid with interest at the Plan Rate.

      (m)    **Plan Modifications Satisfy 11 U.S.C. §§ 1127(a), 1122 and 1123 and Bankruptcy Rule 3019(a).**

39.    The Plan, which includes modifications made prior to the Confirmation Hearing, satisfies the requirements of Section 1127(a), 1122 and 1123 of the Bankruptcy Code. Such modifications comply with Bankruptcy Rule 3019(a) and do not adversely change the treatment of the Claim of any Creditor or the Interest of any equity holder. As such, the Plan (as modified) shall be and hereby is deemed the Plan as having been accepted by all Creditors and Interest holders who accepted any prior iterations of the Plan.

      (n)    **Satisfaction of Confirmation Requirements**

40.    Based on the foregoing and all other pleadings and evidence proffered and adduced at or prior to the Confirmation Hearing, the Plan satisfies the requirements for Confirmation set forth in section 1129 of the Bankruptcy Code and, if applicable, the Plan may be confirmed notwithstanding the rejection by any Class of Claims or Interests.

(o)     **Section 1129(c):  Only One Plan**

41.     Other than the Plan (including previous versions thereof), which is a joint plan for each Debtor, no other plan has been filed in any of the Debtors' Cases.  As a result, the requirements of section 1129(c) of the Bankruptcy Code are satisfied.

(p)     **Section 1129(d):  Principal Purpose of the Plan is Not the Avoidance of Taxes or Application of the Securities Law**

42.     The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933 (15 U.S.C. § 77e).  As a result, the requirements of section 1129(d) of the Bankruptcy Code are satisfied.

(q)     **Section 1129(e) – Not Small Business Cases**

43.     None of the Cases is a small business case, and, accordingly, section 1129(e) of the Bankruptcy Code does not apply to any of the Cases.

**I.      Executory Contracts and Unexpired Leases**

44.     The Debtors have satisfied the provisions of section 365 of the Bankruptcy Code with respect to the assumption, assignment and rejection of executory contracts and unexpired leases under the Plan.  The Debtors have exercised reasonable and sound business judgment in determining whether to assume, assume and sell and assign, or reject each of their executory contracts and unexpired leases, and such determination is in the best interests of the Debtors, their Estates, and all parties in interest in these Cases.  Accordingly, the Plan satisfies the provisions of section 1123(b)(2) of the Bankruptcy Code.

## ORDER

**IT IS SO ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT:**

45.    **Confirmation Hearing**.  It was appropriate to hold the Confirmation Hearing on the Debtors' request for Confirmation of the Plan, and notice of the Confirmation Hearing was appropriate and satisfactory and is approved in all respects.

46.    **Solicitation**.  The Solicitation Package and solicitation thereof were appropriate and satisfactory and were in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations.  The solicitation of the Plan is approved in all respects.

47.    **Confirmation of the Plan**.  All requirements for Confirmation of the Plan have been satisfied.  The Plan is approved in its entirety and CONFIRMED under section 1129 of the Bankruptcy Code.  The terms of the Plan, including all Exhibits thereto and the Plan Supplement, each as may be modified in accordance with their terms, are incorporated by reference into and are an integral part of the Plan and this Confirmation Order.  The Debtors and Liquidating Trustee, as applicable, are authorized to implement the provisions of the Plan and Plan Documents, and consummate the Plan and Plan Documents.

48.    **Further Technical Modifications to the Plan**.  Prior to the Effective Date, the Debtors may make additional appropriate technical adjustments and modifications to the Plan and documents contained in the Plan Supplement, but only in accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, without further order or approval of the Bankruptcy Court; *provided, that*, such technical adjustments and modifications shall be consistent with the Plan and this Confirmation Order.

49.    **Plan Supplement and Exhibits to the Plan**.  The documents contained in the Plan Supplement (including, without limitation, the Liquidating Trust Agreement and any

exhibits thereto) and exhibits to the Plan and any amendments, modifications, and supplements to any such documents, and the execution, delivery, and performance thereof by the Debtors, and the terms and conditions of such documents, in each case, are authorized and approved in all respects.

50. **Objections**. To the extent that any Objections to Confirmation have not been resolved, withdrawn, waived or settled prior to entry of this Confirmation Order or otherwise resolved as stated on the record of the Confirmation Hearing, they are hereby overruled on their merits.

51. **Findings of Fact and Conclusions of Law**. The findings of fact and the conclusions of law stated in this Confirmation Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to these Cases and this matter by Bankruptcy Rule 9014. To the extent any finding of fact shall be determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law shall be determined to be a finding of fact, it shall be so deemed.

52. **Provisions of Plan and Order Are Non-severable and Mutually Dependent**. The provisions of the Plan and this Confirmation Order, including the findings of fact and conclusions of law set forth herein, are nonseverable and mutually dependent.

53. **Record Closed**. The record of the Confirmation Hearing is closed.

54. **Plan Classification Controlling**. Unless expressly modified by this Order, the terms of the Plan shall solely govern the classification of Claims and Interests for purposes of the Distributions to be made thereunder. The classifications set forth on the Ballots tendered to or returned by the Debtors' Creditors in connection with voting on the Plan: (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan; (b) do not necessarily

represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims under the Plan for Distribution purposes; (c) may not be relied upon by any Creditor as representing the actual classification of such Claims under the Plan for Distribution purposes; and (d) shall not bind the Debtors or their successors in interest, including, without limitation, the Liquidating Trustee.

55. **Binding Nature of the Plan**. This Confirmation Order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Plan.

56. **Effectuation of the Plan**. No action of the boards of directors, members or managers of any Debtor is necessary in order to authorize the Debtors to execute, deliver, file or record all documents and instruments, take all actions necessary or desirable to implement the Plan (including, without limitation, the Liquidating Trust Agreement and the other documents contained in the Plan Supplement and, in each case, the exhibits thereto) and this Confirmation Order, and effect any other transactions contemplated therein or thereby. To effectuate the Plan and such transactions, the officers or responsible representatives of the Debtors are authorized, without further notice or application to or order of the Bankruptcy Court, to execute, deliver, file

or record such agreements or documents, and to take such other actions as any such individual may determine to be necessary or desirable to effectuate the Plan and such transactions, regardless of whether such actions or documents are specifically referred to in the Plan or this Confirmation Order. To the extent that, under applicable non-bankruptcy law, any of these actions otherwise would require the consent or approval of the shareholders, boards of directors or managing member(s) of the Debtors, this Confirmation Order constitutes such consent, approval and direction.

57. **Activities in Anticipation of the Effective Date**. The Debtors are hereby authorized and empowered to take all necessary steps, and pay all related expenses, in anticipation of the Effective Date, including, without limitation, the steps necessary to establish the Liquidating Trust, appoint the Liquidating Trustee and vest all Liquidating Trust Assets in the Liquidating Trust, consistent with the terms of the Plan.

58. **Substantial Consummation**. On the Effective Date, the Plan shall be deemed to be substantially consummated pursuant to sections 1101 and 1127(b) of the Bankruptcy Code.

59. **Modification of Section 5.1(c) of the Plan**. Section 5.1(c) of the Plan is hereby amended and replaced by the following language:

> The Debtors shall pay all Secured Tax Claims and Trust Fund Tax Claims in the ordinary course of business during the pendency of these Cases as contemplated under the Sale Order and APA. Holders of any Secured Tax Claims and Trust Fund Tax Claims outstanding as of the Effective Date shall be paid on the later of: (a) the Effective Date of the Plan, or (b) the date immediately prior to the date on which such Claims would become delinquent under applicable non-bankruptcy law, together with interest at the applicable non-bankruptcy rate. Any Liens securing such Secured Tax Claims, and any rights of holders of Trust Fund Tax Claims, attached to any assets conveyed to the Purchaser under the Sale Order shall attach to the Cash proceeds from the Sale Transaction with the same extent, priority, and validity as in effective as of the Effective Date. Further, Local Texas Tax Authorities shall retain their Liens on the Cash proceeds from the Sale Transaction and other rights as provided in Paragraph 25 of the Sale Order. Accordingly, nothing in this Order shall modify or amend the Sale Order or the

approval to convey assets to the Purchaser "free and clear" of such Liens and rights.

Class 1.C is Unimpaired and, therefore, holders of Allowed Secured Tax Claims and Allowed Trust Fund Tax Claims in Class 1.C are deemed to have accepted the Plan.

60. **Vesting of Liquidating Trust Assets in the Liquidating Trust**. Except as otherwise provided in the Plan, the Liquidating Trust Agreement, any supplement(s) to the Plan, or this Confirmation Order, all other Assets not otherwise sold or released under the Plan, the Sale Order, or any other Prior Order shall be conveyed and assigned to the Liquidating Trust including, among other assets, the Reserved Causes of Action (as defined in Section 8.7 of the Plan), any Cash held by the Debtors, including any Excluded Assets and any excess Cash proceeds from the Sale Transaction, after payment of the First Lien Secured Claims (including any unpaid Adequate Protection Payments), the DIP Lender Claims, and any other Claims or amounts required to be paid out of the Purchase Price under the Plan or the Sale Order; *provided, however*, no Assets that are secured by the Liens of the First Lien Lenders, JPMorgan, or the DIP Lender shall be conveyed to the Liquidating Trust until (i) the First Lien Secured Claims (including any unpaid Adequate Protection Payments) are Paid in Full (as such term is defined and used in Paragraph 10 of the DIP Order), (ii) the DIP Lender Claims are paid in full, (iii) the LC Collateral Account is funded as provided for in Paragraph 8(i) of the Sale Order, and (iv) the Purchaser has caused an amount in immediately available funds equal to 110% of the amount of the Credit Card Exposure to be deposited into the Credit Card Collateral Account. On the Effective Date, the Liquidating Trust Assets shall be deemed transferred to and vested in the Liquidating Trust, and the Liquidate Trust shall assume liability for all Allowed General Unsecured Claims and Allowed Subordinated Claims, but only to the extent provided by the Plan and the Liquidating Trust Agreement.

61.     **Liquidating Trustee**.  Mark Shapiro shall be appointed, and is hereby approved, as the Liquidating Trustee for the sole purpose of administering the Liquidating Trust pursuant to the terms and conditions provided in the Plan and the Liquidating Trust Agreement, including without limitation, the duty and obligation to liquidate Liquidating Trust Assets, to make Distributions therefrom in accordance with the provisions of the Plan, and to pursue, settle or abandon any Reserved Causes of Action vested in the Liquidating Trust, all in accordance with the Liquidating Trust Agreement.  Following the Effective Date, the Liquidating Trustee is given full power of attorney and has the authority to execute and/or endorse any documentation on behalf of the Debtors in furtherance of the Plan and the Debtors liquidation, including but not limited to, the filing of final tax returns.

62.     From and after the Effective Date, subject to the terms of the Plan and Liquidating Trust Agreement, the Liquidating Trustee may administer the Liquidating Trust and use, acquire, and dispose of property, and settle and compromise claims or interests, without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan, the Liquidating Trust Agreement and this Confirmation Order.  Without limiting the generality of the foregoing, the Liquidating Trustee may, without application to or approval by the Bankruptcy Court or any other person or party, but in accordance with the Liquidating Trust Agreement, pay professional fees and expenses that the Liquidating Trust incurs after the Effective Date.  The transfer of any Assets to the Liquidating Trust under the Plan (a) is or shall be a legal, valid, and effective transfer of property, (b) vests or shall vest the Liquidating Trust with good title to such property, free and clear of all Liens, Claims, charges, or other Encumbrances, except as expressly provided in the Plan or this Confirmation Order, (c) does not and shall not constitute an avoidable transfer

under the Bankruptcy Code or under applicable non-bankruptcy law, and (d) does not and shall not subject the Liquidating Trustee or the Liquidating Trust to any liability by reason of such transfer under the Bankruptcy Code or under applicable non-bankruptcy law, including by laws affecting successor or transferee liability.

63.    **Allocation of Sale Proceeds to the Debtors**.  As soon as reasonably practicable after the Effective Date, and before making any Distributions under the Plan and Liquidating Trust Agreement, the Liquidating Trustee shall allocate the Liquidating Trust Assets such that the allocations of Liquidating Trust Assets are sufficient to provide the treatment set forth in Sections 5.3 and 5.5 of the Plan for applicable Creditors of each Debtor and Gold's Gym Licensing, LLC; provided, notwithstanding anything in this Order to the contrary, the Debtors are authorized to make Distributions under the Plan and Liquidating Trust Agreement to holders of claims in Classes 1.A and 1.B on or before the Effective Date.  The Liquidating Trustee may modify and redirect such allocations as necessary during the course of administering Claims after the Effective Date without regard to whether the Liquidating Trust Assets were initially allocated to any Debtor or based on any Disputed Claims which were subsequently Disallowed as to one Debtor but Allowed, in toto or in part, as to another Debtor.  To the extent the Liquidating Trust Assets are insufficient to provide payment of 100% of the Allowed General Unsecured Claims, plus interest at the Plan Interest Rate, for all Debtors and Gold's Gym Licensing, LLC, the Liquidating Trustee shall reallocate the Liquidating Trust Assets in a manner to ensure the same *pro rata* Distributions will be made to all Holders of Allowed General Unsecured Claims for all Debtors and Gold's Gym Licensing, LLC.  For the avoidance of doubt, no Distributions may be made to Holders of Allowed Subordinated Claims unless and until (i) all Disputed Class 3 General Unsecured Claims for all Debtors and Gold's Gym Licensing, LLC have been Allowed,

Disallowed, settled or estimated and reserved for as contemplated under the Liquidating Trust Agreement or any other Plan provisions or Plan Documents; and (ii) the Liquidating Trustee has made Cash Distributions equal to 100% of all Allowed General Unsecured Claims, plus interest at the Plan Interest Rate, for all Debtors and Gold's Gym Licensing, LLC. Further, no Distributions may be made to Holders of Interests in Debtor GGI Holdings, LLC, regardless of any initial allocations made by the Liquidating Trustee as to Debtor GGI Holdings, LLC, unless and until: (x) all Disputed Class 3 General Unsecured Claims and Disputed Class 5 Subordinated Claims for all Debtors and Gold's Gym Licensing, LLC have been Allowed, Disallowed, settled or estimated and reserved for as contemplated under the Liquidating Trust Agreement or any other Plan provisions or Plan Documents; and (y) the Liquidating Trustee has made Cash Distributions equal to 100% of all Allowed General Unsecured Claims and Allowed Subordinated Claims, plus interest at the Plan Interest Rate, for all Debtors and Gold's Gym Licensing, LLC.

64. **Liquidating Trust**. The Liquidating Trust Agreement, in substantially the form filed with the Plan Supplement, is hereby approved, and all of the Debtors' right, title and interest in the Liquidating Trust Assets shall be transferred to, and vest in, the Liquidating Trust on the Effective Date. The Liquidating Trustee shall have all the liabilities, duties, powers, rights, title, discretion and privileges designated in the Plan, this Confirmation Order and in the Liquidating Trust Agreement. The Debtors and the Liquidating Trustee shall be, and hereby are, authorized to enter into the Liquidating Trust Agreement, in substantially the form filed with the Plan Supplement, and the terms of the Liquidating Trust Agreement are hereby incorporated in this Confirmation Order by reference as if fully set forth in this Confirmation Order. The Liquidating Trust is intended to be a "liquidating trust" (a) as such term is defined in Section

301.7701-4(d) of U.S. Treasury Regulations, and (b) in accordance with the requirements set forth in Revenue Procedure 94-45, 1994-2 C.B. 684.

65. **Treatment Is in Full Satisfaction**. Except as provided in the Plan or this Confirmation Order or otherwise agreed in writing and approved by the Bankruptcy Court, the treatment set forth in the Plan and the payments and Distributions to be made pursuant to the terms and subject to the conditions thereof shall be in full and complete satisfaction of all Claims released in the Plan and this Confirmation Order. Except as otherwise provided in the Plan or this Confirmation Order, such treatment supersedes and replaces any agreements with or rights any Entity may have in or against the Debtors or their respective property.

66. **Discharge of the Debtors**. Except for purposes of evidencing a right to Distributions under the Plan or as otherwise provided hereunder, on the Effective Date, all agreements and other documents evidencing Claims or rights of any holder of a Claim against any Debtor, and all Interests in the Debtors, including, but not limited to, all indentures, notes, bonds and share certificates evidencing such Claims and Interests, and any agreements or guarantees related thereto, shall be canceled, terminated, deemed null and void and satisfied, as against the Debtors (and in the case of Interests, as against the Debtors) but not as against any other Person or Entity.

67. **Releases, Exculpation, Injunction and Related Provisions Under the Plan**. The following release, exculpation, and injunction provisions set forth in Article VII of the Plan are approved and authorized in their entirety, and such provisions are effective and binding on all parties and Entities to the extent provided therein, except as modified below:

### *Releases*

68.     **Releases by the Debtors and their Estates**.  As of the Effective Date, except for the rights and remedies that remain in effect from and after the Effective Date to enforce the Plan and the Plan Documents, for good and valuable consideration provided by each of the Released Parties, the adequacy of which is hereby confirmed, including, without limitation, the service of the Released Parties to facilitate the liquidation of the Debtors following the consummation of the Sale Transaction under the Sale Order, and except as otherwise provided in the Plan, the Plan Documents, or in the Confirmation Order, the Released Parties are deemed forever released and discharged by the Debtors and their Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives and any and all other Persons that may purport to assert any Cause of Action derivatively, by or through the foregoing Persons, from any and all Claims, Interests, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, remedies, or liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors and their Estates, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, actual fraud, contract, violations of federal or state laws or otherwise, including Avoidance Actions and Preference Actions, those Causes of Action based on veil piercing or alter ego theories of liability, contribution, indemnification, joint liability or otherwise that the Debtors or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the First Lien Loan Documents, the First Lien Credit Agreement, the DIP Facility, the DIP Note, the Debtors, the Sale Transaction, the Cases, the purchase, sale, or rescission of the purchase or sale of any Security of

the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of any Claim or Interest before or during the Cases, the negotiation, formulation, or preparation of the Disclosure Statement and the Plan and related agreements, instruments, and other documents (including the Plan Documents), the solicitation of votes with respect to the Plan, the consummation of the Plan, any action or actions taken in furtherance of or consistent with the administration or implementation of the Plan or the property to be distributed under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date arising from or relating to any of the foregoing, other than Claims or Causes of Action arising out of or related to any act or omission of a Released Party that constitutes actual fraud, gross negligence or willful misconduct; *provided, however*, that the foregoing provisions of this release (i) shall operate to waive and release only those Causes of Action expressly set forth in and released by the Plan, and (ii) shall not operate to waive and release the rights of the Debtors or their Estates to enforce the Plan, the Confirmation Order, or any related agreements, instruments and other documents delivered under or in connection with the Plan or assumed or reinstated pursuant to the Plan or Final Order of the Bankruptcy Court.

69. **Releases by the Releasing Parties**. As of the Effective Date, except for the rights and remedies that remain in effect from and after the Effective Date to enforce the Plan and the Plan Documents, to the fullest extent permitted by applicable law, for good and valuable consideration provided by the Debtors, their Estates and the Released Parties, the adequacy of which is hereby confirmed, including, without limitation, the service of the Released Parties to facilitate the implementation of the liquidation or sale, and except as otherwise provided in the

Plan, the Plan Documents, or in the Confirmation Order, each of the Releasing Parties shall be deemed to have conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged the Released Parties from any and all Claims, Interests, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors or the Debtors' Estates, whether known or unknown, asserted or unasserted, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, actual fraud, contract, violations of federal or state laws or otherwise, including Avoidance Actions and Preference Actions, those Causes of Action based on veil piercing or alter ego theories of liability, contribution, indemnification, joint liability or otherwise that any such Releasing Party would have been legally entitled to assert in their own right (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Cases, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, on the one hand, and any Releasing Party, on the other hand, the restructuring of any Claim or Interest before or during the Cases, the Sale Transaction, the negotiation, formulation, or preparation of the Disclosure Statement, the Plan and related agreements, instruments, and other documents (including the Plan Documents), the solicitation of votes with respect to the Plan, or any other act or omission, and/or any related agreements, instruments, or other documents, the pursuit of confirmation, any action or actions taken in furtherance of or consistent with the administration or implementation of the Plan, or other property under the Plan, upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the

Effective Date arising from or relating to any of the foregoing, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes actual fraud, willful misconduct, or gross negligence; provided, however, that the foregoing provisions of this release (i) shall operate to waive and release only those Causes of Action expressly set forth in and released by the Plan, and (ii) shall not operate to waive and release the rights of the Releasing Parties to enforce the Plan, the Confirmation Order, the APA (as amended from time to time), any Prior Order, or any related agreements, instruments, and other documents delivered under or in connection with the Plan or assumed or reinstated pursuant to the Plan or Final Order of the Bankruptcy Court. Notwithstanding anything to the contrary in the Plan, Plan Documents and this Confirmation Order, Holders of Claims that have rejected the Plan or otherwise "opted out" of the releases set forth in Section 7.2 of the Plan: (x) shall not constitute "Releasing Parties" and shall not have waived, discharged or released any claims or causes of action against any Released Parties, *provided, however*, that "opting out" of such releases shall not revive any released, settled or waived Causes of Action of the Estates or claims that could have been asserted by or derivatively through any of the Debtors or Estates, and (y) shall be entitled to receive Distributions under the terms of the Plan.

70. Entry of this Confirmation Order shall constitute the Bankruptcy Court's approval of the releases set forth in Article VII of the Plan pursuant to Bankruptcy Rule 9019 and its finding that they are: (i) in exchange for good and valuable consideration, representing a good faith settlement and compromise of the Claims and Causes of Action thereby released; (ii) in the best interests of the Debtors and all holders of Claims and Interests; (iii) fair, equitable and reasonable; (iv) approved after due notice and opportunity for hearing; and (v) a bar to any of the Released Parties asserting any Claim or Cause of Action thereby released.

### *Exculpation*

71.     Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or the Confirmation Order, the Debtors and their Estates and the Liquidating Trust, for themselves and on behalf of their successors and assigns, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released each of the Exculpated Parties from any and all claims, interests, obligations, rights, suits, damages, losses, costs and expenses, actions, causes of action, remedies, and liabilities of any kind or character whatsoever, including any derivative claims asserted or assertable on behalf of the Debtors and their Estates, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, suspected or unsuspected, matured or unmatured, fixed or contingent, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Estates, or the Liquidating Trustee ever had, now have, or hereafter can, shall, or may have, or otherwise would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, against any of the Exculpated Parties arising from or relating to, directly or indirectly from, in whole or in part: (i) the management or operations of the Debtors or the discharge of the Debtors' duties under the Bankruptcy Code during the pendency of these Cases; (ii) the implementation of any of the transactions provided for, or contemplated in, the Plan or the other Plan Documents, including the issuance of Securities under or in connection with the Plan; (iii) any action taken in connection with either the enforcement of the rights of the Debtors against any Person or the defense of Claims asserted against the Debtors with regard to these Cases; (iv) any action taken in the negotiation, formulation, preparation, development, proposal, solicitation, disclosure, dissemination, confirmation, or consummation of the DIP Facility, the Disclosure Statement, the Sale

Transaction, and the Plan (including the Plan Documents), or any other postpetition act taken or omitted to be taken in connection with or in contemplation of the Plan; and (v) the administration of the Plan or the Assets and property to be distributed pursuant to the Plan; provided, however, that the foregoing provisions of Article VII of the Plan shall have no effect on the liability of any Person that results from any such act or omission that is determined in a Final Order to have constituted actual fraud, gross negligence or willful misconduct; provided, further, that the foregoing provisions of Article VII of the Plan shall not apply to any acts, omissions, Claims, Causes of Action or other obligations expressly set forth in and preserved by the Plan or any defenses thereto.

72.     In connection with Section 7.3 of the Plan and this Confirmation Order, the Exculpated Parties are entitled to reasonably rely upon the opinions of their respective counsel, accountants, and other experts or professionals and such reliance, if reasonable, shall conclusively establish the absence of actual fraud, gross negligence or willful misconduct; provided, however, that a determination that such reliance is unreasonable shall not, by itself, constitute a determination regarding the existence of willful misconduct or gross negligence.

73.     If the holder of a Claim or Interest, or other Person brings an action, suit or proceeding covered by Section 7.3 of the Plan and this Confirmation and does not prevail, such holder or other Person must pay the reasonable attorneys' fees and costs to the Exculpated Party. Moreover, as a condition to going forward with such action, suit, or proceeding, the holder of a Claim or Interest or other Person must, at the outset, provide appropriate proof and assurances of its capacity to pay the Exculpated Party's reasonable attorneys' fees and costs in the event the holder or other Person fails to prevail. The Exculpated Party shall have no obligation to pay, or provide appropriate proof and financial assurance of its capacity to pay, reasonable attorneys'

fees and costs in the event that the holder of a Claim or Interest or other Person prevails in an such action suit or proceeding against such Exculpated Party.

### *Injunction*

74.     By accepting Distributions pursuant to the Plan, each holder of an Allowed Claim or Interest will be deemed to have affirmatively and specifically consented to be bound by the Plan, including, without limitation, the injunctions set forth in section 7.4 of the Plan.

75.     Except as otherwise provided in the Plan or any Prior Order (including the Sale Order), from and after the Effective Date, all Persons who have held, hold, or may hold Claims against or Interests in the Debtors prior to the Effective Date are permanently enjoined from commencing or continuing in any manner against, or derivatively through, the Debtors, the Estates, the Stalking Horse Bidder, the Purchaser, the DIP Lender, TRT Holdings, Inc., JPMorgan, the First Lien Lenders, the Committee, the Estates' Assets, or successors and assigns of the Debtors, and their assets and properties, as the case may be, any suit, action or other proceeding, on account of or respecting any Claim, demand, liability, obligation, debt, right, Cause of Action, interest or remedy released or to be released pursuant to the Plan or the Confirmation Order.

76.     Except as otherwise expressly provided for in the Plan or in obligations issued pursuant to the Plan, from and after the Effective Date, all Persons shall be precluded from asserting against the Debtors, the Estates, the Stalking Horse Bidder, the Purchaser, the DIP Lender, TRT Holdings, Inc., JPMorgan, the First Lien Lenders, the Committee, the Estates' Assets, successors and assigns of the Debtors, and their assets and properties, any other Claims or Interests based upon any documents, instruments, or any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date. The injunction approved

under this Paragraph and Section 7.4(c) of the Plan, notwithstanding anything to the contrary in the Plan, Plan Documents or Confirmation Order, shall not act as a release of or injunction against the pursuit of any claim, cause of action, right or remedy that is not otherwise discharged or released under the Plan, this Order or any Prior Order. For the avoidance of doubt, this Paragraph shall not enjoin or release any claims or causes of action held by any non-debtor third-parties against any other non-debtor third-parties provided that such non-debtor third-parties have properly "opted out" as contemplated in the Scheduling Order, *provided, however*, that nothing in the Plan, this Confirmation Order or the act of "opting out" of such releases shall be construed as reviving any released, settled or waived Causes of Action of the Estates or claims that could have been asserted by or derivatively through any of the Debtors or Estates.

77. The rights afforded in the Plan and the treatment of all Claims and Interests in the Plan shall be in exchange for and in complete satisfaction of Claims and Interests of any nature whatsoever, against the Debtors or any of their assets or properties. On the Effective Date, all such Claims against, and Interests in, the Debtors shall be satisfied and released in full.

78. Except as otherwise expressly provided for in the Plan, Confirmation Order or in obligations issued pursuant to the Plan, all Persons are permanently enjoined, on and after the Effective Date, on account of any Claim or Interest satisfied and released hereby, from: (i) commencing or continuing, in any manner or in any place, any action or other proceeding of any kind against any Debtors, their successors and assigns (including, without limitation, the Stalking Horse Bidder and the Purchaser) and their assets and properties; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against any Debtors, their successors and assigns (including, without limitation, the Stalking Horse Bidder and the Purchaser) and their assets and properties; (iii) creating, perfecting, or enforcing any Lien

or encumbrance of any kind against any Debtor, the Purchased Assets or the property or Estate of any Debtor; (iv) asserting any right of setoff, subrogation or recoupment of any kind against any debt, liability, or obligation due from any Debtor or against the property or Estate of any Debtor; and (v) commencing or continuing, in any manner or in any place, any action or other proceeding of any kind that does not comply with or is inconsistent with the provisions of the Plan; *provided, however*, that nothing contained herein shall preclude such Persons from exercising their rights pursuant to and consistent with the terms of the Plan.

79.     Notwithstanding anything to the contrary in the Plan, the Plan Supplement, any other Plan Documents, or the Confirmation Order, nothing shall modify the rights, if any, of any holder of Claims or any current or former party to an executory contract, whether currently or previously executory, or lease of non-residential real property to assert any right of setoff or recoupment that such party may have under applicable bankruptcy or non-bankruptcy law to assert a setoff recoupment right: (i) in a security deposit held pursuant to the terms of their unexpired lease(s) with the Debtors, or any successors to the Debtors, under the Plan; (ii) in connection with Claims reconciliation as required under any Assumed Contract; or (iii) as a defense, if any, to any Cause of Action asserted by the Liquidating Trust.

80.     **Release of Liens**. Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against property of the Estates, shall be fully released and discharged, and all of the Debtors' rights, title and interests in such property shall be distributed or transferred in accordance with the Plan.  The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local

agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

81. **Governmental Unit Limitations on Release**. Nothing in this Confirmation Order or the Plan discharges, releases, precludes, or enjoins: (i) any liability to any governmental unit as defined in 11 U.S.C. § 101(27) ("Governmental Unit") that is not a "claim" as defined in 11 U.S.C. § 101(5); (ii) any Claim of a Governmental Unit arising on or after the Confirmation Date; or (iii) any police or regulatory liability to a Governmental Unit that any entity would be subject to under applicable non-bankruptcy law on account of its status as the owner or operator of property after the Confirmation Date, nor shall anything in this Confirmation Order or the Plan enjoin or otherwise bar a Governmental Unit from asserting or enforcing, outside the Bankruptcy Court, any liability described in the preceding sentence.

82. **Exemption from Transfer Taxes and Recordation Fees**. Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan or this Confirmation Order shall not be subject to any stamp tax, transfer tax or other similar tax or governmental assessment in the United States. The appropriate state or local governmental officials or agents, as applicable, shall forego the collection of any such tax or governmental assessment and accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.

83. **The Committee**. On the Effective Date, the Committee shall dissolve and the members of the Committee shall be released, exculpated, and discharged from all authority, duties, responsibilities, and obligations related to and arising from and in connection with these Cases, provided that the Committee shall continue to exist solely with respect to (i) any applications for Fee Claims or expense reimbursements for members of such Committee

including preparing same, objecting to same, defending same, and attending any hearing with respect to same; (ii) any motions or other actions seeking enforcement of implementation of the provisions of the Plan or the Confirmation Order; and (iii) any appeal pending as of the Effective Date or filed thereafter, the outcome of which could affect the treatment of prepetition creditors. Following the Effective Date, Professionals retained by the Committee shall be entitled to reasonable compensation for services rendered in connection with the matters identified in clauses (i) – (iii) of this paragraph and any such payments made in connection therewith shall be made without any further notice to or action, order, or approval of the Bankruptcy Court.

84.     **Executory Contracts and Unexpired Leases**.  Unless previously approved and consummated pursuant to the Sale Order, on the Effective Date, and to the extent permitted by applicable law, every Executory Contract and Unexpired Lease is rejected unless such Executory Contract or Unexpired Lease: (a) has been expressly assumed pursuant to an order of the Bankruptcy Court; (b) is expressly identified in the Plan or in this Confirmation Order as an Assumed Contract; or (c) is expressly made the subject of a pending motion to assume filed on or before the Confirmation Hearing.  The entry of this Confirmation Order constitutes approval of all such rejections and assumptions and assignments pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

85.     **Administrative Claims and Final Fee Applications**.  The request for payment of an Administrative Claim will be timely filed only if it is actually received by the Bankruptcy Court, counsel to the Liquidating Trustee, the Liquidating Trustee and the Office of the United States Trustee for the Northern District of Texas by the first Business Day after forty-five (45) days after the Effective Date (the "Administrative Claims Bar Date").  Requests for payment of an Administrative Claim must include at a minimum: (a) the name of the holder of the

Administrative Claim; (b) the amount of the Administrative Claim; (c) the basis of the Administrative Claim; and (d) all supporting documentation for the Administrative Claim. Requests for payment of Administrative Claims may not be delivered by facsimile, telecopy, or electronic mail transmission. Notwithstanding anything to the contrary herein, the filing of an Administrative Claim shall not be required in order to receive payment for any tax liability, including interest thereon, described in sections 503(b)(1)(B) and (C) in accordance with section 503(b)(1)(D) of the Bankruptcy Code.

86. Allowed Administrative Claims shall be paid in full by the Purchaser or, if expressly provided for under the Liquidating Trust Agreement, the Liquidating Trustee; *provided, however*, that any Administrative Claim filed after the Administrative Claims Bar Date shall not be Allowed, unless the Liquidating Trust or the Purchaser, as applicable, and in their discretion, chooses to Allow such Administrative Claim.

87. The deadline for submission by Professionals for Bankruptcy Court approval of Fee Claims shall be forty five (45) days after the Effective Date (the "Professional Fee Claim Bar Date"). Any Professional or other Person or Entity that is required to file and serve a request for approval of Fee Claim and fails to timely file and serve such request on or before such date shall be forever barred, estopped and enjoined from asserting such request or participating in Distributions under the Plan on account thereof. All Professionals employed by the Debtors or the Committee shall provide to the Debtors an estimate of their Fee Claims through the Effective Date (including an estimate for fees and expenses expected to be incurred after the Effective Date to prepare and prosecute allowance of final fee applications) before the Effective Date. Parties in interest shall have twenty-one (21) days after the date on which the applicable application for compensation or reimbursement was served (or such longer period as may be

allowed by order of the Bankruptcy Court or agreed to by the parties) to file an objection to any timely Fee Claim. The Bankruptcy Court shall hear and determine all applications for final allowances of compensation or reimbursement of expenses under sections 328, 330 or 503(b) of the Bankruptcy Code on a date to be determined by the Bankruptcy Court and as mutually agreed upon by the relevant parties. Allowed Fee Claims shall be paid in full, within three (3) Business Days of the entry of an order allowing the applicable Fee Claim, by the Liquidating Trustee.

88. **Preservation of Rights Under Deposit Agreements**. Notwithstanding anything to the contrary in the Plan, the Disclosure Statement, any Plan Supplement or this Order, any and all documents and agreements related to or otherwise governing the Letters of Credit and the Credit Card Program (each as defined in the Sale Order), including any cash collateral agreements governing the Letters of Credit and the Credit Card Program, in addition to any and all deposit and account agreements governing the Debtors' bank accounts maintained with JPMorgan and the First Lien Lenders, shall not be rejected or discharged pursuant to the Plan and this Order, and the terms of such documents and agreements shall remain in full force and effect with respect to the parties thereto, including the Debtors and the Liquidating Trustee, as successor to the Debtors.

89. **Preservation of Rights Under the APA**. Nothing in this Confirmation Order or the Plan shall abrogate or abridge any right of the Purchaser to assert an Administrative Claim to the extent such Administrative Claim may arise from, or has been acquired under, or are otherwise involved with the Sale Transaction, including, but not limited to, (i) any and all causes of action for breach of contract or breach of warranty of the APA, as modified from time to time, including, but not limited to, as modified under Amendment No. 2 to the APA, the Sale Order or any Prior Order; and (ii) any asset or right acquired in the Sale Transaction. For the avoidance of

doubt and notwithstanding anything in the Plan, the Plan Documents, or this Confirmation Order, Section 8.6 of the Plan entitled "Settlement with TRT Holdings, Inc." shall not be binding upon the Purchaser or its affiliates, *provided, however*, that nothing in this Paragraph shall be construed as undermining the enforceability of any releases, waivers or settlements previously approved in any Prior Orders, including the DIP Order.

90. **Transition Services Agreement**. Notwithstanding anything herein, the Liquidating Trustee or any successor to the Debtors shall be fully authorized to perform under and be legally bound as to all obligations and benefits thereunder, to the Transition Services Agreement previously approved by the Bankruptcy Court on August 21, 2020 at ECF No. 513. Nothing in the Plan, Plan Documents or this Confirmation Order shall discharge the Debtors' or Liquidating Trustees' obligations to perform the obligations thereunder.

91. **Exemption from Securities Laws**. The issuance of and the distribution under the Plan of the beneficial interests in the Liquidating Trust shall be exempt from registration under the Securities Act and any other applicable securities laws pursuant to section 1145 of the Bankruptcy Code.

92. **Payment of Statutory Fees**. All fees payable pursuant to section 1930 of title 28 of the United States Code shall be paid by the Debtors on or before the Effective Date and thereafter by the Liquidating Trustee as such statutory fees become due.

93. **References to Plan Provisions**. The Plan is confirmed in its entirety and hereby incorporated into this Confirmation Order by reference and as modified hereby. The failure to reference or discuss any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of, or otherwise affect, the validity, binding effect and

enforceability of such provision, and each provision of the Plan shall have the same validity, binding effect and enforceability as if fully set forth in this Confirmation Order.

94.     **Headings**.  Headings utilized herein are for convenience and reference only, and shall not constitute a part of this Confirmation Order for any other purpose.

95.     **Effect of Conflict Between Plan and Order**.  The provisions of the Plan, the Plan Supplement, any other Plan Document and this Confirmation Order shall be construed in a manner consistent with each other so as to effect the purpose of each.  If there is any conflict between the terms of the Plan, the Plan Supplement any other Plan document on the one hand, and the terms of this Confirmation Order on the other, the terms of this Confirmation Order shall control solely to the extent of the conflict.  If there is any conflict between the terms of the Plan on the one hand, and the Plan Supplement or any other Plan document on the other, the terms of the Plan shall control.

96.     **Prior Orders Remain in Effect**.  Over the course of the Bankruptcy Cases, the Bankruptcy Court has entered several orders authorizing certain transactions, approving compromises, releasing certain claims and causes of action and, most recently, approving the Sale Transaction.  Unless expressly overwritten by a specific provision of the Plan, the terms of all such Prior Orders, including the Sale Order, are hereby fully incorporated in this Confirmation Order.

97.     **Notice of Confirmation Order and Effective Date**.  As soon as reasonably practicable, but in no event later than five (5) Business Days after the Effective Date, the Debtors, with the assistance of the Debtors' Claims Agent, shall serve a notice of the Effective Date on all holders of Claims and Interests and all counterparties to executory contracts and unexpired leases.  The notice of Effective Date shall include notice of: (a) the date of entry of

this Confirmation Order; (b) the Claims Bar Date, if not passed as of the Effective Date; (c) the Administrative Claims Bar Date; and (d) the Professional Fee Claim Bar Date. The Debtors or Liquidating Trustee, as applicable, shall serve notice of entry of this Confirmation Order in accordance with Bankruptcy Rules 2002 and 3020(c) on all holders of Claims and Interests.

98. **Final Order and Waiver of Stay**. This Confirmation Order is a Final Order and judgment and the period in which an appeal must be filed shall commence upon the entry hereof. Notwithstanding the possible applicability of Bankruptcy Rule 3020(e), 6004(h), 7062, or 9014, or otherwise, the terms and conditions of this Confirmation Order shall be immediately effective and enforceable upon its entry. If any or all of the provisions of this Confirmation Order are hereafter reversed, modified or vacated by subsequent order of the Bankruptcy Court or any other court, such reversal, modification or vacatur shall not affect the validity of the acts or obligations incurred or undertaken under or in connection with the Plan and this Confirmation Order prior to the Debtors' receipt of written notice of such order. Notwithstanding any such reversal, modification or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on, this Confirmation Order prior to the effective date of such reversal, modification or vacatur shall be governed in all respects by the provisions of this Confirmation Order and the Plan and all related documents or any amendments or modifications thereto.

99. **Authorization to Consummate**. The Debtors are authorized to consummate the Plan and the transactions contemplated thereby (including, without limitation, the Liquidating Trust Agreement and any further agreements necessary to effectuate the Sale Transaction approved under the Sale Order) at any time after the entry of this Confirmation Order, subject to the satisfaction or waiver of the conditions precedent to the Effective Date set forth in Article

XIII of the Plan. Pending the Effective Date of the Plan, Adam Zeitsiff and Paul Early shall remain authorized officers of the Debtors with the requisite authority to execute any documents necessary to consummate the Plan, the Liquidating Trust Agreement and any other Plan Documents.

100. **Retention of Jurisdiction**. Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of or related to the Cases, the Plan, the matters set forth in Article XV of the Plan and any disputes over whether a claim or cause of action against a Released Party constitutes a direct claim held by a non-debtor third-party or a derivative claim pursued on behalf of a Debtor.

### # # # END OF ORDER # # #

Submitted by:
Aaron M. Kaufman (TX Bar No. 24060067)
Ariel J. Snyder (TX Bar No. 24115436) (*pro hac vice* admission)
**DYKEMA GOSSETT PLLC**
1717 Main Street, Suite 4200
Dallas, Texas 75201
Telephone: (214) 462-6400
Facsimile: (214) 462-6401
Email: akaufman@dykema.com
Email: asnyder@dykema.com

and

Danielle N. Rushing (TX Bar No. 24086961)
**DYKEMA GOSSETT PLLC**
112 East Pecan Street, Suite 1800
San Antonio, Texas 78205
Telephone: (210) 554-5500
Facsimile: (210) 226-8395
Email: drushing@dykema.com

**COUNSEL FOR DEBTORS**
**AND DEBTORS-IN-POSSESSION**